Kenneth R Barber Jr
FULL NAME
Calipatria State Prison
FULL ADDRESS INCLUDING NAME OF INSTITUTION
PO Box 5001
Calipatria Ca 92233
P-43791
PRISON NUMBER (if applicable)

```
                              FILED
                    CLERK, U.S. DISTRICT COURT

                    July 3, 2013

                 CENTRAL DISTRICT OF CALIFORNIA
                 BY:   E.T.          DEPUTY
```

Related DJJ

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

N/S

Kenneth Richard Barber Jr.

PLAINTIFF,

v.

Santa Barbara County et al.

DEFENDANT(S).

CASE NUMBER
**CV13-04645** DMG (MRW)

To be supplied by the Clerk

**CIVIL RIGHTS COMPLAINT**
**PURSUANT TO** (Check one)
☐ 42 U.S.C. § 1983
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

A. **PREVIOUS LAWSUITS**

1. Have you brought any other lawsuits in a federal court while a prisoner: ☒ Yes   ☐ No

2. If your answer to "1." is yes, how many?   2

```
                          LODGED
                 CLERK, U.S. DISTRICT COURT

                    JUN 26 2013

                CENTRAL DISTRICT OF CALIFORNIA
                                        DEPUTY
```

Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

1) Case # CV-1102365-DMG (MLG) - This Lawsuite was a medical issue. The doctor was fired and the Santa Barbara County Jail resolved the issues. On March 13, 2012, just prior to my deadline my cell was searched and a great deal of documents were destroyed by jail staff forcing me to miss the deadline resulting in the dismissal of the lawsuite.

2) Case # CV08-6273 DDP (MLG) - This Lawsuite was against the Santa Maria Police Dept and 2 of their officers for Illegal search & seizure. I won summary Judgement against both officers. This is one of the many police Dept in Santa Barbara County.

```
                          RECEIVED
                 CLERK, U.S. DISTRICT COURT

                    JUN 25 2013

                CENTRAL DISTRICT OF CALIFORNIA
                BY                      DEPUTY
```

a. Parties to this previous lawsuit:
Plaintiff _Kenneth R Barber_

Defendants _Santa Maria Police officer Joe Lopez_

b. Court _United States District Court Central District._

c. Docket or case number _CV08-6273 DDP (MLG)_
d. Name of judge to whom case was assigned _Dolly Gee_
e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it appealed? Is it still pending?) _I Won Motion for Summary Judgement_
f. Issues raised: _Violation of 4th & 14th Amendments_

g. Approximate date of filing lawsuit: _Nov 18, 2008_
h. Approximate date of disposition

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☒ Yes   ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☒ Yes   ☐ No

   If your answer is no, explain why not _____

3. Is the grievance procedure completed? ☒ Yes   ☐ No

   If your answer is no, explain why not _____

4. Please attach copies of papers related to the grievance procedure.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff _Kenneth R Barber_
(print plaintiff's name)
who presently resides at _C.S.P. P.O. Box 5001 California Cal. 92233_
(mailing address or place of confinement)
were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at
_Santa Barbara County Jail, Santa Barbara_
(institution/city where violation occurred)
on dates _3/19/2012 - 4/20/2012, 9/27/2013 - unknown date, March 2010 - 2012_

**CIVIL RIGHTS COMPLAINT**

Verified Complaint for Damages

Injuction & Declaratory Judgement

Demand for Jury Trial

1.   Plaintiff is a resident and state inmate confined in the Calipatria state prison (here after C.S.P.) Calipatria California. Plaintiff brings this civil rights action to redress the depervation under the color of state law privileges and immunities secured to plaintiff by the provisions of the Sixth Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff alleges that while incarcerated at the Santa Barbara County Jail from March of 2010 to August of 2012 he was denied his Federal Constitutional right to humane conditions of confinement by virtue of him being placed in a cell covered with human feces; placed in close proximity to an area covered with human feces; subjected to constant screaming yelling and load banging by continually being placed next to psychiatric patients.

Plaintiff alleges that the inhumane conditions were designed to prevent sleep and disrupt his Pro Per Status violating his constitutional right to represent himself in an unrelated criminal case.

Plaintiff alleges that the afore mentioned acts and or policies and practices of the defendents and their employees are knowingly deliberate and intentional in disregard for the health and well-being of plaintiff and that such acts policies and practices are shocking to the conscience purportedly governed by laws and considerations of Due Process.

Parties

2.   Plaintiff Kenneth R Barber Jr. was at all times relevant to this action a convicted inmate on trial for additional charges incarcerated at the Santa Barbara County Jail.

3.   Defendant Santa Barbara County is responsible for the administration operation and supervision of Santa Barbara County Jails officials and for the promulgation and enforcement of rules regulations policies and practices relevant thereto. Defendant is sued here-in its official and individual capacity.

4.   Defendant Sheriff Bill Brown is responsible for supervising, disciplining and training of the officials at the Santa Barbara County Jail and is sued in his individual and official capacity

5.   Defendant Kenneth Callahan is an official at the S.B.C.J and is responsible for the supervising and training of the correctional officers and staff as well as the conditions of confinement of all inmates. He is sued in his individual ~~xxxxxxxxxxxxx~~ capacity.

6.   Sgt Osborne is a defendant in this case and is responsible for supervising and training of the correctional officers and staff as well as classifying inmates for appropriate housing. He is sued in his individual capacity.

7.   Sgt Espinoza is a defendant in this case and is responsible for the supervising, disciplining and training of the officials and staff at the S.B.C.J. as well as the conditions of confinement of all inmates and is sued in his individual capacity.

8.   Cprl Alexander is a defendant in this case and is responsible for the supervising disciplining and training of the officials and staff at the S.B.C.J as well as the conditions of confinement and overall well-being of all inmates. He is sued in his individual capacity.

9.   C.O. Markling is a defendant in this case and is responsible for the conditions of confinement and overall wellbeing of inmates. He is responsible for the transportation of inmates. He is sued in his individual capacity.

10.   Lt. Lammer is a defendant in this case and is responsible for the supervising disciplining and training of the officials and staff at the S.B.C.J. as well as the conditions of confinement and reviewing grievences of S.B.C.J.

inmates. He is sued in his individual capacity.

11.    Defendant Sgt Maynard is a defendant in this case and is responsible for the conditions of confinement and overall well-being of all inmates. She is responsible for answering grievances of inmates and for the supervising, disciplining and training of the officials and staff at the S.B.C.J. She is sued in her individual capacity.

12.    C.D. Rees is a defendant in this case and is responsible for the safety and well being of all inmates at the Santa Barbara County Jail. He is sued in his individual capacity

13.    C.D. Lane is a defendant in this case and is responsible for the safety and well being of all inmates at the Santa Barbara County Jail. He is sued in his individual capacity.

14.    C.D. Ortega is a defendant in this case and is responsible for the safety and well being of all inmates at the Santa Barbara County Jail and is sued in his ~~individual~~ individual capacity.

15.    C.D. Alvares is a defendant in this case and is responsible for the safety and well being of all inmates at the Santa Barbara County Jail and is sued in his individual capacity.

16.    Sgt Carnett is a defendant in this case and is responsible for the safety and well beings of all inmates at the S.B.C.J and is responsible for the classification and housing of inmates. He is sued in his individual capacity.

17.    2 unknown nurses/Pill call nurses are defendants in this case and are responsible for the health and well being of all inmates at the Santa Barbara County Jail and are sued in their individual capacities.

18.    1 unknown psychiatrist is a defendant in this case and is responsible for the mental health of inmates at the Santa Barbara County Jail and is sued in his official ~~capacity~~ & individual capacity.

19.    Several unknown officers will be defendants in this case who were/are responsible for the safety and well-being of all inmates at the Santa Barbara County Jail. There names will be requested in discovery, they'll be sued in thier individual capacity.

20. C.O. APPE is a defendant in this case and is responsible for the safety and well-being of all inmates at the Santa Barbara County Jail. He is sued in his individual capacity.

21. 1 Maintenance worker, name unknown, is a defendant in this case and is responsible for the fixing of broken toilets; sewage problems; Heating and; Electrical appliences. He is sued in his individual capacity.

22. C.O. Diaz is a defendant in this case and is responsible for the safety and well being of all inmates at the Santa Barbara County Jail. he is sued in his individual Capacity

## Facts

23. Commencing on March 8, 2010 plaintiff Kenneth R Barber Jr was confined at the S.B.C.J. pursuant to a criminal proceeding stemming from an incident which occured in the county Jail on 08/23/08.

24. Plaintiff remained in the SBCJ. from March 2010 untill Aug. 2013 and was housed almost entirely in a single man isolation cell in the North West section of the Santa Barbara County Jail. He was first housed in cell "NW.ISO 24" then later moved to "NW ISO 21." From NW.ISO. he was moved to IAC 100 for months then back to NW.I. 21.

25. Northwests section 21-24 is seperate from all other ISOs and is under 24 hr camera observation viewable from Northwest's Control booths moniter system.

26. During the period petitioner was first housed in NW.ISO 24 he witnessed a psychiatric inmate housed in cell 21 left for weeks at a time in his cell covered in his own feces. He was not being removed for showers or given cleaning supplies or soap. He would urinate on his door from the inside but the urine would flow under his door and into the hallway that connects all cells. His urine and feces would stink up the entire 4 cell section.

27. All inmates including myself would be forced to eat and sleep in these conditions. The only relief from the smell would be showers every other day and yard twice a week if we were lucky.

28. Officers at the Santa Barbara County Jail are required to do security walks throughout the county jail which are called "Pipe Checks". They carry these computers that look like a 6 inch pipe that logs where and when they did there security

checks. At the end of each hallway throughout the jail there are round metal markers placed at doorknob level in which the officers touch their personal pipes to. This catalogs where those officers were at at any given time.

29.   During these "pipe checks" (security walks) officers are required to look in each cell to check to see if each and every inmate is safe mentally and physically. If the officers believe that, based on their observations, that any given inmate might possibly have mental or physical issues the inmate may be moved to a "safety cell."

30.   As to inmate in paragraph #26 I complained about the nauseating smell permeating throughout our section and my cell to several officers w/no avail. (the only officer to personally clean that cell was officer Diaz) I did witness 3 unknown "Greenshirts" (inmate workers) being ordered to go into the feces covered cell and clean it with mops, rags and a bucket of water. The inmates would come running out periodically gagging and sometimes vomiting in a garbage can outside the cell. The inmates were not wearing protective clothing.

31.   As to claims in paragraphs 25-30 officials knew of the inhumane conditions of confinement at the SBCJ's North West ISO unit 21-24 due to the facts that 1) The conditions lasted weeks at a time 2) The section is under 24 hrs. camera observation 3) they count all inmates twice a day by checking their wrist bands 4) Staff is required to do security checks every hr. (pipechecks) 5) laundry exchange is once a week in which the officers are suppose to enter each cell and confiscate any laundry that the inmate didn't kick out of the cell. 6) Food must be delivered to each cell 3 times a day and 7) the lights in each cell are on 24 hrs a day.

32.   On an unknown date I witnessed Cory Benton being housed in cell 23 which had a vent connected to my cell in which we could talk through. He told me that his cell was covered in human feces and that he "could not live like this." Mr Benton then got the attention of the Control booth and demanded a face to face interview with Sgt Espinoza explaining that he "would not live in shit." When Espinoza seen the condition of the cell he immediately moved Mr Benton to cell 21. A couple "green shirts" were ordered to go into cell 23 and clean the human feces. They went in the cell with a mop bucket and rags. The cell was not powerwashed and a psychiatric patient was then placed in the cell.

33. At some point Plaintiff was moved to cell 21 from cell 24. (immediately after Cory Benton was removed from cell 21)

34. After being housed in cell 21 for an unknown amount of time plaintiff was rehoused to the I.R.C. 100 unit. (IRC #114)

35. On March 13, 2012 plaintiff suffered an accidental head injury and was taken to an outside local hospital and treated for severe concussion. Upon returning from the hospital he was rehoused to cell 21. (I.R.C #114 → NWI #21)

36. As to claims in paragraph 35 the cell conditions where inhumane. There was human feces packed into the Air flow vent on the ceiling, all over the ceiling walls and floor. Plaintiff cleaned all the reachable areas but could not reach the ceiling.

37. As to claims in paragraph 35 and 36 Plaintiff had an open wound while cleaning the feces up. Both eyes were swollen shut and he was suffering from severe headaches.

38. As to claims in #35 C.O. Ortega searched cell I.R.C #114 and bagged up all of petitioners property throwing away personal property and several documents including documents concerning the 42 U.S.C. § 1983 civil rights complaint. (Kenneth R Barber Jr Vs Santa Barbara County. et al; CV11-2365 DMG (MLG).) This was the cause of petitioner failing to meet his deadline for an opposition to summary judgement and the subsequent dismissal of the complaint. However, a defendant in the case was fired and the Santa Barbara County Jail eventually gave plaintiff his surgery and requested medication.

39. After being rehoused in NWI. 21 on 3/13/2012 - 3/17/2012 I complained to several officers about the conditions of my confinement with no avail.

40. On 3/17/2012 I complained about the feces throughout my cell and that the vent in my cell was broken so I was not getting any ventilation. This caused stagnant feces smelling air in which I had to live in 24hrs a day with an hr break for yard twice a week if I was lucky. This was at a time in which I was recovering from a major concussion. I requested the vents be fixed and the cell be powersprayed.

41.   At some point after 3/17/2012 the vent was repaired. I was told it was not a belt issue but an electrical one.

42.   C.O. Alvarez was well aware of my living conditions suggested I grieve the issue and read my grievence before signing and dating it on 3/17/2012. (see exhibit 1)

43.   Sgt Miranda answered the grievence requesting that I clean up the human feces of whatever inmate was there prior to me. The vent in question was not in my reach and it's not my job as an inmate to clean up other unknown inmate feces. The grievence reply was dated 3/25/12.

44.   Lt Lammer also signed the March 17, 2012 grievence and dated it 3/25/12 It should be noted that Lt Lammer is a ~~prosecution~~ prosecution witness in my criminal case. Lt Lammer without doubt had complete knowledge of the inhumane living conditions in which I lived and did nothing to fix it.

45.   On 3/29/12 I turned in a grievence to an unknown Correctional deputy whose I.O.# is 3154 explaining that the feces in my cell had still not been cleaned up and that sewage was coming up from the drain on the floor with worms all through it.

46.   On 4/4/2012 I turned in another grievence to an unknown officer whose I.D.# is 2369 (See Exhibit 1) in which I complained that the feces was still in my cell and nothing was getting resolved.

47.   Sgt Maynard replied to the grievence (Log # 03386; see exhibit 1) by stating that C.O. Klieal and C.O. Apple came to my cell on April 4th and that I refused to come out of the cell to and allow it to be cleaned, which was false. Apple and Klieal came to my cell in the very early morning hrs of April 4th (between 1 Am and 3 am) with 2 workers a mop bucket, and rags. once they seen where the feces was located on the ceiling they agreed they'd need a ladder to reach it. They never returned. They didn't bring a ~~~~ ladder with them on the 4th or any time there after.

48.   As to the grievence dated 4/4/2012, Log # 03386, Lt Lammer signed the grievence which as I understand on information and belief that anyone that signs the grievences must read it and determine its validity and forward it to the appropriate staff member.

49. Sometime prior to Thole's psychiatric patient Larry Thole was placed in MOU 23. Larry Thole is known by all inmates and Santa Barbara County Jail staff to be completely uncontrollable with banging, screaming, foul comments and covering himself in his feces and throwing it wherever he's at. He bangs on his cell door and/or his table for long periods of time (for up to 6hrs streight) everyday and at all hrs of the day and night. He balls up his feces or makes paddies sliding them out under his door into our connecting hallway inches from my door while sometimes making it under the door.

50. I have witnessed CO Ortega, Reer, Lane and Garnett instigate the psychiatric inmates in the North West ISO module by calling them Child Molesters, rapists and J-Cats or P.C.s. I've seen officers throw their breakfasts into the water outside their cell denying them food as a vendictive get back.

51. I've witnessed psychiatric inmates including Thole being denied showers and clean clothes during clothing exchange. Santa Barbara County Jail policy, that they will not hand out soap and you must order it from commissary. Commissary leaves these psychiatric inmates without soap to even clean the feces off their bodies. These psychiatric inmates don't know how to fill out the semi complicated commissary slips and some not even able to read.

52. At some point the guards were instigating psychiatric inmate Uribe on calling him P.C. Child molester Rapist and one unknown officer through his breakfast in the water, causing a 4hr temper tantrum of kicking his door and yelling. I have had personal conversations with Uribe's mother. Because Uribe couldnt write I would write all his letters to his mother. I would write his brothers letters to her to. His brothers handle is Crackers.

53. On April 9th at 8:35 am (see exhibit 5: Reer put "04-08-12" but that is the incorrect date of incident) C.D. A. Reer was giving out breakfast in the ISO cells and noticed that water was coming out of cell #23, Thole's cell. The water was running all over the tier and running into all 4 cells with feces all through it. Reer turned off the water and gave him a disciplinary write up for "Flooding" (See Ex. 5)

54. This incident was just prior to the end of CO Reers shift and this incident forced him to do extra work and paperwork before going home. Reer and Thole begin to verbally attack each other.

55. On April 9 2012 at 5:00am Reer came through the 4 cell section and gave psychiatric patient Larry Thole disciplinary write ups for "Damaging County Property" and a "Wrist band Violation".

56. As to claims in paragraph 54 and 55 Larry Thole lost 9 weeks of

57. Throughout the early morning hrs of ~~04/09/2012~~ 04/09/2012 while C/O Reer and psychiatric inmate Larry Thole were going at it back and forth ~~this~~ all inmates were being deprived of humane conditions of confinement. By forcing me to live in conditions such as this with my pro per status in effect is denying me my constitutional right to represent myself. This was not a one time incident ~~and~~ but was constantly occuring several times a week. All officials at the Santa Barbara County Jail knew I had several pro per priv/idges therefore representing myself living in inhumane conditions The official at the Santa Barbara County Jail along with all staff knew or should have known these conditions prevented me from adequatly fighting my case do to the extra mental strain of living in such conditions. The officials and staff at the Santa Barbara County Jail knew or should have known I was physically suffering from a recent head injury as well and the inhumane conditions were causing physical pain.

58. From the Day Reer shut off Larry Tholes water ~~until~~ April 9th untill friday the 13th of 2012 when I believe it was put back on several officers witnessed the conditions of confinement of cells 21-24. they were forced to step over the piles of feces in the hallway. I personally asked C/O Ortega to get some greenshirts to come up and clean it but he refused.

58. a unknown pill call nurses would do their pill call rounds 3 times a day witnessing the inhumane conditions of confinement we were being forced to live in. They were sickened by the situation but did nothing to address the obvious health concerns of inmates living in feces.

59. ~~A~~ A maintenance worker would constantly have to walk through the Area stepping over feces due to the fact there is a maintainance closet in the area of 21-24 where his tools are kept.

60. On April 14, 2013 C/O Alexander and C/O Marking walked through the ISO. 21-24 section at approx. 7:18 am and witnessed the inhumane conditions of confinement we were living in. They took Thole out of his cell who was still covered in his own human feces. They then placed him in a shower while I supplied the soap for him to properly ~~wash~~ wash up.

61. Alexander and Marking then brought up greenshirts to clean. they brought mops buckets and rags.

62. After Thole's cell was cleaned by mopping the floor and walls he was placed back in his cell. The shower he was placed in was not cleaned. Feces was left in the shower which inmates complained about regularly.

63. On April 16 2012 a hearing was held in Dept 1 of the Santa Barbara County courthouse at which time I filed a detailed motion discribing my conditions of confinement and a verbal request for an immediate remedy. (That motion as well as other evidence including photos of the cell were ordered to be confiscated by Superior Court Judge Ochoa. My Appeals attorney Susan Bauguess is in possession of those documents.)

64. My investigator Lynn McLaren is in possession of several interviews concerning my conditions of confinement including one with Larry Thole and his defense attorney David Bixby.

65. At the April 16 2012 hearing Judge Ochoa ordered an examination by a neuroligist. (See Exhibit 3) The neuroligist found I was suffering from "Postconcussion syndrome" causing severe headaches and "hypersensitized to smells such as feces". I was suffering from the load banging and lack of sleep as well. I was also suffering from the psychological effect of being proper on a case that carries a life sentence if convicted and the understanding of the negitive results sleep depervation has on some-ones ability to think rationally and effectively argue a defense.

66. On April 16 2012 I also filed a grievance explaining the effect the conditions of my confinement were having on my pro per status and that I believed it was being done intentially. I also requested a cell move.

67. On April 20 2012 my cell was finally powersprayed out and the feces removed. Finally after several requests to Sgt Espinoza he came and personally seen that my cell was cleaned properly. The unknown maintenance worker had to find a different connector for the powerwasher to fit into the ISO waterlines (This shows how little the powerwasher was used, if ever)

68. On 4/23/2012 another hearing was held in dept 1 concerning my conditions of confinement. County Counsel Kelly Scott discussed some photographs that were taken of my cell on April 18 2012 by Sgt Cobb and Cprl Lammer. Kelly Scott claimed the photos looked like the vent could have been clogged with rust. Cobb and Lammer claimed the same thing in there report (Bates Stamp 002843) (See Exhibit 2 # 7 # 8.)

69. As to claims in paragraph 68 plaintiff relys on the facts set out in his Complaint pursuant to §910. (Exhibit 2)

70. On 4/18/2012 I complained to C.O. Lane about my living Conditions. He told me there was nothing he could do.

71. On 4/19/2012 Reer shut off Larry Thole's water. Larry Thole was not flooding at the time. When Mr Thole realized his watter was off he went into another temper tantrum of banging and yelling.

72. At some point after the 4/23/2012 hearing Larry Thole was moved from cell 23 to an unknown location. Days later he was moved to cell 22 right next to mine. Our Tables and vents were connected. I was scheduled to start Trial that monday the 30th. Larry Thole begin to bang on the Table and scream in my vent for hrs on end. This was damaging to me mentally and physically.

73. On 4/27/2012 the day Thole was moved to cell 22, I filed a grievence log #03468 complaining about the banging screaming and yelling. I gave the grievence to CO Alvarez answered by Sgt Osborne and once again signed off by Lt Lammer. I explained that I believed it was "done purposely to disrupt my pro per status and a form of retaliation."

74. One of the facts I base my claims on in paragraph 73 is the fact that classification was asked by an outside agency (County Counsel) to remove Thole from my section so as to respect and Honor my pro per status. After Thole was moved he was moved back just days later and even closer then he was before.

75. As to claims in paragraph 73 that my conditions of confinement was a form of retaliation plaintiff further believes that his 42 U.S.C. §1183 Civil complaint he filed against several of the staff at the Santa Barbara County Jail and 2 Santa Maria Police officers (Police Agency in Santa Barbara County) in which summary Judgement was granted is also an underlining cause of retaliation. (see Exhibit 4)

76. On 4/28/2012 I filed another grievance after a night of constant banging and screaming with absolutely no sleep while trying to prepare for trial. Sgt Osbourne reviewed the grievence as well as Lt Lammer. Both Osbourne and Lammer were well aware of the inhumane conditions of confinement in-

which I was forced to live in, had the authority to either move me
or take the proper steps to fix the situation but did nothing. Both
officers were witnesses for the prosecution in the case in which I was
representing myself in.

77.   While I was in ISO #21 for a period of approx. 4-6 month there was
a psychiatric inmate of Afro American decent that was housed in cell 24
name believed to be Butler or Hunter. This inmate was never offered or
requested cleaning supplies. He was not given any hand soap or explained
to that he needed to fill out a indigent store list. When the inmate was
finally removed and/or rehoused an unknown officer (believed to be C/O Miller)
brought 2 green shirts to clean the cell. Both of which quickley started
vomiting in the garbage can outside the door. The unknown officer kept
hurrying them to go back in. They were told to wrap garbage bags
around their hands and to dig the "mound" of feces out of the toilet with
their hands. The greenshirts started explaining that the inmate took smashed
fruit and lined the rim of the toilet with it. (This gave the whole section
the smell of rotting fruit mixed with the smell of feces.) The unknown
officer (Possibly Miller) immidiately told them not to tell me anymore or he'd
be written up. From the position of my window I was able to watch them
clean the feces off the wall and door with a mop. The smell coming from
this inmates cell while he was housed there was extremely nausiat-
Ina and caused me headackes and sleeplessness. The feeling of helplessness
being housed in this section of the jail surrounded by psychiatric patients was
exhausting and psychiatrically damaging.

78.   As to claims in paragraph 77 the unknown maintanance guy (believed to
be Dan) had to snake cell 24 after the inmate left. Dan knew or should
have known that that toilet had been unoperable for months. Anyone walking
through that section could not ignore the foal smell. It is the job of
maintanance crew to fix things in the jail that may be health
hazard.

79.   For a time psychiatric inmate, mentioned above, "Cracker" who's last name
is Uribe was placed in cell 24. He would bang for hrs at a time and at one
point was removed by Stun Gun after he allegedly broke the glass window
in his cell door. I believe he got a disciplinary write up for breaking the
window and his phone that was in his cell.

80.   As for claims in paragraph 79 the unknown maintenance guy fixed the window.

81.   As for claims in paragraphs 63 and the "motion describing my conditions of confinement": Details include but are not limited to : ① while Larry Thole had no water he claimed he was drinking his own urine ② I was "fishing" bags of water to him. ("Fishing is making a line out of torn cloth putting a weight on the end like a 'sinker") ③ Larry Thole had no weight so he tied his glasses on the end of the line to get the line to my cell ④ Fishing is against jail rules and when the unknown officer came out of the Tower and saw Larry Tholes glasses he smashed them with his foot and kicked the pieces into a pile of feces that was on the floor ⑤ I retrieved some of the pieces and gave them to my advisory counsel Joe Allen. We are still in possession of those pieces I believe. ⑥ On information and belief I now claim Larry Thole is a war veteran.

82.   As to claims in paragraph #75 and that my conditions of confinement were a form of retaliation for my 42 U.S.C. §1983 civil complaint it must be noted that I named the Chief of Police Danny A Macagni as a defendant (see Exhibit 4) but I could not prove a case against him. I filed that lawsuit in 2008 and in 2011 an article came out in the Santa Maria Sun claiming the exact same claims as in my 2008 Lawsuit against Danny Macgani (see Exhibit 4 "Betraying the Badge). I wish I could have proved the case in 2008 to prevent Alane Avila from being a victim of the Santa Maria Police Dept. (see Exhibit 4) Someone needs to listen about the conditions of confinement at the Santa Barbara County Jail.

83.   During the afore mentioned time period from March of 2010 to August of 2012 plaintiff continued to complain about the conditions of his confinement at the Santa Barbara County Jail. However all complaints were ignored and/or refused by the defendants and their employees.

84.   Plaintiff is informed and believes and therein alleges that the defendants and their employees have taken virtually no action to fix the conditions of confinement at the Santa Barbara County Jail. These failures to get reasonable have harmed plaintiff physically and mentally and will continue to harm plaintiff upon his return to Santa Barbara County. (Appellate Attorney is requesting a reversal on several grounds which would send him back to Santa Barbara County Jail.) the failures to fix the inhumane conditions at Santa Barbara County have harmed other citizens and will continue to harm other unless this court steps in.

85. Plaintiff has initiated and/or filed numerous grievences arising from the foregoing all of which have been denied and/or ignored by the defendants and their employees.

## Legal Claims

86. Defendants their agents and employees with knowledge of the inhumane conditions of confinement at the Santa Barbara County Jail and/or with diliberate indifference or indifference to such conditions have acted or failed to act in such a way as to deprive plaintiff of humane conditions of confinement such as Sanitation and Hygiene and protection from excessive noise, thereby endangering the plaintiffs health and well-being. Such acts and omissions of the defendants violate rights secured to plaintiff under the eighth and Fourteenth Amendments to the United States Constitution.

87. Defendants their agents and employees with knowledge of the inhumane conditions of confinement and his pro per status with diliberate indifference to such conditions and the effect it had on his pro per status failed to act in such a way as to deprive plaintiff of his sixth Amendment right to represent himself.

88. Defendants their agents and employees with knowledge of plaintiffs inhumane conditions of confinement have a duty under the Eighth and Fourteenth Amendment to the United States Constitution to provide all inmates with humane conditions of confinement with the standards of confinement in the state of California.

89. Defendants knowing the needs for humane conditions of confinement for all inmates and/or plaintiff and also knowing the inadequacies and difficiencies in the Santa Barbara County Jails staffing and procedures have a duty under the Eighth and Fourteenth Amendments to establish and impliment policies practices and procedures designed to assure that plaintiff be housed in humane conditions of confinement within the standards of such confinement in the state of California.

90. Defendants knowing of the need to house plaintiff in humane conditions of confinement and with deliberate indifference to the inadequacies and difficiencies in the Santa Barbara County Jails staffing and procedures have failed and neglected to establish and implement policies practices and procedures designed to assure that plaintiff be housed in

humane conditions of confinement at the standards therefore in California as a whole or have adopted policies and procedures which defendants knew or reasonably should have known would be ineffective in delivering humane conditions of confinement at such standards thereby, endangering the plaintiffs health and well-being in violation of rights secured to plaintiffs by his eighth and Fourteenth Amendments to the United States Constitution.

91. Defendants their agents and their employees with knowledge of plaintiffs medical needs, have acted or failed to act in such a way as to deprive plaintiff of necessary and adequate medical care thereby endangering the plaintiffs health and well-being. Such acts and omissions of defendants violated rights secured to the plaintiff under the Eighth and Fourteenth Amendments to the United States Constitution.

92. The defendants actions and/or omissions were negligent and/or reckless and/or intentional.

93. The defendants actions and/or admissions were commited under the Color of Authority and/or pursuant to policies customs, practices, rules, regulations ordinances statutes and or usages of the state of California and/or the Santa Barbara County Jail.

94. Plaintiff has no adequate and sufficient remedy at law with which to address the wrongs alleged herein and will continue to suffer irreparable injury for the Conduct of defendants unless he is granted equitable relief prayed for herein.

95. As a direct and proximate result of the above described actions and omissions of defendants plaintiff has suffered general damages in excess of $75,000.00 exclusive of interest and costs. the exact amounts of which will be proven at Trial.

Wherefore Plaintiff prays for relief as follows:

1) That the court determine and enters Judgement declaring that the acts and omissions of the defendants as set forth above, violates rights secured to plaintiff by the Eighth and Fourteenth Amendments to the United States Constitution.

2) That upon hearing the court issue a preliminary and permanant injunction:

(A) Enjoining the defendants their employees agents and their

successors in office from providing humane conditions of confinement to plaintiff and or all inmates at the Santa Barbara County Jail that is inconsistent with standards of Conditions of confinement in the state of California;

(B) Enjoining the defendants their employees, agents and successors in office from refusing to provide and/or delaying the provisions of necessary humane conditions of confinement, of plaintiff and/or any inmates at the Santa Barbara County Jail;

(C) Enjoining the defendants and their successors in office from failing to instruct supervise and train their employees and agents in such a manner as to assure humane conditions of confinement to plaintiff and/or any inmates which is consistant with the standards of Conditions of Confinement in the State of California;

3) That the Court establish a panel of independant experts to evaluate the delivery of humane Conditions of Confinement at the Santa Barbara County Jail and insure the compliance of defendants and their successors in office with the Courts order herein;

4) That the Court award general damages to plaintiff;

5) That the Court award punitive damages to plaintiff;

6) That the Court award Nominal damages to plaintiff

7) That the defendants be required to pay the legal Costs and expenses herein including reasonable attorney fees once plaintiff is represented.

8) That the Court grant such further and additional relief that is appropriate herein.

Dated June 21, 2013

Respectfully Submitted

Kennith A Barber
Kennith R Barber

Verification

I Kennith A Barber declare as follows:
• I have prepared and read this 42 USC§1983 Civil Complaint and the Claims listed are true of my knowledge and belief.
• I declare under penalty of perjury the foregoing is true and correct Executed on June 21, 2013 at California Cali.

Kennith R Barber

# EXHIBIT "1"

# SHERIFF'S DEPARTMENT
## Santa Barbara County

## INMATE GRIEVANCE

CID# 392037
LOG# 03339
Staff use only

Date: 3/17/2012

Name: Barber, Kenneth    Booking # 930020    Housing Assignment: NWIG

Check One: (✓) Grievance ( ) Appeal

I just moved into this cell. There is NO ventilation. It appears as the Belt is once again broken. I was in this cell before and am familiar with this vent. It is deffinatly Not working.

The sucker vent is Also clogged with shit. literally! First please get some ventilation then have someone powerspray this cell.

this is a serious health issue. Thank you.

Date Rec'd 3/17/12 Time: 2200   Rec'd by Alvarez    Shift Commander Initials LTC
Routed to: B/day shift

**********************************************************************

## GRIEVANCE REPLY

**03/25/12**

**Mr. Barber,**

**Work order #23776 has been submitted for the ventilations in your cell. Please continue to uncover the vents when you receive the cleaning supplies. This will help in clearing the ventilation.**

**Sgt Miranda**

By: _____    Date: 3/25/12    Facilities Commander/Designee T. Vommer 2/27/11

Distribution: White - Admin/Medical
            Yellow - Reply to Inmate
            Pink - Kept by Inmate

SH - 585 (Revise 9/95) (Admin)

# SHERIFF'S DEPARTMENT
### Santa Barbara County

**Staff use only**
CID# 282037
LOG# _____

# INMATE GRIEVANCE

Date: 3-29-2012

Name: Barber Kenneth                Booking # 930626            Housing Assignment NWE 21

Check One: (X)Grievance ( )Appeal

---

I've Been in this cell since the 13th its now the 29th. There is still shit, literally, above my head packed in the Vent. Now I have sewage coming up from my drain with worms all through it. I've been Told that "A work order has been put in." And By tomorrow, maybee, the Toilet will be fixed So I can flush.

This is a health issue and an emergency. You cannot force inmates to live in shit and sewage. All it takes is a worker to come up and snake the Drain. Its been weeks and a grievence, still my vent is not free of shit

---

Date Rec' 3-29-12 Time: 1130    Rec'd by ~~~~~ 3154    Shift Commander Initials _____
Routed to: _____

*************************************************************************************

## GRIEVANCE REPLY

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

By: _____    Date: / /    Facilities Commander/Designee _____

Distribution:  White  - Admin/Medical
               Yellow - Reply to Inmate
               Pink   - Kept by Inmate

SH - 585 (Revise 9/95) (Admin)

# SHERIFF'S DEPARTMENT
### Santa Barbara County

## INMATE GRIEVANCE

Staff use only
CID# 282023
LOG# 03356

Date: 4/4/2012

Name: Barber, Kenneth          Booking # 930026          Housing Assignment NWF 21

Check One: (✓)Grievance ( )Appeal

I recieved an answer to grievance #03339 and was told a work order #23776 has been submitted and continue to clean the Vent With Cleaning Supplies.

Fact: there is still shit in my vent going to the roof. I cannot reach it if is above my head

Fact #2: Its not my Job to clean up other inmates Shit, Its your's

Fact #3: I've had the Airconditioning guy come and say "Thats for Maintainance" then maintainance come + said "its for the Air Conditioning guy."

You cannot make inmates live in shit. There is also glichs of shit on other spots above me. Lt. Lammer will be testifying about this in court, Dept 1 Inhumane Conditions

Date Rec'd 4/3/12   Time: 1630   Rec'd by ____ 2369   Shift Commander Initials ___ 2633
Routed to: "C" SQUAD .

************************************************************

## GRIEVANCE REPLY

Mr. Barber,

On April 3rd I received your grievance regarding the cleanliness of your cell. On the morning of April 4th CD Apple and CD Kliegl brought inmate workers and cleaning supplies to your cell and offered to have your cell/vents cleaned out. You refused to come out of your cell and allow it to be cleaned. The officers tried to resolve your complaint about your cell/vents but you were unwilling to cooperate.

Sgt. Maynard

By: Sgt M 2633      Date: 4/4/12   Facilities Commander/Designee LT. LAMMER 12h

Distribution: White  - Admin/Medical
Yellow - Reply to Inmate
Pink  - Kept by Inmate

SH - 585 (Revise 9/95) (Admin)

# SHERIFF'S DEPARTMENT
### Santa Barbara County

Staff use only
CID # 292037
LOG # 03419

Date: 4/16/2012

## INMATE GRIEVANCE

Name: Barber, Kenneth                Booking # 930126         Housing Assignment NqI 81

Check One: (X) Grievance ( ) Appeal

Lt Callahan Came to my cell a few weeks back and saw what I'm dealing with. Human Feces in my cell Parked in the vent. At that point my neighbor had admitted to purposely Clogging the toilet with sewage all over for days, and surrounded by psychiatic patients that bam, yell & Flood at all hrs. He unterstood my situate and said "I will talk to class" to try to get you out of here." I've talk'd to several officers about shit in my cell. I srieved a response from Sgt Maynard who said I reso refused to come out of my cell which is false. When Kneel and Apple Come to clean my cell on April 4. Both Kneel & Apple aareed' that My Vent could not be Cleaned with a Mop and without a ladder which they did not have. By Maynard Sending them to my cell at 330-400 am is evidence of this administration intentionally trying to disrupt my sleep and Pro per status. The Condition I'm in are designed to prevent sleep and at Times are instigated. I talked to Mr Thole and explained how his mental & personal issues are interfering with my pro pe status. He seemed receptive and agreed One of us should go to New East ISO. Either one.

Date Rec'd 4/16/12 Time: 2050   Rec'd by 3627   Shift Commander Initials AM 7633

Routed to: Sgt. CALLAHAN .

*************************************************************************

## GRIEVANCE REPLY

MR. BARBER -

    IT IS MY UNDERSTANDING THAT YOUR CELL VENT WAS CLEANED TODAY BY THE DAYSHIFT CUSTODY DEPUTIES. ANY HOUSING ISSUES YOU ARE HAVING NEED TO BE ADDRESSED WITH THE CLASSIFICATION UNIT.

MR. BARBER -

    I HAVE SPOKEN WITH CLASSIFICATION AND THOSE WILL BE MOVED INTO ANOTHER ISOLATION AREA
                        LT. LAMMER #2761

By: SGT. CALLAHAN # 3296        Date: 4/20/12 Facilities Commander/Designee LT LAMMER
                                                                     #2761

Distribution:  White  - Admin/Medical
              Yellow - Reply to Inmate
              Pink   - Kept by Inmate

SH - 585 (Revise 9/95) (Admin)

# SHERIFF'S DEPARTMENT
### Santa Barbara County

Date: 4/27/2012

## INMATE GRIEVANCE

Staff use only

CID# a72852

LOG# 03468

Name: Barber, Kenneth     Booking # 9306326     Housing Assignment: N/I 21

Check One: (X)Grievance ( )Appeal

Last week a hearing was held and County Consel Kelly Scott
Assured Judge Ohno that I would not be placed next
to psychiatric patients, that bang yell or scream.
They specifically moved Larry Thola Away from me.
Today, [ ] moved him right Next door. Our Tables
are Connected.

I am pro pir and start Trial on mon. I need to
be moved to somwhere, not next to a psychiatric
Patient that Screem, yells and Bangs.

This is being done purposely to disrupt my pro per
Status and a form of retaliation.

Date Rec'd 4/27/11 Time: 2359 Rec'd by _Alvarez_ 908    Shift Commander Initials KDC 3246
Routed to: CLASSIFICATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## GRIEVANCE REPLY

MR. BARBER

THIS ISSUE HAS BEEN ADDRESSED

DN

By: SGT. OSBORNE   2432   Date 05/08/12 Facilities Commander/Designee JT. VAmm SE/27/12

Distribution:  White  - Admin/Medical
               Yellow - Reply to Inmate
               Pink  - Kept by Inmate

SH - 585 (Revise 9/95) (Admin)

# SHERIFF'S DEPARTMENT
## Santa Barbara County

# INMATE GRIEVANCE

Staff use only
CID# 222037
LOG# 03462

Date: 4/28/2011

Name: Barber, Kenneth          Booking # 9300260          Housing Assignment NW1 21

Check One: (✓)Grievance ( )Appeal

I cannot Do my proper legal work living next to a psychiatric patient that bangs on his desk that is connected to mine. I cannot live with banging on the cell door on and off all day and knight everyday. I cannot live next to feces less then 5 feet from my door at times. I am not being pulled as disciplinary right now but am being Treated as such. This Administration can't or chooses not to attempt to control Larry Thole and are well aware of his Antics. So this has to be a retaliation form for the Criminal Charges and the lawsuit I have Filed. Counts Counsel Kelly Scott assured the Judge I would not be housed near @ Larry Thole, or any Banging Screaming Feces Shooting inmates. Then you moved him seven closer next door and his Table connected to mine through the wall. I feel and hear every Bang as it it's in my cell now. Move Me or him please.

Date Rec'd 4/28/12 Time: 1318   Rec'd by BOUETTE 448   Shift Commander Initials

Routed to: SGT OSBORNE

*****************************************************************************

## GRIEVANCE REPLY

MR BARBER,
    THIS ISSUE HAS BEEN ADDRESSED.

By SGT. OSBORNE 2632   Date: 05/4/12 Facilities Commander/Designee

Distribution:  White  - Admin/Medical
               Yellow - Reply to Inmate
               Pink   - Kept by Inmate

SH - 585 (Revise 9/95) (Admin)