# EXHIBIT "2"

# COUNTY OF SANTA BARBARA



**Ray Aromatorio**
*Risk Manager*

**Juliann Robles**
*Senior Risk Analyst*

**Deborah Wells**
*Disability Manager*

**Johnny Hernandez**
*Safety Officer*

## RISK MANAGEMENT DIVISION
### GENERAL SERVICES DEPARTMENT

*November 06, 2012*

*Kenneth Richard. Barber*
*P43791-A5-237, Upper, CSP*
*PO Box 5004*
*Calipatria CA  92233*

| | | |
|---|---|---|
| RE: | *Claimant:* | *Kenneth Richard Barber* |
| | *Date of Occurrence:* | *03/13/2012* |
| | *Date Claim Filed:* | *08/24/2012* |
| | *Date of Denial:* | *November 06, 2012* |

*Dear Mr. Barber:*

*The above referenced claim which you have submitted to the Clerk of the Board of Supervisors has been reviewed at the Board's direction, and in accordance with the provisions of Government Code Section 913 and 31000.8, notice is hereby given that said claim has been denied.*

> ***WARNING:  Subject to certain exceptions, you have only six (6) months from the date this notice was deposited in the mail to file a court action on state claims.  (See Government Code Section 945.6)***

> ***The six (6) month time limit referred to in this notice applies only to State Claims or causes of action which are governed by the California Tort Claims Act.  This notice does not apply to statutes of limitations for Federal claims or causes of action.***

*You may seek the advice of an attorney of your choice in connection with this matter.  If you desire to consult an attorney, you should do so immediately.*

*Sincerely,*

*Marianne Rauch*
*Risk Analyst*

*DECLARATION OF SERVICE BY MAIL*

*I DECLARE THAT:*

*I am over the age of eighteen (18) years, employed by the County of Santa Barbara, and not a party to the above entitled cause; that on November 06, 2012, in the City of Santa Barbara, County of Santa Barbara, State of California, I deposited in the mail, United States Postal Service,* **a Notice of Denial of Claim***, enclosed in separate, sealed envelope, with postage fully prepaid thereon, addressed as follows:*

> *Kenneth Richard. Barber*
> *P43791-A5-237, Upper, CSP*
> *PO Box 5004*
> *Calipatria CA  92233*

*I declare under penalty of perjury that the foregoing is true and correct.*

*Executed on November 06, 2012 at Santa Barbara, California.*

*Signature*

*105 East Anapamu Street*
*Santa Barbara CA  93101*

Before the Governing Board of the Santa Barbara County
                    Sheriffs Department

In the matter of the Claim of
Kenneth Richard Barber Jr.
Against the Santa Barbara Co.
Sheriffs Department
      Pursuant to Gov Code § 910, claimant Kenneth Richard Barber
presents the following claim against the Santa Barbara County
Sheriffs Department.

1.    Claimant's address is 4436 Calle Real, S.B., Cal. 93110 and
      all notices regarding this claim should be sent here.

2.    On or about March 13, 2012 I sustained an accidental head
      injury at the Santa Barbara County Jails I.R.C. 100 Unit.
      C.D. Ortega searched the cell and threw away a photo and
      several documents concerning a 42 U.S.C. §1983 civil complaint
      against several of his fellow officers that was filed in the
      United States District Court Case # CV-1102365-DMG (MLG). This
      caused me to miss a deadline and forced me to drop the suit.

3.    I was then rehoused to North West I 50 2L. The cell was cover-
      ed in human feces and the unreachable vent was clogged
      full of feces. (See Bates Stamp 002847 and 002848)

4.    I talked to several officers concerning the condition of my
      cell: Feces, no ventilation and/or heat, horrible smell of feces.

5.    Nothing was getting done so I started the grievence process
      on 3/17/2012 and continued untill the vent and cell was power-
      washed by Officer Espinoza (see grievences log# 03339, 03386,
      03419, 03468, 03462 etc) on April 20, 2012.

6. An Evidentiary hearing was held in Dept 1 of the Santa Barbara Superior Court and an examination by Neurologist Dr. Philip Delio ordered.

7. On April 18, 2012 within minutes of Sgt Cobb and Cprl Lammer arriving to photograph the area an officer and green shirts cleaned and mopped all the feces outside the cell.

8. My Lawyer Joseph Allen pulled me out of my cell for an Attorney Visit to discuss my living conditions and while I was at the visit officers Cobb and Lammer took Photos of my cell. (Except the spots where feces was all over the ceiling) They did however take photos of the feces smashed into the vent, though in their report they claimed it was rust. (Bates Stamp 003843) Sgt Espinoza Cleared the vent of all the feces.

9. The officials at the Santa Barbara County Jail knew I was representing myself Proper and was preparing for an upcoming trial in which almost 80 of their officers were listed as witnesses. They were well aware of the conditions of my confinement (ie. feces in my cell that was unreachable, feces all over the tier, I was in a 4 cell section with psychiatric patients that regularly screamed, banged and threw feces resulting in loss of sleep for days)

10. County Counsel assured the judge that the psychiatric patient Larry Thole would be rehoused, which he was only to be moved even closer a couple days later. Right next door with our tables connected. Every bang on his table was a bang on mine.

11. The jail officials failed to respond reasonably in a reasonable amount of time. They simply ignored the problems until I brought it to the attention of the S.B. Superior Court.

12. The Santa Barbara County Jail officials acted with deliberate indifference to the deprivation of my basic human needs and the substantial risk of serious harm.

13. I was deprived the "basic human need" of sanitation and hygiene by being housed in a cell covered in feces in a section with feces all over the teir in front of my door.

14. I was deprived the "basic human need" of clean air due to the fact that the vent was clogged with feces preventing adequate air flow. I had to sleep and eat for over a month in these inhumane conditions.

15. The condition of my confinement was designed to prevent sleep which is undoubtedly one of lifes basic needs, and at times deliberately made worse with the instigation of the psychiatric inmates. It was also common knowledge I had sued the Santa Maria Police Dept and won and known I was fighting the lawsuite against the Santa Barbara County Jail.

16. The supervising officers failed to properly train & supervise. These inhumane conditions should have been addressed immediately. The cell should have been cleaned of all feces prior to me being placed in the cell.

17. Multiple witnesses will be called including but not limited to: 2 pill call nurses, several floor officers, 4 trustees, several inmates and maintenance; Investigator Lynn McPherson and David Bixby; Officers Alexander, Marking and Alexander Fuller.

18. Claimant relies on all facts presented in the 4/16/2012 "Request for Evidentiary hearing" whether oral or written. Claimant has in his possession pieces of the broken glasses and suicide note written by Larry Tmle: Both covered in his feces.

19. As of the date of this claim, claimant has incured the following injuries: "Postconcussion syndrome" with "persistent headaches and sensitivity to noise & oder." Disruptive sleep patterns causing headaches to get worse when he is overly tired & fatigued. (See Notice of Motion for Continuence Served on April 26, 2012, Dr Delio's report) Claimant further suffered mental and emotional anguish.

20. The name of the public employees causing claimants injuries are as follows: Sheriff Bill Brown; Lt Lammer; Sgt Osborne; Sgt Callahan; Sgt Espinoza; Sgt Maynard; Sgt Sheffield; C.D. Kliegl; C.D. Ortega; a few unknown officials.

21. This is a non-limited civil claim exceeding $10,000.⁰⁰ Jurisdiction over this claim rests in the superior court and/or the United States District Court.

22. 08/18/2012                            *Kenneth R Barber Jr*
                                          Kenneth R Barber

23. If I am Transfored my CDC# is P47391 B.D. 7/22/69;
Attorney: Joseph Allen (805)892-2480 (805)689-1280

## Proof of Service

I Kenneth R Barber Jr declare that:

- I am over 18 years of age
- I am currently incarcerated at the Santa Barbara County Jail at 4436 Calle Real, S.B. Cal 93110
- ON Aug 19, 2012 I served the enclosed "Claim against the Santa Barbara County Sheriffs Department" by placing it in a sealed envelope, postage fully paid and giving it to Officer Hunter to place in the US Postage Box here at the Jail.
- The envelope was addressed as follows:

    To: The Clerk or Secretary of the Santa
    Barbara County Sheriffs Department
    4436 Calle Real
    S.B. Cal 93110

I declare under penalty of Perjury the foregoing is true and Correct. Executed on Aug 19, 2012 at S.B. Cal

Kenneth R Barber Sr

# EXHIBIT "3"

## HEALTH CARE CENTERS

PUBLIC HEALTH DEPARTMENT
SANTA BARBARA COUNTY

**Santa Barbara Health Care Center**
345 Camino del Remedio   Santa Barbara, CA 93110-1332
805-681-5488  Fax: 805-681-5404

April 19, 2012
Page 1
Chart Document

**KENNETH RICHARD BARBER**
Male  DOB: 07/22/1969                    54251-2843001

**04/19/2012 - Office Visit:** neuro follow up visit
**Provider:** Philip Delio, MD
**Location of Care:** Santa Barbara Health Care Center
**Status:** ON HOLD DOCUMENT.  Contents are preliminary

**Visit Type:**  Follow-up Visit
**Referring Provider:**  prison health

**CC:**  f/u neuropathy.

**History of Present Illness:**
Patient has been seen on several occasions for several neurologic complaints including

1. Peripheral neuropathgy related to Chaarcot Marie Tooth disease
2. Compressive neuropathy at the left elbow status post decompressive surgery
3. Recent traumatic head injury with postconcussive syndrome

Patient continues to complain of neuopathic pain in upper and lower extremities which is under better control with tramadol.  He is no longer on tegretol or neurontin  His left hand is having some paresthesias in the last two digits consistent with ulnar neuropathy

He does have persistent headaces and neck pain since his fall from his bunk bed and injury.  Prior imaging studies of his C spine in 2/2010 showed DJD at C5-6, C6-7, . C3-4 osteophytes causing mild right greater than left neuroformainal stenosis, a broad disc bulge at C5-6 narrowing the neuroforamin at that level, and a C6-7 disc narrowing teh left formina.

He is having some trouble in his islated cell.  He is next to an inmate(?) who is loud all night, this is disruptive to Kenneth's sleep patterns and he is finding the headaches get worse when he is overly tired and fatigued.  He also finds he is hypersensitized to smells such as feces since the accident, and this has been bothersome to him

**Chief Complaint:**  f/u neuropathy

## Physical Exam

**Neurologic:**
Has normal motor strength in all muscles tested of the upper extremities except perhaps some trace left intrinsic hand muscle weakness, and his weakness of the LE in distal feet includign gastroc and tibialis anterior.  has atrophy of these muscle groups in legs.

Reflexes are globally reduced with trace upper extremity and absent lower extrremity reflexes.

No clear sensory changes other than some increased sensitivity to cold in left hand but not in clear

# HEALTH CARE CENTERS

## PUBLIC HEALTH DEPARTMENT
## SANTA BARBARA COUNTY

**Santa Barbara Health Care Center**
345 Camino del Remedio   Santa Barbara, CA 93110-1332
805-681-5488  Fax: 805-681-5404

*April 19, 2012*
*Page 2*
*Chart Document*

## KENNETH RICHARD BARBER
Male  DOB: 07/22/1969

54251-2843001

radicular or peripheral pattern.

Coordination and gait grossly intact

Cranial nerves grossly intact

## Impression & Recommendations:

**Problem # 1:**  POSTCONCUSSION SYNDROME (ICD-310 2)
**Assessment:** Unchanged
1. *Doing well but still with some persistent headaches and sensitivity to noise and odor*

REC:
1. Continue Tramadol for pain
2. Accomodations for better sleep if he can be moved away from his current cell location whcih has a disruptive and loud neighbor
3. Hypersensitivity to smell can likely not be remedied at this time
4. In regards ot these issues, I do not feel this or any of the following medical diagnoses preclude him from standing trial and particpating in routine court related activies and the legal process.

**Problem # 2:**  MIGRAINE WITHOUT AURA (ICD-346 10)
**Assessment:** Unchanged
Headaces likely postconcussive in nature.

REC:
1. COntinue Tramadol for pain

**Problem # 3:**  CHARCOT-MARIE-TOOTH DISEASE (ICD-356.1)
**Assessment:** Unchanged
Stable
REC: No new recommendations

**Problem # 4:**  CERVICAL RADICULOPATHY (ICD-723.4)
**Assessment:** Unchanged
Has continued complaints of head and neck pain, likely due to preexisting cervical spine degenerative disease superimposed on recent traumatic injury resulting in cervical sprain type injury to the neck

REC: Time and continued pain control

**Patient Instructions:**
1)  Please schedule a follow-up appointment in 3 months.

# HEALTH CARE CENTERS

PUBLIC HEALTH DEPARTMENT
SANTA BARBARA COUNTY

**Santa Barbara Health Care Center**
345 Camino del Remedio   Santa Barbara, CA 93110-1332
805-681-5488  Fax: 805-681-5404

April 19, 2012
Page 3
Chart Document

**KENNETH RICHARD BARBER**
Male  DOB: 07/22/1969                    54251-2843001

# EXHIBIT "4"

## Claim IV

The following civil rights have been violated:
Fourteenth Amendment - right to Due Process

Defendant Chief of Police Danny R Macagni violated my civil rights:

A few weeks before June 25, 2007 I was pulled over by Santa Maria Police Officer J. Lopez and was subjected to a warrantless fruitless search and siezure. This stop was in violation of my Fourth Amendment right to be free from unreasonable search and seizure and my Fourteenth Amendments right to due process.

On June 25, 2007 I was pulled over once again by officer Lopez in violation of my Fourth and Fourteenth Amendments because the search was without cause or warrant and was done unlawfully and led to my arrest on a P.A.L. warrant and Misd. Charges. Officer Lopez then unlawfully coerced a confession out of me after I invoked my Miranda rights by threatening to charge my girlfriend Tamara Bonnes with what he "suspected" as stolen computer equipment and hold her overnight so she would miss her child custody appointment (Exhibit D) This was in violation of my Fifth Amendment right to remain silent, my Sixth Amendment right to councel, my Fourth Amendment right to be free from unreasonable search and seizure, and my Fourteenth Amendment right to Due Process.

I was then brought to the Santa Barbara County Substation where two more searches were conducted in which I am claiming excessive force and cruel and unusual punnishment in violation of my Fourth, Eighth, and Fourteenth Amendments. These searches led to several felony drug charges.

After my arrest I wrote James Robertson of the A.C.L.U. (Exhibit 'A') and informed him of S.M.P.O. Lopez's misconducts. He then sent my letter by E-Mail to the Mayor Laurence J. Lavagnino (Exhibit B) which in turn sent it to Chief of Police Danny R. Macagni.

Officer Macagni wrote me a letter (Exhibit C) Assuring me that Lopez's actions were under investigation by Norm Come' of Internal Affairs. He also assured me that he would review any and all statements and reports provided and would advise me of his findings via a letter. Officer Come' conducted a recorded complaint describing my alligations in great detail

pg. 13

and also assured me that my allivations would be taken seriously. I to date have heard nothing back from Danny Macagni concerning my complaint and have even wrote a letter to Norm "Come" asking for the outcome with no avail. I've also filed a "Pitchess" motion and it was granted as so the court could look into Officer Lopez's personel file to see if any relevant complaints had been filed on him. My Complaint was not in there.

Santa Maria Chief of Police Danny R Macagni has refused to take my complaint seriously. He has failed to properly train and or instruct officer Lopez and other Santa Maria Police officers in the reasonable amount of force to be used in an arrest. Danny R Macagni is aware of at least two incidences in which suspects have had to have medical attention after arrest by his officers (Exhibit F) His neglect of alligations and his ineffective, inefficient investigations has caused more victoms of his officers unlawfull unreasonable, and contrary to law arrests.

Chief of Police Danny R Macagni has violated my Fourteenth Amendments right to Due Process by his gross negligence in addressing my complaint.

I believe I am entitled to the following spicific relief:
   1) Professional Sanctions against 'Officer Macagni'
   2) Termination of Lopez
   3) Punitive Damages of $500,000⁰⁰
   4) Reasonable Attorney Fees.

Date Nov. 8, 2008

*Kenneth R Barber*
Kenneth R Barber

pg 14

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-6273-DMG (MLG) | Date | January 10, 2011 |
|---|---|---|---|
| Title | Kenneth Richard Barber v. Santa Maria Police Department, et al. | | |

| Present: The Honorable | Marc L. Goldman, Magistrate Judge | |
|---|---|---|
| Terri Steele | n/a | n/a |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     (In Chambers) Order for Supplemental Briefing

On January 3, 2011, District Judge Dolly M. Gee entered an order granting Plaintiff's motion for summary judgment on his Fourth Amendment claim arising from the investigatory stop on May 19, 2007, and Defendants' motions for summary judgment on all other claims. The case was remanded to me for a supplemental determination on whether damages are warranted or whether that issue must be tried.

It is ORDERED that on or before February 25, 2011, Defendants Lopez and Arias shall file a supplemental motion and brief addressing the issue of compensatory, nominal, and punitive damages in the context of this case. The brief shall address the question of whether summary judgment on any aspect of damages is available or warranted. Should Defendants concede that the issue of damages is not subject to summary judgment and must be tried, they shall file a notice so stating and Plaintiff need not file a response.

If Defendants Lopez and Arias do file a motion for summary judgment as to any aspect of available damages, Plaintiff shall file a reply on or before April 1, 2011. The matter shall be deemed under submission as of that date.

Initials of Clerk     ts

CV-90 (06/04)                          CIVIL MINUTES - GENERAL                          Page 1 of 1

# Santa Maria Sun / Cover Story

The following articles were printed from Santa Maria Sun [santamariasun.com] - Volume 12, Issue 20
Share:

## Betraying the badge?

*Former Santa Maria police officers allege mishandling in reputed prescription drug thefts*

**BY JEREMY THOMAS**

In the predawn hours of April Fools' Day 2004, Santa Maria resident Alane Avila awoke in her bedroom with a start.

> **Larry Ralston, Lompoc Police Capt.**
>
> *'When we get a citizen's complaint, it gets investigated to some degree. It doesn't sound like this got investigated at all.'*

"I just heard this bang and a flash," Avila recalled. "I jumped up and my door came flying open, and there's all these guys with ski masks on and guns pointed saying, 'Get on the ground!'"

It wasn't until Avila was rounded up with the other members of the shared household that she realized her perceived intruders were officers from the Santa Maria Police Department's SWAT team, who were searching the home for a suspected drug dealer.

Avila, now living in Madera County, was renting a room in the house at the time, and had no connection to the man the authorities were looking for. However, upon the officers' departure, she found her bedroom had been thoroughly ransacked.

"When I went back to my room, the mattresses, everything was pulled out of the closet, everything was just pulled out of the drawers, everything," Avila said. "Drawers turned upside down. It was a mess."

In the aftermath of the raid, Avila noticed something amiss. Recovering from a major knee surgery, Avila had filled her doctor's prescription for 80 hydrocodone—a synthetic opiate—the night before. After the officers left, only 15 pills remained in the bottle.

Avila knew someone had taken them. They were there when she went to bed just hours before, she said, and she was the only one who had access to her room.

"I just thought maybe the officers took them," Avila said. "Basically, I grew up all my life thinking it was the officer's word against yours, so I didn't know what to do. My hands were basically tied. I called my doctor and informed him that the prescriptions were lost."

### Piecing the pill puzzle

Days after the raid, Avila placed a call to Santa Maria Police Sgt. Greg Carroll, then supervisor of the department's narcotics suppression team, to explain the situation.

"She said she was missing some pain medication," Carroll recalled. "I told her sometimes things happen during search warrants, things get tossed around. The pills may have been dropped on the floor. She said no, the pill bottle was in the exact same spot in her bedroom and dresser drawer."

Investigating further, Carroll visited Avila's home on Depot Street the following day. She showed him her pill bottles and the receipt for her recent refill.

"I go out there and she had left everything the way it was," Carroll told the *Sun*. "She showed me where she had surgery, showed me the prescription, when it was filled, and what doctor. Everything she was telling me was on the up and up. She didn't fit the description of a drug addict or someone who was strung out on pain medication or anything."

Because the search warrant was served at multiple locations, the SWAT team had help from the department's detective bureau. Carroll talked to the team's lead officer.

Carroll's inquiry ultimately centered on an officer who will be referred to as "Joe Friday" for this article.

After speaking with Avila, Carroll explained the situation to his lieutenant, Larry Ralston, now a captain with the Lompoc Police Department. Ralston was supervisor of the SMPD's detective bureau when the alleged theft occurred.

"I was instructed by [Ralston] at the time to write up a citizen's complaint, to do basic follow up, which I did, just to see if there was any factual basis to the complaint, which there was," Carroll said. "So I wrote it up."

In an interview with the *Sun*, Ralston confirmed Carroll's version of the events, adding he had sent the complaint to Santa Maria police chief Danny Macagni after reviewing it.



**CHIEF CONCERN:**
*A recent deposition made by Santa Maria Police chief Danny Macagni reveals he's unsure as to how a complaint was handled. The chief declined to speak to the Sun about the issue, citing a non-disclosure agreement—— though Santa Maria city attorney Gil Trujillo said Macagni and others were instructed to send inquiries about the matter to Trujillo's office.*
FILE PHOTO BY STEVE E. MILLER

"I had asked [Carroll] to prepare a memo about what happened and then I prepared a memo with his and forwarded it to the chief. I was told some time later that the chief handled it, and that was the end of it as far as my involvement," Ralston said. "I inquired several other times, but I was never given any more specific information."

"I don't remember [Macagni] telling me who, if anybody, investigated anything," Ralston continued. "I was given the impression that he handled it, and if I remember right, it was more along the lines of he handled it himself, that he talked to [Friday]."

According to Carroll and Chuck Rylant, a former Santa Maria police detective who served for 15 years, instead of sending the complaint to Internal Affairs for investigation, per usual procedure, Macagni showed the complaint to Friday and asked him if he'd stolen the drugs; Friday denied the accusation.

Carroll said Friday then stormed into his office, "ranting and raving," and claiming no involvement in the alleged theft. Carroll later heard it wasn't the first time Friday had been suspected.

According to Carroll, Ralston explained that another Santa Maria officer had reported suspecting Friday of stealing prescription drugs during a previous search warrant, served in 2003 at a residence in Nipomo. Police were led to the home looking for a suspect in a credit card theft case.

When asked to supply a copy of the police report describing the search warrant under the California Public Records Act, the city refused in a June 24 letter. Instead, city officials sent the *Sun* a copy of a booking record for the credit card theft suspect from Santa Barbara County Jail and a brief description of the raid.

According to Carroll, Ralston wrote up a memo detailing the complaint brought by the officer who suspected the theft. Though Ralston recalled hearing accusations against Friday, Ralston said he couldn't remember if he'd actually written up a formal complaint or not.

The officer who's alleged to have complained refused to comment for this story.

At the time of the suspected thefts, Ralston said Friday was dealing with an injury that required doctor-prescribed medication.

**BLOWING THE WHISTLE?**
*Former Santa Maria Police sergeant Greg Carroll, who recently settled his lawsuit against the city, believes Chief Danny Macagni failed to properly investigate suspected prescription drug thefts involving one of the agency's own officers.*

PHOTO BY STEVE E. MILLER

"It was a legitimate injury," Ralston said. "There was nothing illegitimate about it at all."

Ralston added that as far as he knew, there was never any disciplinary action taken against the officer, but that doesn't mean it didn't happen.

"I think it's remote, but there's a chance [Friday] could've been disciplined and we would have never known about it," Ralston said. "There's a chance."

According to Rylant, who also worked in the officer bureau, it was believed around the station that the accused officer had an addiction to medications, which caused no small amount of concern.

"Everybody knew this was going on, and no one dealt with it," Rylant said. "It wasn't a surprise, but it was kind of a surprise to see it at this level. It blew me away."

Carroll feels that the chief didn't do enough to get help for someone who needed it.

Months passed, and Carroll claims whenever he inquired about the status of the complaints, he was told Macagni was taking care of it.

"I heard nothing back from it," Carroll said. "I had actually made a suggestion to [Ralston] at the time that we should set up a sting and have this officer come in on a search warrant and plant some prescription meds in the room, and let him search it and see if they come up missing, that would definitely tell if he was involved or not. [Ralston] took it to the chief, because he thought it was a good idea, too, and the chief said, 'No, I'll handle it.'"

Carroll, who began working in Santa Maria in 1990 and won the department's Supervisor of the Year award in 2001 and 2004, said he'd never seen anything like it before in his entire career.

"Internal Affairs should have been brought in," he said. "I think the best way would have been to do a sting, because we do search warrants all the time, and it would be easy to set up a room and put some prescription drugs in there, let him search it without his knowledge and have IA [follow] it all the way through."

"People were shocked it was handled the way it was," he added.

**Coming to light**

On June 17 of this year, former SMPD detective Rylant filed a citizen's complaint with Santa Maria city attorney Gil Trujillo regarding the allegations against Friday. The complaint accuses Macagni of violating California Penal Code Sec. 832.5, a state law requiring police departments to conduct prompt investigations of suspected employee misconduct.

"This is the most serious allegation I've ever been privy to during my fifteen-year law enforcement career, however, it was brushed under the carpet as being insignificant," Rylant writes in the complaint. "If you study police corruption such as the famous Rampart scandal, it was City Council and City Management overlooking these serious seeds that led to even more serious corruption, such as drug sales and murder by police officers."

> **Chuck Rylant, former Santa Maria police detective**
> *'It wasn't a surprise, but it was a surprise to see it at this level. It blew me away.'*

In the highly publicized Rampart scandal, uncovered over the course of a decade in the early 2000s, more than 70 officers in the LAPD Rampart Division's anti-gang unit were implicated in crimes ranging from stealing and planting evidence, to dealing drugs and gang activity.

"This is where it begins, with small crimes," Rylant told the *Sun*. "When you overlook that kind of stuff, it keeps going and going."

Former SMPD sergeant Carroll, who recently retired from the force, claims he has nothing to gain by coming forward with the allegations. However, it should be noted that in 2008, Carroll sued the city of Santa Maria, police chief Macagni, and city manager Tim Ness in federal court, alleging he'd been passed over for promotion in retaliation for his efforts as president of the Santa Maria Police Officer's Association and subsequent public support of former police chief John Sterling, who retired after reaching a settlement with the city in 2003. Carroll won a $110,000 settlement in April.

According to Rylant and Carroll, complaints about Friday's suspected misconduct never reached the department's Internal Affairs lieutenant at the time, Chris Vaughan. Vaughan, currently employed by the SMPD, did not return the *Sun*'s requests for comment; however, the former officers' claims appear to have been substantiated during a sworn deposition given by Chief Macagni in Carroll's case on Nov. 29, 2010.

On page 90 of Macagni's deposition, Macagni is asked about the complaints regarding Friday by Carroll's attorney Michael McGill and a lawyer for the defense, Jeffery Stockley. The transcript of the deposition reads as follows:

Q: BY MR. MCGILL Who looked into it?

A: [MACAGNI] I don't recall, I don't remember.

Q: Okay. So the part of the paragraph here where it talks about it never going to IA, that's inaccurate?

A: I don't think it went to internal affairs per se. I know it was looked into, 'cause I remember there was some issues that came about, some medical issues that were revealed by another employee's wife.

MR. STOCKLEY: Again, we don't want to get into the detail of that.

THE WITNESS [Macagni]: Okay, there was some issues; it was looked into.

Q: BY MR. MCGILL: The part of the paragraph that talks about—Well, Carroll indicates that you, the chief, had asked the officer if he had taken medication, and the officer replied no.

Do you recall having that conversation with the officer?

A: No.

Q: So when you say it was looked into, you don't actually recall what steps they took to look into it?

A: No, I don't. I didn't look into it personally. It was assigned to somebody.

Who the complaints might have been assigned to, as Macagni claims, remains a mystery. When the *Sun* asked him to comment on the revelation, Macagni said, through his secretary, that he had signed a non-disclosure agreement as part of Carroll's settlement and couldn't speak about anything in his deposition.

> **Catherine Lombardo, defense attorney and law expert**
>
> *'For a chief to say, 'I don't know, I think it was investigated,' or 'No, we never really investigated it,' I'd say he's responsible for that.'*

However, the *Sun* obtained a copy of the settlement, which contains no mention of a non-disclosure agreement by any of the parties involved.

Santa Maria city attorney Trujillo told the *Sun* that, as a result of Rylant's citizen's complaint against Macagni, Trujillo has instructed Macagni and all other city employees to refer questions about the alleged drug thefts and investigation to Trujillo's office, a standard practice in ongoing investigations. Trujillo wouldn't comment on any details of the case.

"It involves allegations against the chief, so it's a personnel matter," Trujillo said. "Pursuant to our statutory obligation, we investigate all citizen complaints, and we are doing that in this case."

According to Trujillo, the city has retained a third party independent investigator, a retired Orange County Sheriff's lieutenant named Art Romo, to examine Rylant's allegations against Macagni and determine whether the complaints against Friday were ever seriously investigated. Romo has until June 17, 2012, to complete his inquiry.

"It's necessary to preserve the integrity of the investigation that the investigator be able to look into all facts without any interference," Trujillo said. "That's just standard operating procedure."

**The thin blue line**

Like most police departments, the SMPD employs an Internal Affairs (IA) officer to review citizen complaints, and if they're found to have merit, forwards them to independent third parties for investigation. If the complaint involves someone above the IA officer's rank, it's immediately referred to an independent investigator. The purpose of the process is to protect citizens, individual officers, and the integrity of department.

Former SMPD lieutenant Ralston said, to his knowledge, the complaints raised against Friday didn't follow the department's normal procedures.

"We put it into a memo to go up the chain to be assigned to the Internal Affairs investigator. Normally it would have been handled in that manner," Ralston said. "When we get a citizen's complaint, it gets investigated to some degree. It doesn't sound like this got investigated at all."

By law, whenever a citizen complaint is issued, the Internal Affairs unit or similar internal policing body of the police department must conduct a formal investigation.

The *Sun* contacted Catherine Lombardo, a Los Angeles-based attorney and legal expert with a background in Internal Affairs investigations, to weigh in on the case. Lombardo said she was "shocked" the suspected thefts appear to have never been subject to an independent probe.

"Absolutely it should have gone to Internal Affairs," Lombardo said. "It's not just a rubber stamp process; it should be thoroughly investigated.

"If this case isn't investigated, then the system is broken," she continued. "Whether it's frivolous or whether it has merit, every citizen complaint must be investigated."

Serious inquiries into all citizen complaints are essential, she said, because the complaints are added to each officer's personnel file, and can call into question the officer's integrity as a witness. Lombardo said in this case, there could also be rights violations that have yet to be brought to light.

"If he took this lady's prescription pills, that's a civil rights violation and it's a crime," Lombardo said. "If this officer in fact committed a crime and a civil rights violation against a citizen while wearing a badge, and if it went un-investigated and the cop is still working, it's pretty clear he violated their mission statement."

In a smaller police department such as Santa Maria's, Lombardo said, the buck stops on the chief's desk.

"It's not unreasonable to expect that the chief of police would have knowledge of and perhaps some responsibility for an investigation like this," Lombardo said. "For a chief to say, 'I don't know, I think it was investigated,' or 'No, we never really investigated it,' I'd say he's responsible for that."

Former SMPD officers Carroll and Rylant said they believe the Friday case was never subject to serious inquiry because the accused officer was a supporter and friend of Macagni's. Not formally investigating the suspected thefts, they say, sets a dangerous precedent, hurts morale throughout the department, and could lead to more serious corruption, if it hasn't already.

"We're getting permission to break into somebody's house to go steal their property. That is beyond everything," Rylant told the *Sun*. "With these rare exceptions, a judge gives you permission to violate the Constitution and go into somebody's house, but when the government oversteps the bounds, there are supposed to be checks and balances."

According to law expert Lombardo, it's common for cops to be protected by their supervisors. Incidents where officers are caught and convicted of stealing in a court of law are "very rare." Equally rare are terminations as a result of citizen complaints.

In cases where investigators determine complaints to be "founded," officers are usually offered counseling, or retraining first. Suspensions without pay may also be levied.

Like Rylant, Lombardo drew comparisons in the Friday case to the Rampart scandal, and said corruption, like a virus, tends to spread when alleged misdeeds are ignored.

"If there's dirt inside a police department, a dirty cop, a dirty higher up, they bury things," Lombardo said. "Was this buried? Maybe. Will the officer eventually be punished if the facts come out and it's true? Absolutely."

Lombardo added what could've been resolved at the outset on an individual basis now presents "a huge problem" for the SMPD.

"The entire department is going to be subject to ridicule, scrutiny, and questioning," she said. "Now, all the focus is going to be on the department." m

*Staff Writer Jeremy Thomas can be contacted at jthomas@santamariasun.com.*

Share:

# EXHIBIT "5"

## Form 1 (right)

**Custody Operations**
**Inmate Discipline Report / Medical Documentation**

IDR ☒ Date of incident/time 04-08-12 0850
Medical ☐ Date reported/time Same

Inmate INGLE, LARRY RONALD
BKG 0968131 CID 0161639

Current Housing NWT-23
Location of Offense NWT-23
Offense(s):
#9 DAMAGING COUNTY PROPERTY
    TORE UP MATTRESS
#18 WRISTBAND VIOLATION
    NOT WEARING WRISTBAND

You have the right to appear before the Inmate Discipline Review Board. Refusal to sign this IDR will be considered a waiver of your right to appear.
☐ I wish to appear   ☒ I do not wish to appear
Inmate Signature: REFUSED
Reported by: D. RIZER
Supervisor: II. ANTUNEZ 1076

IDR Board Member and Body #
1 SMITH 2857 FM REFUSAL (read)
2 2827-2920 FM REFUSED
Date and Time of IDRB 0300 4/14/12

Action Taken in Loss Days:
___ Commissary   1/WK Visitation
___ Good Time    ___ Stop Work Time
___ Disciplinary ISO ___ Disc. ISO w/Diet

Release date if applicable

Recommended by II. ANTUNEZ 1876
Visitation effective: From 9/25/12 to 10/3/12
Reviewed by: OPS Lt.                Date 4/12/12

Dist: White – Class/Golden – Final Disposition/Canary – Inmate Copy
CO-1125

## Form 2 (middle)

**Custody Operations**
**Inmate Discipline Report / Medical Documentation**

IDR ☒ Date of incident/time 04-08-12 0830
Medical ☐ Date reported/time SAME

Inmate INGLE, LARRY RONALD
BK 0968131 CID 0161639

Current Housing NWT-23
Location of Offense NWT-23
Offense(s):
#30 MISC FLOODING
    CELL & HALLWAY

You have the right to appear before the Inmate Discipline Review Board. Refusal to sign this IDR will be considered a waiver of your right to appear.
☐ I wish to appear   ☒ I do not wish to appear.
Inmate Signature: REFUSED
Reported by: A. RIZER / 2855
Supervisor: II. ANTUNEZ 1076

IDR Board Member and Body #
1 SMITH 2857 FM REFUSED (read)
2 2827-2920 FM REFUSED
Date and Time of IDRB 0300 4/11/12

Action Taken in Loss Days:
5DAYS Commissary   ___ Visitation
___ Good Time    ___ Stop Work Time
___ Disciplinary ISO ___ Disc. ISO w/Diet

Release date if applicable

Recommended by II. ANTUNEZ 1876
Visitation effective: From 8/11/12 to 9/5/12
Reviewed by: OPS Lt.                Date 4/12/12

Dist: White – Class/Golden – Final Disposition/Canary – Inmate Copy
CO-1125

## Form 3 (left)

NWT-21

**Custody Operations**
**Inmate Discipline Report / Medical Documentation**

IDR ☐ Date of incident/time 0920 3/3/12
Medical ☐ Date reported/time 0920 3/13/12

Inmate BARBER, KENNETH
BKG 0930626 CID 0262037

Current Housing IRC-114
Location of Offense IRC-114
Offense(s):
#4 FAILURE TO FOLLOW INST
#13 MINOR CONTRABAND
#20 MISC

You have the right to appear before the Inmate Discipline Review Board. Refusal to sign this IDR will be considered a waiver of your right to appear.
☒ I wish to appear   ☐ I do not wish to appear
Inmate Signature: X
Reported by: VELEGA 1419
Supervisor:

IDR Board Member and Body #
1 ALBANEZ 4574
2
Date and Time of IDRB 03/14/17

Action Taken in Loss Days:
___ Commissary   ___ Visitation
___ Good Time    ___ Stop Work Time
___ Disciplinary ISO ___ Disc. ISO w/Diet

Release date if applicable

Recommended by
Visitation effective: From 3/16/12 to 4/13/12
Reviewed by: OPS Lt.                Date 3/15/12

Dist: White – Class/Golden – Final Disposition/Canary – Inmate Copy
CO-1125



Kenneth R Barber P43791
B1-129
PO Box 5001
Calipatria Cal 92233

U.S. District Court
312 N. Spring St
LA. Cal
90012

PRIORITY MAIL
UNITED STATES POSTAL SERVICE ⊨
WWW.USPS.GOV
LABEL 107R, OCT 1997

GENERATED FROM
CALIPATRIA STATE PRISON

Priority Mail
ComBasPrice

UNITED STATES POSTAL SERVICE
$ 05.32
MAILED FROM ZIP CODE 92233

6/21/13

BARBER

45

JUN 21 2013