Kenneth R Barber Jr
FULL NAME
Calipatria State Prison
PO Box 5001
FULL ADDRESS INCLUDING NAME OF INSTITUTION
Calipatria Ca 92233
P-43791
PRISON NUMBER (if applicable)

```
            FILED
   CLERK, U.S. DISTRICT COURT

        SEP 2 3 2013

   CENTRAL DISTRICT OF CALIFORNIA
   BY                      DEPUTY
```

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Kenneth Richard Barber Jr.

PLAINTIFF,

v.

Santa Barbara County et al.

DEFENDANT(S).

CASE NUMBER

CV13-4645 DMG (MRW)
To be supplied by the Clerk

First Amended Complaint

**CIVIL RIGHTS COMPLAINT**
**PURSUANT TO** (Check one)
☒ 42 U.S.C. § 1983
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

### A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☒ Yes ☐ No

2. If your answer to "1." is yes, how many? _____2_____

   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

1) Case # CV-1102365-DMG (MLG) - This Lawsuite was a medical issue. The doctor was fired and the Santa Barbara County Jail resolved the issues. On March 13, 2012, just prior to my deadline my cell was searched and a great deal of documents were destroyed by jail staff forcing me to miss the deadline resulting in the dismissal of the lawsuite.

2) Case # CV08-6273 DDP (MLG) - This Lawsuite was against the Santa Maria Police Dept and 2 of their officers for illegal search & seizure I won summary Judgement against both officers, This is one of the many police Dept in Santa Barbara County.

a. Parties to this previous lawsuit:
Plaintiff _Kenneth R Barber_

Defendants _Santa Maria Police officer Joe Lopez_

b. Court _United States District Court Central District_

c. Docket or case number _CV086273 DDP (MLG)_

d. Name of judge to whom case was assigned _Dolly Gee_

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it appealed? Is it still pending?) _I won Motion for Summary Judgement_

f. Issues raised: _Violation of 4th & 14th Amendments_

g. Approximate date of filing lawsuit: _Nov 18, 2008_

h. Approximate date of disposition _____

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☒ Yes   ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☒ Yes   ☐ No

   If your answer is no, explain why not _____

3. Is the grievance procedure completed? ☒ Yes.   ☐ No

   If your answer is no, explain why not _____

4. Please attach copies of papers related to the grievance procedure.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff _Kenneth R Barber_
(print plaintiff's name)

who presently resides at _CSP, P.O. Box 5001 California Cal. 92233_
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at
_Santa Barbara County Jail/Santa Barbara_
(institution/city where violation occurred)

on dates _3/19/2012-5/30/2012, 7/27/2013—unknown date, March 2010-2012_

Vasified Complaint for Damages
Injuction & Declaratory Judgement
Demand for Jury Trial

1.  Plaintiff is a resident and state inmate confined in the Calipatria state prison (here after C.S.P.) Calipatria California. Plaintiff brings this civil rights action to redress the depervation under the color of state law privileges and immunities secured to plaintiff by the provisions of the Sixth Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff alleges that while incarserated at the Santa Barbara County Jail from March of 2010 to August of 2012 he was denied his Federal Constitutional right to humane conditions of confinement by virtue of him being placed in a cell covered with human feces; placed in close proximity to an area covered with human feces; subjected to constant screaming yelling and load banging by continually being placed next to psychiatric patients.

Plaintiff alleges that the inhumane conditions were designed to prevent sleep and disrupt his Pro Per status violating his constitutional right to represent himself in an unrelated criminal case.

Plaintiff alleges that the afore mentioned acts and or policies and practices of the defendents and their employees are knowingly deliberate and intentional in disregard for the health and well-being of plaintiff and that such acts policies and practices are shocking to the conscience purportedly governed by laws and considerations of Due Process.

## Parties

2.  Plaintiff Kenneth R Barber Jr. was at all times relevant to this action a convicted inmate on trial for additional charges incarcerated at the Santa Barbara County Jail.

3. Defendant Santa Barbara County is responsible for the administration operation and supervision of Santa Barbara County Jail's officials and for the promulgation and enforcement of rules regulations policies and practices relevant thereto. Defendant is sued here-in its official and individual capacity.

4. Defendant Sheriff Bill Brown is responsible for supervising, disciplining and training of the officials at the Santa Barbara County Jail and is sued in his individual and official capacity

5. Defendant Kenneth Callahan is an official at the S.B.C.J and is responsible for the supervising and training of the correctional officers and staff as well as the conditions of confinement of all inmates. He is sued in his individual ~~~~~~~~~~~~ capacity.

6. Sgt Osborne is a defendant in this case and is responsible for supervising and training of the correctional officers and staff as well as classifying inmates for appropriate housing. He is sued in his individual capacity.

7. Sgt Espinoza is a defendant in this case and is responsible for the supervising, disciplining and training of the officials and staff at the S.B.C.J. as well as the conditions of confinement of all inmates and is sued in his individual capacity.

8. Cprl Alexander is a defendant in this case and is responsible for the supervising disciplining and training of the officials and staff at the S.B.C.J as well as the conditions of confinement and overall well-being of all inmates. He is sued in his individual capacity.

9. C.O. Marking is a defendant in this case and is responsible for the conditions of confinement and overall wellbeing of inmates. He's responsible for the transportation of inmates. He's sued in his individual capacity.

10. Lt Lammer is a defendant in this case and is responsible for the supervising disciplining and training of the officials and staff at the S.B.C.J. as well as the conditions of confinement and reviewing grievences of S.B.C.J.

Inmates. He is sued in his individual Capacity.

11. Defendant Sgt. Maynard is a defendant in this case and is responsible for the conditions of confinement and overall well-being of all inmates. She is responsible for answering grievances of inmates and for the supervising, disciplining and training of the officials and staff at the S.B.C.J. She is sued in her individual Capacity.

12. C.D. Rees, is a defendant in this case and is responsible for the safety and well being of all inmates at the Santa Barbara County Jail. He is sued in his individual Capacity

13. C.D. Lane is a defendant in this case and is responsible for the safety and well being of all inmates at the Santa Barbara County Jail. He is sued in his individual Capacity.

14. C.D. Ortega is a defendant in this case and is responsible for the safety and well being of all inmates at the Santa Barbara County Jail and is sued in his individual Capacity.

15. C.D. Alvarez is a defendant in this case and is responsible for the safety and well being of all inmates at the Santa Barbara County Jail and is sued in his individual capacity.

16. Sgt Carnett is a defendant in this case and is responsible for the safety and well beings of all inmates at the S.B.C.J and is responsible for the classification and housing of inmates. He is sued in his individual Capacity.

17. 2 unknown nurses/Pill call nurses are defendants in this case and are responsible for the health and well being of all inmates at the Santa Barbara County Jail and are sued in their individual capacities.

18. 1 unknown psychiatrist is a defendant in this case and is responsible for the mental health of inmates at the Santa Barbara County Jail and is sued in his official and individual Capacity.

19. Several unknown officers will be defendants in this case who were/are responsible for the safety and well-being of all inmates at the Santa Barbara County Jail. There names will be requested in discovery, they'll be sued in their individual Capacity.

20. C.D APPLE is a defendant in this case and is responsable for the safety and well-being of all inmates at the Santa Barbara County Jail. He is sued in his individual Capacity.

21. 1 Maintenance worker, name unknown, is a defendant in this case and is responsible for the fixing of broken toilets; sewage pso-blems; Heating and; Electrical appliences. He is sued in his individual cap-acity.

22. C.D. Diaz is a defendant in this case and is responsible for the safety and well being of all inmates at the Santa Barbara County Jail. he is sued in his individual Capacity

## Facts

23. Commencing on March 8, 2010 plaintiff Kenneth R Barber Jr was confined at the S.B.C.J. pursuant to a criminal proceeding stemming from an incident which occured in the county Jail on 08/23/08.

24. Plaintiff remained in the SBCJ. from March 2010 untill Aug. 2013 and was housed almost entirely in a single man isolation cell in the North West section of the Santa Barbara County Jail. He was first housed in cell "NW ISO 24" then later moved to "NW ISO 21." From NW. ISO. he was moved to IAC 100 for months then back to NW.I. 21.

25. Northwests section 21-24 is seperate from all other ISAs and is under 24 hr camera observation viewable from Northwest's Control booths moniter system.

26. During the period petitioner was first housed in NW ISO 24 he witnessed a psychiatric inmate housed in cell 21 left for weeks at a time in his cell covered in his own feces. He was not being removed for showers or given cleaning supplies or soap. He would urinate on his door from the inside but the Urine would flow under his door and into the hallway that connects all cells. His urine and feces would stink up the entire 4 cell section.

27. All inmates including myself would be forced to eat and sleep in there conditions. The only relief from the smell would be showers every otherday and yard twice a week if we were lucky.

28. Officers at the Santa Barbara County Jail are required to do security walks throughout the county Jail which are called "Pipe Checks". They carry these computers that look like a 6 inch pipe that logs where and when they did there security

checks. At the end of each hallway throughout the Jail there are round metal markers placed at doorknob (back) level in which the officers touch their personal pipes to. This catalogs where those offices were at at any given time.

29. During these "pipe checks" (security walks) officers are required to look in each cell to check to see if each and every inmate is safe mentally and physically. If the officers believe that, based on their observations, that any given inmate might possibly have mental or physical issues the inmate may be moved to a "safety cell."

30. As to inmate in paragraph #26 I complained about the nauseating smell permeating throughout our section and my cell to several officers w/no avail. (The only officer to personally clean that cell was officer Diaz.) I did witness 3 unknown "Greenshirts" (inmate workers) being ordered to go into the feces covered cell and clean it with mops rags and a bucket of water. The inmates would come running out periodically gagging and sometimes vomiting in a garbage can outside the cell. The inmates were not wearing protective clothing.

31. As to claims in paragraphs 25-30 officials knew of the inhumane conditions of confinement at the SBCJ.'s North West ISO unit 21-24 due to the facts that 1) The conditions lasted weeks at a time 2) The section is under 24 hrs camera observation 3) they count all inmate inmates twice a day by checking their wrist bands 4) Staff is required to do security checks every hr. (Pipechecks) 5) Laundry exchange is once a week in which the officers are suppose to enter each cell and confiscate any laundry that the inmate didnt kick out of the cell. 6) Food must be delivered to each cell 3 times a day and 7) the lights in each cell are on 24 hrs a day.

32. On an unknown date I witnessed Cory Benton being housed in cell 23 which had a vent connected to my cell in which we could talk through. He told me that his cell was covered in human feces and that he "could not live like this". Mr Benton then got the attention of the Control booth and demanded a face to face interview with Sgt Espinoza. explaining that he "would not live in shit." When Espinoza seen the condition of the cell he immediately moved Mr Benton to cell 21. A couple "green shirts" were ordered to go into cell 23 and clean the human feces. They went in the cell with a mop bucket and rags. The cell was not power washed and a psychiatric patient was then placed in the cell.

(immediately after Cosy Benton was removed from cell 21)

34. After being housed in cell 21 for an unknown amount of time plaintiff was rehoused to the I.R.C. 100 unit. (IRC #114)

35. On March 13,2012 plaintiff suffered an accidental head injury and was taken to an outside local hospital and treated for severe concussion. Upon returning from the hospital he was rehoused to cell 21. (IRC #114 → NWI #21)

36. As to claims in paragraph 35 the cell conditions where inhumane. There was human feces packed into the Air flow vent on the ceiling, all over the ceiling walls and floor. Plaintiff cleaned all the reachable areas but could not reach the ceiling.

37. As to claims in paragraph 35 and 36 plaintiff had an open wound while cleaning the feces up. Both eyes were swollen shut and he was suffering from severe headaches.

38. As to claims in #35 c.o. Ortega searched cell I.R.C. #114 and bagged up all of petitioners property throwing away personal property and several documents including documents concerning a 42 U.S.C. §1983 civil rights complaint. complaint. (Kenneth R Barber Jr Vs Santa Barbara County. et al; CV11-2365 DMG (MLG).) This was the cause of petitioner failing to meet his deadline for an opposition to summary judgement and the subsequent dismissal of the complaint. However, a defendant in the case was fired and the Santa Barbara County Jail eventually gave plaintiff his surgery and requested medication.

39. After being rehoused in NWI 21 on 3/13/2012 - 3/17/2012 I complained to several officers about the conditions of my confinement with no avail.

40. On 3/17/2012 I complained about the feces throughout my cell and that the vent in my cell was broken so I was not getting any ventilation. This caused stagnant feces smelling air in which I had to live in 24hrs a day with an hr break for yard twice a week if I was lucky. This was at a time in which I was recovering from a major concussion. I requested the vents close be fixed and the cell be powersprayed.

41. At some point after 3/17/2012 the vent was repaired. I was told it was not a belt issue but an electrical one.

42. C.O. Alvarez was well aware of my living conditions suggested I grieve the issue and read my grievance before signing and dating it on 3/17/2012. (See exhibit 1)

43. Sgt Miranda answered the grievance requesting that I clean up the human feces of whatever inmate was there prior to me. The vent in question was not in my reach and it's not my job as an inmate to clean up other unknown inmate feces. The grievance reply was dated 3/25/12.

44. Lt Lammer also signed the March 17, 2012 grievance and dated it 3/25/12 (It should be noted that Lt Lammer is a prosecution witness in my criminal case) Lt Lammer without doubt had complete knowledge of the inhumane living conditions in which I lived and did nothing to fix it.

45. On 3/29/12 I turned in a grievance to an unknown correctional deputy whose I.D.# is 3154 explaining that the feces in my cell had still not been cleaned up and that sewage was coming up from the drain on the floor with worms all through it.

46. On 4/4/2012 I turned in another grievance to an unknown officer whose I.D.# is 2369 (See Exhibit 1) in which I complained that the feces was still in my cell and nothing was getting resolved.

47. Sgt Maynard replied to the grievance (Log #03386; see exhibit 1) by stating that CO Kliegl and CO Apple came to my cell on April 4th and that I refused to come out of the cell and allow it to be cleaned, which was false. Apple and Kliegl came to my cell in the very early morning hrs of April 4th (between 1 And 3 am) with 2 workers a mop, bucket, and rags. once they seen where the feces was located on the ceiling they agreed they'd need a ladder to reach it. They never returned. They didn't bring a ladder with them on the 4th or any time there after.

48. As to the grievance dated 4/4/2012, Log #03386, Lt Lammer signed the grievance which as I understand on information and belief that anyone that signs the grievances must read it and determine its validity and forward it to the appropriate staff member.

Larry Thole is known by all inmates and Santa Barbara County Jail staff to be completely uncontrollable with banging, screaming, foul comments and covering himself in his feces and throwing it wherever he's at. He bangs on his cell door and/or his table for long periods of time (for up to 6hrs streight) everyday and at all hrs of the day and night. He balls up his feces or makes paddies sliding them out under his door into our connecting hallway inches from my door while sometimes making it under the door.

50. I have witnessed CD Ortega, Reer, Lane and Garnett instigate the psyc-matric inmates in the North West ISO module by calling them Child Molesters, rapists and J-Cats or P.C.s. I've seen officers throw their breakfasts into the water outside their cell denying them food as a vendictive get back.

51. I've witnessed psychiatric inmates including thole being denied showers and clean clothes during clothing exchange. Santa Barbara County Jail policy, that they will not hand out soap and you must order it from commissary. Commissary leaves these psychiatric inmates without soap to even clean the feces off their bodies. These psychiatric inmates don't know how to fill out the semi complicated commissary slips and some not even able to read.

52. At some point the guards were instigating the psychiatric inmate Uribe by calling him P.C. Child molester Rapist and one unknown officer through his breakfast in the water, causing a 4 hr temper tantrum of kicking his door and yelling. I have had personal conversations with Uribe's mother. Because Uribe coulant write I would write all his letters to his mother. I would write his brothers letters to her to. His brothers handle is Crackers.

53. On April 9th at 8:35 am (see exhibit 5; Reer put "04-08-12" but that is the incorrect date of incident) C.D. A. Reer was giving out breakfast in the ISO cells and noticed that water was coming out of cell #23, Thole's cell. The water was running all over the tier and running into all 4 cells with feces all through it. Reer turned off the water and gave him a disciplinary write up for 'Flooding' (See Ex.5)

54. This incident was just prior to the end of CD Reers shift and this incident forced him to do extra work and paperwork before going home. Reer and Thole begin to verbally attack each other.

55. On April 9 2012 at 5:00am Reer came through the 4 Cell section and gave psychiatric patient Larry Thole disciplinary write ups for " Damaging County Property" and a "Wrist band Violation".

56. As to claims in paragraph 54 and 55 Larry Thole lost 9 weeks of

57. Throughout the early morning hrs of ~~xxxxx~~ 04/09/2012 while C.O Reer and psychiatric inmate Larry Thole were going at it back and forth ~~this~~ all inmates were being deprived of humane conditions of confinement. By forcing me to live in conditions such as this with my pro per status in effect is denying me my constitutional right to represent myself. This was not a one time incident ~~and~~ but was constantly occuring several times a week. All officials at the Santa Barbara County Jail knew I had several pro per priv/idges therefore representing myself living in inhumane conditions. The official at the Santa Barbara County Jail along with all staff knew or should have known these conditions prevented me from adequatly fighting my case do to the extra mental strain of living in such conditions. The officials and staff at the Santa Barbara County Jail knew or should have known I was physically suffering from a recent head injury as well and the inhumane conditions were causing physical pain.

58. From the Day Reer shut off Larry Tholes water ~~xxxx~~ April 9th until friday the 13th of 2012 when I believe it was put back on several officers witnessed the conditions of confinement of cells 21-24. They were forced to step over the piles of feces in the hallway. I personally asked C.O Ortega to get some greenshirts to come up and clean it but he refused.

58. A unknown pill call nurses would do their pill call rounds 3 times a day witnessing the inhumane conditions of confinement we were being forced to live in. They were sickened by the situation but did nothing to address the obvious health concerns of inmates living in feces.

59. ~~xxxx~~ A maintenance worker would constantly have to walk through the Area stepping over feces due to the fact there is a maintainance closet in the area of 21-24 where his tools are kept.

60. On April 14, 2013 C.O. Alexander and C.O. Marking walked through the ISO 21-24 section at approx. 7:18 am and witnessed the inhumane conditions of confinement we were living in. They took Thole out of his cell who was still covered in his own human feces. They then placed him in a shower while I supplied the soap for him to properly wash up.

61. Alexander and Marking then brought up greenshirts to clean. They brought mops buckets and rags.

62. After Thole's cell was cleaned by mopping the floor and walls he was placed back in his cell. The shower he was placed in was not cleaned. Feces was left in the shower which inmates complained about regularly.

63. On April 16 2012 a hearing was held in Dept 1 of the Santa Barbara County courthouse at which time I filed a detailed motion discribing my conditions of confinement and a verbal request for an immediate remedy. (That motion as well as other evidence including photos of the cell were ordered to be confiscated by Superior Court Judge Ochoa. My Appeals attorney Susan Bauguess is in possession of these documents)

64. My investigator Lynn McLaren is in possession of several interviews conserning my conditions of confinement including one with Larry Thole and his defense attorney David Bixby.

65. At the April 16 2012 hearing Judge Ochoa ordered an examination by a neuroligist. (See Exhibit 3) The neuroligist found I was suffering from "Postconcussion syndrome" causing severe headaches and "hypersensitized to smells such as feces." I was suffering from the load banging and lack of sleep as well. I was also suffering from the psychological effect of being proper on a case that carries a life sentence if convicted and the understanding of the negitive results sleep depervation has on some-ones ability to think rationally and effectively argue a defense.

66. On April 16 2012 I also filed a grievence explaining the effect the conditions of my confinement were having on my proper status and that I believed it was being done intentialy. I also requested a cell move.

67. On April 20 2012 my cell was finally powersprayed out and the feces removed. Finally after several requests to Sgt Espinoza he came and personal-ly seen that my cell was cleaned properly. The unknown maintanance worker had to find a different connector for the powerwasher to fit into the ISO. waterlines (This shows how little the powerwasher was used, if ever)

68. On 4/23/2012 another hearing was held in dept 1 concerning my conditions of confinement. County Counsel Kelly Scott discussed some photographs that were taken of my cell on April 18 2012 by Sgt Cobb and Cpol Lammer. Kelly Scott claimed the photos looked like the vent could have been clogged with crust. Cobb and Lammer claimed the same thing in there report (Bates Stamp 002843) (See Exhibit 2 # 7-8.)

69. As to Claims in paragraph 68 Plaintiff rely's on the facts set out in his Complaint pursuant to §910. (Exhibit 2)

70. On 4/18/2012 I was Complained to C.O. Lane about my living Conditions. He told me there was nothing he could do.

71. On 4/19/2012 Reer Shut off Larry Thole's water. Larry Thole was not Thole flooding at the time. When Mr Thole realized his watter was off he went into another temper Tantrum of banging and yelling.

72. At some point after the 4/23/2012 hearing Larry Thole was moved from cell 23 to an unknown location. 8 Days later he was moved to cell 22 right next to mine. Our Tables and vents were connected, I was scheduled to Start trial that monday the 30th. Larry Thole begin to bang on the table and scream in my vent for hrs on end. This was damaging to me mentally and physically.

73. On 4/27/2012 the day Thole was moved to cell 22, I filed a grievence log #03468 complaining about the banging screeming and yelling. I gave the grievence to CO Alvarez answered by Sgt Osborne and once again signed off by Lt Lammer. I explained that I believed it was "done, purposely to disrupt my pro per status and a form of retaliation"

74. One of the facts I base my claims on in paragraph 73 is the fact that Classification was asked by an outside agency (county Counsel) to remove Thole from my section so as to respect and Honor my pro per status. After Thole was moved he was moved back Just days later and even closer then he was before.

75. As to claims in paragraph 73 that my conditions of confinement was a form of retaliation plaintiff further believes that his 42 U.S.C §1983 Civil Complaint he filed against several of the staff at the Santa Barbara County Jail and 2 Santa Maria Police officers (Police Agency in Santa Barbara County) in which summary Judgement was granted is also an underlining cause of retaliation. (see Exhibit 4.)

76. On 4/28/2012 I filed another grievance after a night of constant banging and screaming with absolutely no sleep while trying to prepare for trial. Sgt Osbourne reviewed the grievence as well as Lt Lammer. Both Osbourne and Lammer were well aware of the inhumane conditions of Confinement in-

which I was forced to live in, had the authority to either move me or take the proper steps to fix the situation but did nothing. Both officers were witnesses for the prosecution in the case in which I was representing myself in.

77. While I was in ISO #21 for a period of approx. 4-6 month there was a psychiatric inmate of Afro American decent that was housed in cell 24 name believed to be Butler or Hunter. This inmate was never offered or requested cleaning supplies. He was not given any hand soap or explained to that he needed to fill out a indigent store list. When the inmate was finally removed and/or rehoused an unknown officer (believed to be CD Miller) brought 2 green shirts to clean the cell. Both of which quickley started vomiting in the garbage can outside the door. The unknown officer kept hurrying them to go back in. They were told to wrap garbage bags around their hands and to dig the "mound" of feces out of the toilet with their hands. The greenshirts started explaining that the inmate took smashed fruit and lined the rim of the toilet with it. (This gave the whole section the smell of rotting fruit mixed with the smell of feces.) The unknown officer (possibly Miller) immidiately told them not to tell me anymore or he'd be written up. From the position of my window I was able to watch them clean the feces off the wall and door with a mop. The smell coming from this inmates cell while he was housed there was extremely nausiat-ina and caused me headackes and sleeplessness. The feeling of helplessness being housed in this section of the jail surrounded by psychiatric patients was exhausting and psychiatrically damaging.

78. As to claims in paragraph 77 the unknown maitanance guy (believed to be Dan) had to snake cell 24 after the inmate left. Dan knew or should have known that that toilet had been unopperable for months. Anyone walking through that section could not ignore the foal smell. It is the job of maintanace crew to fix things in the jail that may be health hazard.

79. For a time psychiatric inmate, mentioned above, "Cracker" whos last name is Uribe was placed in cell 24. He would bang for hrs at a time and at one point was removed by Stun Gun after he allegedly broke the glass window in his cell door. I believe he got a disciplinary write up for breaking the window and his phone that was in his cell,

80. As for claims in paragraph 79 the unknown maintenance guy fixed the window

81. As for claims in paragraphs 63 and the "motion describing my conditions of confinement": Details include but are not limited to: ① While Larry Thole had no water he claimed he was drinking his own urine ② I was "fishing" bags of water to him. ("Fishing is making a line out of torn cloth putting a weight on the end like a "sinker") ③ Larry Thole had no weight so he tied his glasses on the end of the line to get the line to my cell ④ Fishing is against jail rules and when the unknown officer came out of the Tower and saw Larry Tholes glasses he smashed them with his foot and kicked the pieces into a pile of feces that was on the floor ⑤ I retrieved some of the pieces and gave them to my advisory counsel Joe Allen. We are still in possession of those pieces I believe. ⑥ On information and belief I now claim Larry Thole is a war veteran.

82. As to claims in paragraph #75 and that my conditions of confinement were a form of retaliation for my 42 USC §1983 civil complaint it must be noted that I named the Chief of Police Danny R Macagni as a defendent (see Exhibit 4) but I could not prove a case against him. I filed that Lawsuit in 2008 and in 2011 an article came out in the Santa Maria Sun claiming the exact same claims as in my 2008 Lawsuit against Danny Macagni (see Exhibit 4 "Betraying the Badge) I wish I could have proved the case in 2008 to prevent Alane Avila from being a victim of the Santa Maria Police Dept. (see Exhibit 4) Someone needs to listen about the conditions of confinement at the Santa Barbara County Jail.

83. During the afore mentioned time period from March of 2010 to August of 2012 plaintiff continued to complain about the conditions of his confinement at the Santa Barbara County Jail. However all complaints were ignored and/or refused by the defendants and their employees.

84. Plaintiff is informed and believes and therein alleges that the defendants and their employees have taken virtually no action to fix the conditions of confinement at the Santa Barbara County Jail. These failures to act reasonably have harmed plaintiff physically and mentally and will continue to harm plaintiff upon his return to Santa Barbara County. (Appellate Attorney is requesting a reversal on several grounds which would send him back to Santa Barbara County Jail.) The failures to fix the inhumane conditions at Santa Barbara County have harmed other citizens and will continue to harm other unless this court steps in.

85. Plaintiff has initiated and/or filed numerous grievances arising from the foregoing all of which have been denied and/or ignored by the defendants and their employees.

## Legal Claims

86. The failure of the defendants, County of Santa Barbara and Sheriff Bill Brown to provide training and supervision regarding the Health & Safety of Inmates at the Santa Barbara County Jail amounts to gross negligence and deliberate indifference to the safety and lives of the citizens of Santa Barbara County. This gross negligence was proximate cause of the injuries of Plaintiff.

87. Defendants County of Santa Barbara and Bill Brown are directly liable and responsible for the acts of all other defendants in this case because they knowingly failed to enforce the laws of the State of California and the regulations of the Santa Barbara County Jail pertaining to the health and safety of inmates by the County of Santa Barbara officers thereby creating with the Santa Barbara County Sheriffs Dept an atmosphere of lawlessness in which officers and staff ignore the inhumane conditions of confinement throughout the jail in the belief that such acts will be condoned and justified by their superiors. Defendants County of Santa Barbara and Sheriff Bill Brown were or should have been aware of these unlawful acts and practices prior to the time of the forced inhumane conditions of Confinement on Plaintiff.

88. Defendants Kenneth Callahan, Sgt Osborne, Sgt Espinoza, Cprl Alexander, C.O. Marking, Lt Lammer, Sgt Maynard, C.O. Reer, C.O. Lane, CO Ortega, CO Alvarez, Sgt Carnett, CO Apple, CO Dias with knowledge of the inhumane conditions of confinement at the Santa Barbara County Jail and/or with deliberate indifference to such conditions have acted or failed to act in such a way as to deprive plaintiff of humane conditions of confinement such as sanitation and protection from excessive noise, thereby endangering the plaintiffs health and well being. Such acts and omissions of the

defendants violate rights secured to plaintiff under the eighth and fourteenth Amendments to the U.S. Constitution.

89. The defendants actions and/or admissions were negligent and/or reckless and or intentional.

90. The defendants actions and/or admissions were commited under the Color of ~~Authority~~ Authority and/or pursuant to policies customs, practices rules regulations ordinances ~~statutes~~ statutes and/or usages of the state of California and or ~~Cost~~ Santa Barbara County Jail.

91. Plaintiff has no adequate and sufficient remedy at law with which to address the wrongs alleged herein and will continue to suffer irreparable injury for the conduct of defendants unless he is granted equitable relief prayed for herein.

92. As a direct and proximate result of the above described actions and omissions of defendants plaintiff has suffered general damages in excess of $75000 exclusive of interest and costs, the exact amounts of which will be proven at trial.

Wherefore Plaintiff prays for relief as follows:

1) That the court determine and enter judgement declaring that the acts and omissions of the defendants as set forth above, violates rights secured to plaintiff by the Eighth and Fourteenth Amendments to the U.S. Constitution.

2) That upon hearing the court issue a preliminary and permanant injunction :

A) enjoining the defendants their employees agents and their successors in office from providing humane conditions of confinement to plaintiff and or all inmates at the Santa Barbara County Jail that is inconsistant with the standards of the conditions of confinement in the state of California;

B) Enjoining the defendants their employees agents and successors in office from refusing to provide and/or delaying the provisions of necessary humane conditions of confinement of plaintiff and/or any inmates at the Santa Barbara County Jail;

C) Enjoining the defendants and their successors in office from failing to instruct supervise and train their employees and agents in such a manner as to insure humane conditions of confinement which is consistant with the standards set in the State of California;

3) That the court establish a panel of independant experts to evaluate the delivery of humane conditions of confinement at the Santa Barbara County Jail and insure the compliance of defendants and their successors in office with the Courts order herein;

4) That the court award general damages to plaintiff;

5) That the Court award punitive damages to plaintiff;

6) That the Court award nominal damages to plaintiff;

7) That the Defendants be required to pay attorney fees once plaintiff is represented.

8) That the Court grant such further and additional relief that is appropriate herein.

Dated: 9/19/2013

Respectfully Submitted

Kenneth R Barber

Verification

I Kenneth R Barber declare as follows:

• I have read and prepared this 42 USC. §1983 Civil Complaint and the claims listed are true of my knowledge and belief

• I declare under penalty of perjury the foregoing is true an correct executed on Sept 18,2013 at Coligaria, Cal.

Kenneth R Barber

# EXHIBIT "1"

# SHERIFF'S DEPARTMENT
### Santa Barbara County

| | Staff use only |
|---|---|
| CID # | 392037 |
| LOG# | 03339 |

Date: 3/7/2012

## INMATE GRIEVANCE

Name: Barber, Kenneth          Booking # 9300020          Housing Assignment MNT-81

Check One: (X)Grievance ( )Appeal

I just moved into this cell. There is NO Ventilation.
It appears as the Retts is once again broken.
I was in this cell before and am familiar with this
Vent. It is definitely Not working.

The Sucker Vent is Also clogged with shit. literally.
First chance get some Ventilation then have
Someone PowerSpray this cell.

This is a serious health issue. Thank You.

Date Rec'd 3/7/14 Time: 2200 Rec'd by Alvarez          Shift Commander Initials L.C.
Routed to: Sgt. Dept. Staff

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## GRIEVANCE REPLY

**03/25/12**

**Mr. Barber,**

**Work order #23776 has been submitted for the ventilations in your cell. Please continue to uncover the vents when you receive the cleaning supplies. This will help in clearing the ventilation.**

**Sgt Miranda**

By: _____          Date: 3/29/12     Facilities Commander/Designee: J. Wommer 2/27/1

Distribution:   White  - Admin/Medical
                Yellow - Reply to Inmate
                Pink   - Kept by Inmate

SH– 585 (Revise 9/95) (Admin)

**SHERIFF'S DEPARTMENT**
Santa Barbara County

**INMATE GRIEVANCE**

Staff use only
CID# 282037
LOG# _____

Date: 3/29/2012

Name: Barber Kenneth     Booking # 930626     Housing Assignment NW I 21

Check One: (X) Grievance ( ) Appeal

I've Been in this cell since the 13th its now the 29th. There is still shit, literally, above my head packed in the Vent. Now I have sewage Coming up from my drain With worms all through it. I've been Told that " A Work Order has been put in." And By tomorrow, maybee, the Toilet will be fixed so I can flush.

This is a health issue and an emergency. You cannot force inmates to live in shit and sewage. All it takes is a Worker to come up and snake the Drain. Its been weeks and a grievence, still my vent is not free of shit

Date Rec'd 3 21 12 Time: 1130 Rec'd by _____ 3154    Shift Commander Initials _____
Routed to: _____

*********************************************************************

**GRIEVANCE REPLY**

By: _____     Date: / /  Facilities Commander/Designee _____

Distribution:  White - Admin/Medical
               Yellow - Reply to Inmate
               Pink - Kept by Inmate

SH - 585 (Revise 9/95) (Admin)

# SHERIFF'S DEPARTMENT
### Santa Barbara County

## INMATE GRIEVANCE

Staff use only

CID# _26302_

LOG# _03356_

Date: 4/4/2012

Name: Barber, Kenneth          Booking # 930026          Housing Assignment NW# 01

Check One: (✓)Grievance ( )Appeal

I recived an answer to grievance #3339 and was told a work order # 23726 has been submitted and contine to clean the Vent With Cleaning Supplies.

Fact#1: there is still shit in my Vent going to the foot. I Cannot reach it if is avon my "head"

Fac#2: It's not my job to clean up other inmates shit; It's you

Fac#3: I've had the Air conditing guy come and say "Thats for Maintenance" then maintenance come & be said "its for the Air Conditing guy"

You Cannot make inmates live in shit, There is also globs of shit on other Bunks, above me. Lt Lammer will be testifying about this in Court, Dept 1 Inhumane Conditions!

Date Rec'd 4/3/12 Time: 1630 Rec'd by _____ 236 Shift Commander Initials PLM 263

Routed to: "C" SQUAD

******************************************************************************

## GRIEVANCE REPLY

Mr. Barber,

On April 3rd I received your grievance regarding the cleanliness of your cell. On the morning of April 4th CD Apple and CD Kliegl brought inmate workers and cleaning supplies to your cell and offered to have your cell/vents cleaned out. You refused to come out of your cell and allow it to be cleaned. The officers tried to resolve your complaint about your cell/vents but you were unwilling to cooperate.

Sgt. Maynard

By: Sgt M 2653          Date: 4/4/12 Facilities Commander/Designee LT. LAMMER

Distribution:  White  - Admin/Medical
          Yellow - Reply to Inmate
          Pink   - Kept by Inmate

SH - 585 (Revise 9/95) (Admin)

# SHERIFF'S DEPARTMENT
### Santa Barbara County

## INMATE GRIEVANCE

Date: 4/14/2012

| Staff use only | |
|---|---|
| CID# | 292037 |
| LOG# | 03419 |

Name: Barber, Kenneth          Booking # 9301916          Housing Assignment NALI 81

Check One: (X) Grievance ( ) Appeal

Lt Callahan Come to my cell a few weeks back and saw what I'm dealing with. Human Feces in my cell Parked in the Vent, At that point my neighbor had admitted to purposely Clogging the toilet with sewage, all over the floor, and surrounded by psychiatric patients that bam yell & Flood at all hrs. He understood my situate and said "I'm talk to class to try to get you out of here." I've talked to several officers about shit in my cell. I received a response from Sgt Maynard who said I refused to come out of my cell which is false, when Kleen? and Annie Come to clean my cell on April 4. Both Klieu & Annie agreed that My Vent could not be Cleaned with a Mop and without a ladder which they did not have. Du Maynard Sending them to my cell at 335-400am is evidence of this admin- Lization intentionally Trying to dissrupt my sleep and Pro per status. the condition Im in are designed to prevent sleep and at Times are instigated. I talked to Mr Thole and explained how his mental & personal issues are interfering with my pro per Status. He seemed receptive and agreed One of us should go to NewEast ISO. Either one.

Date Rec'd 4/14/12 Time: 1050  Rec'd by 3027  Shift Commander Initials AL 7633
Routed to: Sgt. CALLAHAN.

*************************************************************************

## GRIEVANCE REPLY

MR. BARBER –

IT IS MY UNDERSTANDING THAT YOUR CELL VENT WAS CLEANED TODAY BY THE DAYSHIFT CUSTODY DEPUTIES. ANY HOUSING ISSUES YOU ARE HAVING NEED TO BE ADDRESSED WITH THE CLASSIFICATION UNIT.

MR. BARBER –
I HAVE SPOKEN WITH CLASSIFICATION AND THOSE WILL BE MOVED INTO ANOTHER ISOLATION AREA.
LT. LAMMER #2761

By: SGT. CALLAHAN # 3246     Date: 4/20/12 Facilities Commander/Designee LT LAMMER #2761

Distribution: White  - Admin/Medical
              Yellow - Reply to Inmate
              Pink   - Kept by Inmate

SH – 585 (Revise 9/95) (Admin)

# SHERIFF'S DEPARTMENT
### Santa Barbara County

## INMATE GRIEVANCE

CID# _a9a9e7_
LOG# _03468_

Date: _9/29/2012_

Name: _Barber, Kenneth_ Booking # _930626_ Housing Assignment _NWI 21_

Check One: (X)Grievance ( )Appeal

Last week a hearing was held and County (Coco) Kelly Scott
Assured Judge Ahmed that I would not be placed next
to psychiatric patients, that bang yell or scream.
They specifically moved Larry Thele Y Anday away from me,
Today Thin moved him right next door. Inc Tables
at Monored.

I am psychsic and short Trial on man, I need to
be moved to somewhere, not next to a psychiatric
patient that Screem, yells, and Bangs. TV
This is being done purposely to disrupt my Pro per
Status and a form of retaliation.

Date Rec'd _4/29/11_ Time: _2334_ Rec'd by _Shintz 908_ Shift Commander Initials _KK 324_
Routed to: _CLASSIFICATION_

**********************************************************************

## GRIEVANCE REPLY

MR BARBER
THIS ISSUE HAS BEEN ADDRESSED

DN

By: _SGT OSBORNE_ _2432_ Date: _5/05/12_ Facilities Commander/Designee _T. UAIMM_ _5/27/_

Distribution: White - Admin/Medical
Yellow - Reply to Inmate
Pink - Kept by Inmate

SH - 585 (Revise 9/95) (Admin)

# SHERIFF'S DEPARTMENT
### Santa Barbara County

## INMATE GRIEVANCE

Date: 4/28/2011

Name: Barber, Kenneth          Booking #9306/0210          Housing Assignment NNT 21

Check One: (X) Grievance ( ) Appeal

Staff use only
CID# 282037
LOG# 03462

I cannot do my proper legal work living next to a psychiatric patient that bangs on his desk that is connected to mine. I cannot live with banging on the cell door on and off all day and tonight every day I cannot live next to feces less then 5 feet from my door at times. I am not being celled as disciplinary right now but am being treated as such. This Administration cannot or chooses not to attempt to control Larry Thale and or is well aware of his antics. So this has to be a retaliation form for the criminal charges and the lawsuit I have filed. County Council Kelly Scott assured the Judge I would not be housed near @ Larry Thale or any banging screaming, ear Feces smoking inmates. Then you moved him seven cells next door and his toilet connected to mine through the wall. I feel and hear every bang as if it's in my cell now. Move me or him please.

Date Rec'd 4/28/12 Time: 1318 Rec'd by BOUETTE 4418 Shift Commander Initials ___
Routed to: SGT OSBORNE

***********************************************************

## GRIEVANCE REPLY

MR. BARBER
THIS ISSUE HAS BEEN ADDRESSED.

By SGT. OSBORNE 2632          Date: 05/4/12 Facilities Commander/Designee CT. LAMM 5/27

Distribution:   White  - Admin/Medical
                Yellow - Reply to Inmate
                Pink   - Kept by Inmate

SH - 585 (Revise 9/95) (Admin)

EXHIBIT "2"

# COUNTY OF SANTA BARBARA

**Ray Aromatorio**
*Risk Manager*

**Julieann Robles**
*Senior Risk Analyst*



**Deborah Wells**
*Disability Manager*

**Johnny Hernandez**
*Safety Officer*

## RISK MANAGEMENT DIVISION
### GENERAL SERVICES DEPARTMENT

*November 06, 2012*

*Kenneth Richard. Barber*
*P43791-A5-237, Upper, CSP*
*PO Box 5004*
*Calipatria CA  92233*

RE:   Claimant:              *Kenneth Richard Barber*
      Date of Occurrence:   *03/13/2012*
      Date Claim Filed:     *08/24/2012*
      Date of Denial:       *November 06, 2012*

*Dear Mr. Barber:*

*The above referenced claim which you have submitted to the Clerk of the Board of Supervisors has been reviewed at the Board's direction, and in accordance with the provisions of Government Code Section 913 and 31000.8, notice is hereby given that said claim has been denied.*

> ***WARNING:  Subject to certain exceptions, you have only six (6) months from the date this notice was deposited in the mail to file a court action on state claims.   (See Government Code Section 945.6)***

> ***The six (6) month time limit referred to in this notice applies only to State Claims or causes of action which are governed by the California Tort Claims Act.  This notice does not apply to statutes of limitations for Federal claims or causes of action.***

*You may seek the advice of an attorney of your choice in connection with this matter.  If you desire to consult an attorney, you should do so immediately.*

*Sincerely,*

*Marianne Rauch*
*Risk Analyst*

*DECLARATION OF SERVICE BY MAIL*

*I DECLARE THAT:*

*I am over the age of eighteen (18) years, employed by the County of Santa Barbara, and not a party to the above entitled cause; that on November 06, 2012, in the City of Santa Barbara, County of Santa Barbara, State of California, I deposited in the mail, United States Postal Service, **a Notice of Denim of Claim**, enclosed in separate, sealed envelope, with postage fully prepaid thereon, addressed as follows:*

> *Kenneth Richard. Barber*
> *P43791-A5-237, Upper, CSP*
> *PO Box 5004*
> *Calipatria CA 92233*

*I declare under penalty of perjury that the foregoing is true and correct.*

*Executed on November 06, 2012 at Santa Barbara, California.*

*Signature*

*105 East Anapamu Street*
*Santa Barbara CA 93101*

Before the Governing Board of the Santa Barbara County
                    Sheriffs Department


In the matter of the Claim of
Kenneth Richard Barber Jr
Against the Santa Barbara Co.
Sheriffs Department

    Pursuant to Gov Code § 910, claimant Kenneth Richard Barber
presents the following claim against the Santa Barbara County
Sheriffs Department.

1.    Claimant's address is 4436 Calle Real, S.B., Cal. 93110 and
    all notices regarding this claim should be sent here.

2.    On or about March 13, 2012 I sustained an accidental head
    injury at the Santa Barbara County Jails I.R.C. 100 Unit.
    C.D. Ortega searched the cell and threw away a photo and
    several documents concerning a 42USC. §1983 civil complaint
    against several of his fellow officers, that was filed in the
    United States District Court Case# CV-1102365-DMG (MLG). This
    caused me to miss a deadline and forced me to drop the suit.

3. I was then rehoused to North West ISO 2/. The cell was cover-
    ed in human feces and the unreachable vent was clogged
    full of feces. (See Bates Stamp 002847 and 002848)

4. I talked to several officers concerning the condition of my
    cell: Feces, no ventilation and/or heat, horrible smell of feces.

5. Nothing was getting done so I started the grievance process
    on 3/17/2012 and continued untill the vent and cell was power-
    washed by Officer Espinoza (see grievences log# 03339, 03386,
    03719, 03468, 63462 etc) on April 20, 2012.

6. An Evidentiary hearing was held in Dept 1 of the Santa Barbara Superior Court and an examination by Neurologist Dr. Philip Delio ordered.

7. On April 18, 2012 within minutes of Sgt Cobb and Cprl Lammer arriving to photograph the area an officer and green shirts cleaned and mopped all the feces outside the cell.

8. My Lawyer Joseph Allen pulled me out of my cell for an Attorney Visit to discuss my living conditions and while I was at the visit officers Cobb and Lammer took photos of my cell. (Except the spots where feces was all over the ceiling) They did however take photos of the feces smashed into the vent, though in their report they claimed it was rust. (Bates Stamp 002843 Sgt Espinoza cleared the vent of all the feces.

9. The officials at the Santa Barbara County Jail knew I was representing myself proper and was preparing for an upcoming trial in which almost 80 of their officers were listed as witnesses. They were well aware of the conditions of my continement (i.e. feces in my cell that was unreachable, feces all over the tier, I was in a 4 cell section with psychiatric patients that regularly screamed, banged and threw feces resulting in loss of sleep for days)

10. County Counsel assured the judge that the psychiatric patient Larry Thole would be rehoused, which he was only to be moved even closer a couple days later. Right next door with our tables connected. Every bang on his table was a bang on mine.

11. The jail officials failed to respond reasonably in a reasonable amount of time. They simply ignored the problems until I brought it to the attention of the S.B. Superior Court.

12. The Santa Barbara County Jail officials acted with deliberate indifference to the deprivation of my basic human needs and the substantial risk of serious harm.

13. I was deprived the "basic human need" of sanitation and hygiene by being housed in a cell covered in feces in a section with feces all over the teir in front of my door.

14. I was deprived the "basic human need" of clean air due to the fact that the vent was clogged with feces preventing adequate air flow. I had to sleep and eat for over a month in these inhumane conditions.

15. The condition of my confinement was designed to prevent sleep which is undoubtedly one of lifes basic needs, and at times deliberately made worse with the instigation of the psychiatric inmates. It was also common knowledge I had sued the Santa Maria Police Dept and won and known I was fighting the lawsuite against the Santa Barbara County Jail.

16. The supervising officers failed to properly train & supervise. These inhumane conditions should have been addressed immediately. The cell should have been cleaned of all feces prior to me being placed in the cell.

17. Multiple witnesses will be called including but not limited to: a pill call nurses, several floor officers, 4 trustees, several inmates and maintenance; Investigator Lynn Mclaren and David Bixby; officers Alexander, Marking and Alexander Fuller.

18. Claimant relies on all facts presented in the 4/16/2012 "Request for Evidentiary hearing" whether oral or written. Claimant has in his possession pieces of the broken glasses and suicide note written by Larry Thile; both covered in his feces.

19. As of the date of this claim, claimant has incurred the following injuries :"Postconcussion syndrome" with "persistent headaches and sensitivity to noise & odor." "Disruptive sleep patterns causing headaches to get worse when he is overly tired & fatigued." (See Notice of Motion for Continuance Served on April 26, 2012, Dr. Delio's report) Claimant further suffered mental and emotional anguish.

20. The name of the public employees causing claimants injuries are as follows: Sheriff Bill Brown; Lt Lammer; Sgt Osbone; Sgt Callahan; Sgt Espinoza; Sgt Maynard; Sgt Sheffield; C.D. Klieg; C.D. Octega; a few unknown officials.

21. This is a non-limited civil claim exceeding $10,000.⁰⁰ Jurisdiction over this claim rests in the Superior Court and/or the United States District Court.

22. 08/18/2012                          *Kenneth R Barber Jr*
                                        Kenneth R Barber Jr

23. If I am Transfered My CDC# is P43791 D.O. 7/22/69; Attorney: Joseph Allen (805)892-2480 (805)689-1280

<u>Proof of Service</u>

I Kenneth R Barber Jr declare that:
- I am over 18 years of age
- I am currently incarcerated at the Santa Barbara County Jail at 4436 Calle Real, S.B. Cal 93110
- ON Aug 19, 2012 I served the enclosed "Claim against the Santa Barbara County Sheriffs Department" by placing it in a sealed envelope, postage fully paid and giving it to Officer Hunter to place in the US Postage Box here at the Jail.
- The envelope was addressed as follows:
  To: The Clerk or Secretary of the Santa Barbara County Sheriffs Department
  4436 Calle Real
  S.B. Cal 93110

I declare under penalty of Perjury the foregoing is true and Correct. Executed on Aug 19, 2012 at S.B. Cal

Kenneth R Barber Jr

# EXHIBIT "3"

# HEALTH CARE CENTERS

PUBLIC HEALTH DEPARTMENT
SANTA BARBARA COUNTY

**Santa Barbara Health Care Center**
345 Camino del Remedio   Santa Barbara, CA 93110-1332
805-681-5488 Fax: 805-681-5404

*April 19, 2012*
Page 1
Chart Document

## KENNETH RICHARD BARBER
Male  DOB: 07/22/1969          54251-2843001

**04/19/2012 - Office Visit: neuro follow up visit**
**Provider: Philip Delio, MD**
**Location of Care: Santa Barbara Health Care Center**
**Status: ON HOLD DOCUMENT. Contents are preliminary**

**Visit Type:** Follow-up Visit
**Referring Provider:** prison health

**CC:** f/u neuropathy.

**History of Present Illness:**
Patient has been seen on several occasions for several neurologic complaints including

1. Peripheral neuropathgy related to Chaarcot Marie Tooth disease
2. Compressive neuropathy at the left elbow status post decompressive surgery
3. Recent traumatic head injury with postconcussive syndrome

● Patient continues to complain of neuopathic pain in upper and lower extremities which is under better control with tramadol.  He is no longer on tegretol or neurontin  His left hand is having some paresthesias in the last two digits consistent with ulnar neuropathy

He does have persistent headaces and neck pain since his fall from his bunk bed and injury.  Prior imaging studies of his C spine in 2/2010 showed DJD at C5-6, C6-7, . C3-4 osteophytes causing mild right greater than left neuroformainal stenosis, a broad disc bulge at C5-6 narrowing the neuroforamin at that level, and a C6-7 disc narrowing teh left formina.

He is having some trouble in his islated cell.  He is next to an inmate(?) who is loud all night, this is disruptive to Kenneth's sleep patterns and he is finding the headaches get worse when he is overly tired and fatigued.  He also finds he is hypersensitized to smells such as feces since the accident, and this has been bothersome to him

**Chief Complaint:** f/u neuropathy

## Physical Exam

**Neurologic:**
Has normal motor strength in all muscles tested of the upper extremities except perhaps some trace left intrinsic hand muscle weakness, and his weakness of the LE in distal feet includign gastroc and tibialis anterior. has atrophy of these muscle groups in legs.

Reflexes are globally reduced with trace upper extremity and absent lower extrenity reflexes.

No clear sensory changes other than some increased sensitivity to cold in left hand but not in clear

## HEALTH CARE CENTERS

PUBLIC HEALTH DEPARTMENT
SANTA BARBARA COUNTY

**Santa Barbara Health Care Center**
345 Camino del Remedio   Santa Barbara, CA 93110-1332
805-681-5488 Fax: 805-681-5404

*April 19, 2012*
*Page 2*
*Chart Document*

**KENNETH RICHARD BARBER**
Male  DOB: 07/22/1969                    54251-2843001

radicular or peripheral pattern.

Coordination and gait grossly intact

Cranial nerves grossly intact

## Impression & Recommendations:

**Problem # 1:**  POSTCONCUSSION SYNDROME (ICD-310 2)
**Assessment:** Unchanged
*1. Doing well but still with some persistent headaches and sensitivity to noise and odor*

REC:
1. Continue Tramadol for pain
2. Accomodations for better sleep if he can be moved away from his current cell location whcih has a disruptive and loud neighbor
3. Hypersensitivity to smell can likely not be remedied at this time
4. In regards ot these issues, I do not feel this or any of the following medical diagnoses preclude him from standing trial and particpating in routine court related activies and the legal process.

**Problem # 2:**  MIGRAINE WITHOUT AURA (ICD-346 10)
**Assessment:** Unchanged
Headaces likely postconcussive in nature.

REC:
1. COntinue Tramadol for pain

**Problem # 3:**  CHARCOT-MARIE-TOOTH DISEASE (ICD-356.1)
**Assessment:** Unchanged
Stable
REC: No new recommendations

**Problem # 4:**  CERVICAL RADICULOPATHY (ICD-723 4)
**Assessment:** Unchanged
Has continued complaints of head and neck pain, likely due to preexisting cervical spine degenerative disease superimposed on recent traumatic injury resulting in cervical sprain type injury to the neck

REC: Time and continued pain control

**Patient Instructions:**
1)  Please schedule a follow-up appointment in 3 months.

# HEALTH CARE
## CENTERS
PUBLIC HEALTH DEPARTMENT
SANTA BARBARA COUNTY

**Santa Barbara Health Care Center**
345 Camino del Remedio   Santa Barbara, CA 93110-1332
805-681-5488  Fax: 805-681-5404

*April 19, 2012*
Page 3
Chart Document

**KENNETH RICHARD BARBER**
Male  DOB: 07/22/1969

54251-2843001

# EXHIBIT "4"

Claim IV

The following civil rights have been violated:
Fourteenth Amendment - right to Due Process

Defendant Chief of Police Danny R Macagni violated my
civil rights:

A few weeks before June 25, 2007 I was pulled over by santa
Maria Police Officer J. Lopez and was subjected to a warrantless
fruitless search and siezure. This stop was in violation of
my Fourth Amendment right to be free from unreasonable search
and seizure and my fourteenth Amendments right to due process

On June 25, 2007 I was pulled over once again by Officer
Lopez in violation of my Fourth and Fourteenth Amendments because
the search was without cause or warrant and was done unlaw-
fully and led to my arrest on a PAL warrant and Misd. Charg-
es. Officer Lopez then unlawfully coerced a confession out of me
after I invoked my Miranda rights by threatening to charge my
girlfriend Tamara Bonnes with what he "suspected" as stolen
computer equipment and hold her over night so she would miss her
child custody appointment (Exhibit D) This was in violation of my
Fifth Amendment right to remain silent, my Sixth Amendment
right to counsel, my Fourth Amendment right to be free from
unreasonable search and seizure, and my fourteenth Amendment
right to Due Process.

I was then brought to the Santa Barbara County Substation
where two more searches were conducted in which I am
claiming excessive force and Cruel and Unusual punishment in
violation of my Fourth, Eighth, and Fourteenth Amendments. These
searches led to several felony drug charges.

After my arrest I wrote James Robertson of the A.C.L.U. (Exhibit
'A') and informed him of S.M.P.O. Lopez's misconducts. He then sent
my letter by E-Mail to the Mayor Laurence J. Lavagino (Exhibit B)
which in turn sent it to Chief of Police Danny R Macagni.

Officer Macagni wrote me a letter (Exhibit C) Assuring me that
Lopez's actions were under investigation by Norm Come' of
Internal Affairs. He also assured me that he would review any
and all statements and reports provided and would advise
me of his findings via a letter. Officer Come' conducted
a recorded complaint describing my alligations in great detail

pg 13

and also assured me that my allivations would be taken seriously. I to date have heard nothing back from Danny Macagni concerning my complaint and have even wrote a letter to Norm "Come" asking for the outcome with no avail. I've also filed a "Pitchess" motion and it was granted as so the court could look into Officer Lopez's personel file to see if any relevant complaints had been filed on him. My Complaint was not in there.

Santa Maria Chief of Police Danny R Macagni has refused to take my complaint seriously. He has failed to properly train and or instruct officer Lopez and other Santa Maria Police officers in the reasonable amount of force to be used in an arrest. Danny R Macagni is aware of at least two incidences in which suspects have had to have medical attention after arrest by his officers (Exhibit F). His neglect of alligations and his ineffective, inefficient investigations has caused more victoms of his officers unlawfull, unreasonable, and contrary to law arrests.

Chief of Police Danny R Macagni has violated my Fourteenth Amendments right to Due Process by his gross negligence in addressing my complaint.

I believe I am entitled to the following spicific relief:
  1) Professional sanctions against Officer Macagni
  2) Termination of Lopez.
  3) Punitive Damages of $500,000.00
  4) Reasonable Attorney Fees.

Date Nov. 8, 2008.

Kenneth R Barber
Kenneth R Barber

pg 14

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6273-DMG (MLG) | Date | January 10, 2011 |
|---|---|---|---|
| Title | Kenneth Richard Barber v. Santa Maria Police Department, et al. | | |

| Present: The Honorable | Marc L. Goldman, Magistrate Judge |
|---|---|

| Terri Steele | n/a | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     (In Chambers) Order for Supplemental Briefing

On January 3, 2011, District Judge Dolly M. Gee entered an order granting Plaintiff's motion for summary judgment on his Fourth Amendment claim arising from the investigatory stop on May 19, 2007, and Defendants' motions for summary judgment on all other claims. The case was remanded to me for a supplemental determination on whether damages are warranted or whether that issue must be tried.

It is ORDERED that on or before February 25, 2011, Defendants Lopez and Arias shall file a supplemental motion and brief addressing the issue of compensatory, nominal, and punitive damages in the context of this case. The brief shall address the question of whether summary judgment on any aspect of damages is available or warranted. Should Defendants concede that the issue of damages is not subject to summary judgment and must be tried, they shall file a notice so stating and Plaintiff need not file a response.

If Defendants Lopez and Arias do file a motion for summary judgment as to any aspect of available damages, Plaintiff shall file a reply on or before April 1, 2011. The matter shall be deemed under submission as of that date.

Initials of Clerk     ts

CV-90 (06/04)                    CIVIL MINUTES - GENERAL                    Page 1 of 1

# Santa Maria Sun / Cover Story

The following articles were printed from Santa Maria Sun [santamariasun.com] - Volume 12, Issue 20
Share:

## Betraying the badge?
*Former Santa Maria police officers allege mishandling in reputed prescription drug thefts*

### BY JEREMY THOMAS

In the predawn hours of April Fools' Day 2004, Santa Maria resident Alane Avila awoke in her bedroom with a start.

> **Larry Ralston, Lompoc Police Capt.**
>
> *'When we get a citizen's complaint, it gets investigated to some degree. It doesn't sound like this got investigated at all.'*

"I just heard this bang and a flash," Avila recalled. "I jumped up and my door came flying open, and there's all these guys with ski masks on and guns pointed saying, 'Get on the ground!'"

It wasn't until Avila was rounded up with the other members of the shared household that she realized her perceived intruders were officers from the Santa Maria Police Department's SWAT team, who were searching the home for a suspected drug dealer.

Avila, now living in Madera County, was renting a room in the house at the time, and had no connection to the man the authorities were looking for. However, upon the officers' departure, she found her bedroom had been thoroughly ransacked.

"When I went back to my room, the mattresses, everything was pulled out of the closet, everything was just pulled out of the drawers, everything," Avila said. "Drawers turned upside down. It was a mess."

In the aftermath of the raid, Avila noticed something amiss. Recovering from a major knee surgery, Avila had filled her doctor's prescription for 80 hydrocodone—a synthetic opiate—the night before. After the officers left, only 15 pills remained in the bottle.

Avila knew someone had taken them. They were there when she went to bed just hours before, she said, and she was the only one who had access to her room.

"I just thought maybe the officers took them," Avila said. "Basically, I grew up all my life thinking it was the officer's word against yours, so I didn't know what to do. My hands were basically tied. I called my doctor and informed him that the prescriptions were lost."

### Piecing the pill puzzle

Days after the raid, Avila placed a call to Santa Maria Police Sgt. Greg Carroll, then supervisor of the department's narcotics suppression team, to explain the situation.

"She said she was missing some pain medication," Carroll recalled. "I told her sometimes things happen during search warrants, things get tossed around. The pills may have been dropped on the floor. She said no, the pill bottle was in the exact same spot in her bedroom and dresser drawer."

Investigating further, Carroll visited Avila's home on Depot Street the following day.
She showed him her pill bottles and the receipt for her recent refill.

"I go out there and she had left everything the way it was," Carroll told the *Sun*. "She showed me where she had surgery, showed me the prescription, when it was filled, and what doctor. Everything she was telling me was on the up and up. She didn't fit the description of a drug addict or someone who was strung out on pain medication or anything."

Because the search warrant was served at multiple locations, the SWAT team had help from the department's detective bureau. Carroll talked to the team's lead officer.

Carroll's inquiry ultimately centered on an officer who will be referred to as "Joe Friday" for this article.

After speaking with Avila, Carroll explained the situation to his lieutenant, Larry Ralston, now a captain with the Lompoc Police Department. Ralston was supervisor of the SMPD's detective bureau when the alleged theft occurred.

"I was instructed by [Ralston] at the time to write up a citizen's complaint, to do basic follow up, which I did, just to see if there was any factual basis to the complaint, which there was," Carroll said. "So I wrote it up."

In an interview with the *Sun*, Ralston confirmed Carroll's version of the events, adding he had sent the complaint to Santa Maria police chief Danny Macagni after reviewing it.

"I had asked [Carroll] to prepare a memo about what happened and then I prepared a memo with his and forwarded it to the chief. I was told some time later that the chief handled it, and that was the end of it as far as my involvement," Ralston said. "I inquired several other times, but I was never given any more specific information."



**CHIEF CONCERN:**

*A recent deposition made by Santa Maria Police chief Danny Macagni reveals he's unsure as to how a complaint was handled. The chief declined to speak to the Sun about the issue, citing a non-disclosure agreement— though Santa Maria city attorney Gil Trujillo said Macagni and others were instructed to send inquiries about the matter to Trujillo's office.*

FILE PHOTO BY STEVE E. MILLER

"I don't remember [Macagni] telling me who, if anybody, investigated anything," Ralston continued. "I was given the impression that he handled it, and if I remember right, it was more along the lines of he handled it himself, that he talked to [Friday]."

According to Carroll and Chuck Rylant, a former Santa Maria police detective who served for 15 years, instead of sending the complaint to Internal Affairs for investigation, per usual procedure, Macagni showed the complaint to Friday and asked him if he'd stolen the drugs; Friday denied the accusation.

Carroll said Friday then stormed into his office, "ranting and raving," and claiming no involvement in the alleged theft. Carroll later heard it wasn't the first time Friday had been suspected.

According to Carroll, Ralston explained that another Santa Maria officer had reported suspecting Friday of stealing prescription drugs during a previous search warrant, served in 2003 at a residence in Nipomo. Police were led to the home looking for a suspect in a credit card theft case.

When asked to supply a copy of the police report describing the search warrant under the California Public Records Act, the city refused in a June 24 letter. Instead, city officials sent the *Sun* a copy of a booking record for the credit card theft suspect from Santa Barbara County Jail and a brief description of the raid.

According to Carroll, Ralston wrote up a memo detailing the complaint brought by the officer who suspected the theft. Though Ralston recalled hearing accusations against Friday, Ralston said he couldn't remember if he'd actually written up a formal complaint or not.

The officer who's alleged to have complained refused to comment for this story.

At the time of the suspected thefts, Ralston said Friday was dealing with an injury that required doctor-prescribed medication.

**BLOWING THE WHISTLE?**
Former Santa Maria Police
sergeant Greg Carroll, who
recently settled his lawsuit
against the city, believes Chief
Danny Macagni failed to properly
investigate suspected
prescription drug thefts involving
one of the agency's own officers.
**PHOTO BY STEVE E. MILLER**

"It was a legitimate injury," Ralston said. "There was nothing illegitimate about it at all."

Ralston added that as far as he knew, there was never any disciplinary action taken against the officer, but that doesn't mean it didn't happen.

"I think it's remote, but there's a chance [Friday] could've been disciplined and we would have never known about it," Ralston said. "There's a chance."

According to Rylant, who also worked in the officer bureau, it was believed around the station that the accused officer had an addiction to medications, which caused no small amount of concern.

"Everybody knew this was going on, and no one dealt with it," Rylant said. "It wasn't a surprise, but it was kind of a surprise to see it at this level. It blew me away."

Carroll feels that the chief didn't do enough to get help for someone who needed it.

Months passed, and Carroll claims whenever he inquired about the status of the complaints, he was told Macagni was taking care of it.

"I heard nothing back from it," Carroll said. "I had actually made a suggestion to [Ralston] at the time that we should set up a sting and have this officer come in on a search warrant and plant some prescription meds in the room, and let him search it and see if they come up missing, that would definitely tell if he was involved or not. [Ralston] took it to the chief, because he thought it was a good idea, too, and the chief said, 'No, I'll handle it.'"

Carroll, who began working in Santa Maria in 1990 and won the department's Supervisor of the Year award in 2001 and 2004, said he'd never seen anything like it before in his entire career.

"Internal Affairs should have been brought in," he said. "I think the best way would have been to do a sting, because we do search warrants all the time, and it would be easy to set up a room and put some prescription drugs in there, let him search it without his knowledge and have IA [follow] it all the way through.

"People were shocked it was handled the way it was," he added.

**Coming to light**

On June 17 of this year, former SMPD detective Rylant filed a citizen's complaint with Santa Maria city attorney Gil Trujillo regarding the allegations against Friday. The complaint accuses Macagni of violating California Penal Code Sec. 832.5, a state law requiring police departments to conduct prompt investigations of suspected employee misconduct.

"This is the most serious allegation I've ever been privy to during my fifteen-year law enforcement career, however, it was brushed under the carpet as being insignificant," Rylant writes in the complaint. "If you study police corruption such as the famous Rampart scandal, it was City Council and City Management overlooking these serious seeds that led to even more serious corruption, such as drug sales and murder by police officers."

> **Chuck Rylant, former Santa Maria police detective**
> 'It wasn't a surprise, but it was a surprise to see it at this level. It blew me away.'

In the highly publicized Rampart scandal, uncovered over the course of a decade in the early 2000s, more than 70 officers in the LAPD Rampart Division's anti-gang unit were implicated in crimes ranging from stealing and planting evidence, to dealing drugs and gang activity.

"This is where it begins, with small crimes," Rylant told the *Sun*. "When you overlook that kind of stuff, it keeps going and going."

Case 2:13-cv-04645-DMG-MRW   Document 11   Filed 09/23/13   Page 45 of 55   Page ID #:170

Former SMPD sergeant Carroll, who recently retired from the force, claims he has nothing to gain by coming forward with the allegations. However, it should be noted that in 2008, Carroll sued the city of Santa Maria, police chief Macagni, and city manager Tim Ness in federal court, alleging he'd been passed over for promotion in retaliation for his efforts as president of the Santa Maria Police Officer's Association and subsequent public support of former police chief John Sterling, who retired after reaching a settlement with the city in 2003. Carroll won a $110,000 settlement in April.

According to Rylant and Carroll, complaints about Friday's suspected misconduct never reached the department's Internal Affairs lieutenant at the time, Chris Vaughan. Vaughan, currently employed by the SMPD, did not return the *Sun*'s requests for comment; however, the former officers' claims appear to have been substantiated during a sworn deposition given by Chief Macagni in Carroll's case on Nov. 29, 2010.

On page 90 of Macagni's deposition, Macagni is asked about the complaints regarding Friday by Carroll's attorney Michael McGill and a lawyer for the defense, Jeffery Stockley. The transcript of the deposition reads as follows:

Q: BY MR. MCGILL Who looked into it?

A: [MACAGNI] I don't recall, I don't remember.

Q: Okay. So the part of the paragraph here where it talks about it never going to IA, that's inaccurate?

A: I don't think it went to internal affairs per se. I know it was looked into, 'cause I remember there was some issues that came about, some medical issues that were revealed by another employee's wife.

MR. STOCKLEY: Again, we don't want to get into the detail of that.

THE WITNESS [Macagni]: Okay, there was some issues; it was looked into.

Q: BY MR. MCGILL: The part of the paragraph that talks about—Well, Carroll indicates that you, the chief, had asked the officer if he had taken medication, and the officer replied no.

Do you recall having that conversation with the officer?

A: No.

Q: So when you say it was looked into, you don't actually recall what steps they took to look into it?

A: No, I don't. I didn't look into it personally. It was assigned to somebody.

Who the complaints might have been assigned to, as Macagni claims, remains a mystery. When the *Sun* asked him to comment on the revelation, Macagni said, through his secretary, that he had signed a non-disclosure agreement as part of Carroll's settlement and couldn't speak about anything in his deposition.

> **Catherine Lombardo, defense attorney and law expert**
>
> *'For a chief to say, 'I don't know, I think it was investigated,' or 'No, we never really investigated it,' I'd say he's responsible for that.'*

However, the *Sun* obtained a copy of the settlement, which contains no mention of a non-disclosure agreement by any of the parties involved.

Santa Maria city attorney Trujillo told the *Sun* that, as a result of Rylant's citizen's complaint against Macagni, Trujillo has instructed Macagni and all other city employees to refer questions about the alleged drug thefts and investigation to Trujillo's office, a standard practice in ongoing investigations. Trujillo wouldn't comment on any details of the case.

"It involves allegations against the chief, so it's a personnel matter," Trujillo said. "Pursuant to our statutory obligation, we investigate all citizen complaints, and we are doing that in this case."

Case 2:13-cv-04645-DMG-MRW   Document 11   Filed 09/23/13   Page 46 of 55   Page ID #:171

According to Trujillo, the city has retained a third party independent investigator, a retired Orange County Sheriff's lieutenant named Art Romo, to examine Rylant's allegations against Macagni and determine whether the complaints against Friday were ever seriously investigated. Romo has until June 17, 2012, to complete his inquiry.

"It's necessary to preserve the integrity of the investigation that the investigator be able to look into all facts without any interference," Trujillo said. "That's just standard operating procedure."

**The thin blue line**

Like most police departments, the SMPD employs an Internal Affairs (IA) officer to review citizen complaints, and if they're found to have merit, forwards them to independent third parties for investigation. If the complaint involves someone above the IA officer's rank, it's immediately referred to an independent investigator. The purpose of the process is to protect citizens, individual officers, and the integrity of department.

Former SMPD lieutenant Ralston said, to his knowledge, the complaints raised against Friday didn't follow the department's normal procedures.

"We put it into a memo to go up the chain to be assigned to the Internal Affairs investigator. Normally it would have been handled in that manner," Ralston said. "When we get a citizen's complaint, it gets investigated to some degree. It doesn't sound like this got investigated at all."

By law, whenever a citizen complaint is issued, the Internal Affairs unit or similar internal policing body of the police department must conduct a formal investigation.

The *Sun* contacted Catherine Lombardo, a Los Angeles-based attorney and legal expert with a background in Internal Affairs investigations, to weigh in on the case. Lombardo said she was "shocked" the suspected thefts appear to have never been subject to an independent probe.

"Absolutely it should have gone to Internal Affairs," Lombardo said. "It's not just a rubber stamp process; it should be thoroughly investigated.

"If this case isn't investigated, then the system is broken," she continued. "Whether it's frivolous or whether it has merit, every citizen complaint must be investigated."

Serious inquiries into all citizen complaints are essential, she said, because the complaints are added to each officer's personnel file, and can call into question the officer's integrity as a witness. Lombardo said in this case, there could also be rights violations that have yet to be brought to light.

"If he took this lady's prescription pills, that's a civil rights violation and it's a crime," Lombardo said. "If this officer in fact committed a crime and a civil rights violation against a citizen while wearing a badge, and if it went un-investigated and the cop is still working, it's pretty clear he violated their mission statement."

In a smaller police department such as Santa Maria's, Lombardo said, the buck stops on the chief's desk.

"It's not unreasonable to expect that the chief of police would have knowledge of and perhaps some responsibility for an investigation like this," Lombardo said. "For a chief to say, 'I don't know, I think it was investigated,' or 'No, we never really investigated it,' I'd say he's responsible for that."

Former SMPD officers Carroll and Rylant said they believe the Friday case was never subject to serious inquiry because the accused officer was a supporter and friend of Macagni's. Not formally investigating the suspected thefts, they say, sets a dangerous precedent, hurts morale throughout the department, and could lead to more serious corruption, if it hasn't already.

Case 2:13-cv-04645-DMG-MRW   Document 11   Filed 09/23/13   Page 47 of 55   Page ID #:172

"We're getting permission to break into somebody's house to go steal their property. That is beyond everything," Rylant told the *Sun*. "With these rare exceptions, a judge gives you permission to violate the Constitution and go into somebody's house, but when the government oversteps the bounds, there are supposed to be checks and balances."

According to law expert Lombardo, it's common for cops to be protected by their supervisors. Incidents where officers are caught and convicted of stealing in a court of law are "very rare." Equally rare are terminations as a result of citizen complaints.

In cases where investigators determine complaints to be "founded," officers are usually offered counseling, or retraining first. Suspensions without pay may also be levied.

Like Rylant, Lombardo drew comparisons in the Friday case to the Rampart scandal, and said corruption, like a virus, tends to spread when alleged misdeeds are ignored.

"If there's dirt inside a police department, a dirty cop, a dirty higher up, they bury things," Lombardo said. "Was this buried? Maybe. Will the officer eventually be punished if the facts come out and it's true? Absolutely."

Lombardo added what could've been resolved at the outset on an individual basis now presents "a huge problem" for the SMPD.

"The entire department is going to be subject to ridicule, scrutiny, and questioning," she said. "Now, all the focus is going to be on the department." m

*Staff Writer Jeremy Thomas can be contacted at jthomas@santamariasun.com.*

Share:

# EXHIBIT "5"

## Form 1 (left)

NWT-24

**Custody Operations**
**Inmate Discipline Report / Medical Documentation**

IDR ☐ Date of incident/time 0920 3/13/12

Medical ☐ Date reported/time 0920 3/13/12

Inmate BARBER KENNETH

BKG 0930626 CID 0262037

Current Housing IRC-114

Location of Offense IRC-114

Offense(s)
☒ #1 FAILURE TO FOLLOW INST SNS
☒ #13 MINOR CONTRABAND
☒ #20 MISC

You have the right to appear before the Inmate Discipline Review Board. Refusal to sign this IDR will be considered a waiver of your right to appear.

☒ I wish to appear    ☐ I do not wish to appear

Inmate Signature X _____

Reported by _____

Supervisor _____

IDR Board Member and Body #
1. _____
2. _____

Date and Time of IDRB 03/14/17

Action Taken in Loss Days:
___ Commissary    ____ Visitation
___ Good Time    ____ Stop Work Time
___ Disciplinary ISO    ____ Disc. ISO w/ Diet

Release date if applicable _____

Recommended by _____

Visitation effective: From 3/16/12 to 4/13/12
Commissary has date will be determined by Commissary Staff

Reviewed by _____
OPS Lt. _____    Date 3/15/12

Dist. White – Class/Golden – Final Disposition/Canary – Inmate Copy
CO-1125

## Form 2 (middle)

**Custody Operations**
**Inmate Discipline Report / Medical Documentation**

IDR ☒ Date of incident/time 04-08-18/0935

Medical ☐ Date reported/time SAME

Inmate INGLE LARRY RONALD

BKG 0968131 CID 0161639

Current Housing NWT-23

Location of Offense NWT-23

Offense(s)
☒ #10 MISC FLOODING
CELL & HALLWAY

You have the right to appear before the Inmate Discipline Review Board. Refusal to sign this IDR will be considered a waiver of your right to appear.

☐ I wish to appear    ☒ I do not wish to appear

Inmate Signature REFUSED

Reported by NARBER/2855

Supervisor II NW TWN 2 596

IDR Board Member and Body #
1. SMITH 2811 / NW REFUSED GUARD
2. 2627 / 2182 REFUSED

Date and Time of IDRB ___ 4/11/12

Action Taken in Loss Days:
SL/45 Commissary    SL/45 Visitation
___ Good Time    ___ Stop Work Time
___ Disciplinary ISO    ___ Disc. ISO w/ Diet

Release date if applicable _____

Recommended by II ANTWER 2576

Visitation effective: From 6/11/12 to 9/5/12
Commissary has date will be determined by Commissary Staff

Reviewed by _____
OPS Lt. _____    Date 4/12/12

Dist. White – Class/Golden – Final Disposition/Canary – Inmate Copy
CO-1125

## Form 3 (right)

**Custody Operations**
**Inmate Discipline Report / Medical Documentation**

IDR ☒ Date of incident/time 04-08-12/0935

Medical ☐ Date reported/time SAME

Inmate INGLE LARRY RONALD

BKG 0968131 CID 0161639

Current Housing NWT-23

Location of Offense NWT-23

Offense(s)
☒ #10 DAMAGING COUNTY PROP
TORE UP MATTRESS
☒ #18 WRISTBAND VIOLATION
NOT WEARING WRISTBAND

You have the right to appear before the Inmate Discipline Review Board. Refusal to sign this IDR will be considered a waiver of your right to appear.

☐ I wish to appear    ☒ I do not wish to appear

Inmate Signature REFUSED

Reported by NARBER 2855

Supervisor II NW TWN2 596

IDR Board Member and Body #
1. SMITH 2811 / NW REFUSED (GUARD)
2. 2627 / 2182 REFUSED

Date and Time of IDRB 03:00 4/11/12

Action Taken in Loss Days:
SL/45 Commissary    SL/45 Visitation
___ Good Time    ___ Stop Work Time
___ Disciplinary ISO    ___ Disc. ISO w/ Diet

Release date if applicable _____

Recommended by II ANTWER 2576

Visitation effective: From 9/5/12 to 12/3/12
Commissary has date will be determined by Commissary Staff

Reviewed by _____
OPS Lt. _____    Date 4/12/12

Dist. White – Class/Golden – Final Disposition/Canary – Inmate Copy
CO-1125

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Kenneth R Barber Jr

PRISONER/PLAINTIFF,

v.

Santa Barbara County et al.

DEFENDANT(S).

CASE NUMBER

REQUEST TO PROCEED WITHOUT
PREPAYMENT OF FILING FEES WITH
DECLARATION IN SUPPORT

I, Kenneth R Barber _____, declare under penalty of perjury, that the following is true and correct; that I am the prisoner-plaintiff in the above entitled case; that in support of my request to proceed without prepayment of fees under 28 U.S.C. Section 1915, I declare that because of my poverty I am unable to pay the full costs of said proceedings or to give security therefore and that I am entitled to redress.

I further declare under penalty of perjury that the responses which I have made to the questions and instructions below are true, correct and complete.

1. Are you presently employed in prison? ☒Yes   ☐No

   a. If the answer is yes, state the number of hours you work per week and the hourly rate of pay:

   _____

   b. State the place of your incarceration Calipatria State Prison
      Have the institution fill out the Certificate portion of this application and attach a certified copy of your prison trust account statement showing transactions for the past six months.

2. Have you received, *within the past twelve months*, any money from any of the following sources?

   a. Business, profession or form of self-employment?        ☐Yes  ☒No
   b. Rent payments, interest or dividends?                    ☐Yes  ☒No
   c. Pensions, annuities or life insurance payments?          ☐Yes  ☒No
   d. Gifts or inheritances?                                   ☐Yes  ☒No
   e. Any other income (other than listed above)?             ☐Yes  ☒No
   f. Loans?                                                   ☐Yes  ☒No

   If the answer to any of the above is yes, describe such source of money and state the amount received from each

   source during the past twelve (12) months: _____

   _____

3. Do you own any cash, or do you have money in a checking or savings account? (Include any funds in prison accounts, if applicable.) ☐ Yes ☒ No

   If the answer is yes, identify each account and separately state the amount of money held in each account for each of the *six (6) months prior* to the date of this declaration.

   _____

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)? ☐ Yes ☒ No

   If the answer is yes, describe the property and state it approximate value: _____

   _____

5. In what year did you last file an Income Tax Return? ___92___
   Approximately how much income did your last tax return reflect? _Dont Remember_

6. List the persons who are dependent upon your for support, state your relationship to those persons, and indicate how much you contribute toward their support: _No dependentes_

   _____

   I understand that a false statement or answer to any question in this declaration will subject me to penalties for perjury. I further understand that perjury is punishable by a term of imprisonment of up to five (5) years and/or a fine of $250,000 (18 U.S.C. Sections 1621, 3571).

   __California__                          __Calipatria__
   State                                   County (or City)

   I, __Kenneth R Barber__, declare under penalty of perjury that the foregoing is true and correct.

   __6/4/2013__                            __Kenneth R Barber__
   Date                                    Prisoner/Plaintiff (Signature)

## PRISONER AUTHORIZATION

If my request to proceed without prepayment of filing fees is granted, I understand that I am required by statue to pay the full amount of the filing fees for this case, regardless of my forma pauperis status and the disposition of this case. I further authorize the prison officials at this institution to assess, collect and forward to the Court the full amount of these fees, in monthly payments based on the average of deposits to or balance in my prison trust account in accordance with 28 U.S.C. Section 1915.

_____
Prisoner-Plaintiff (Signature)

## CERTIFICATE OF AUTHORIZED OFFICER

I hereby certify that the Prisoner-Plaintiff herein has credit in the sum of $ 0.00 _____ on account at the _Calipatria State Prison_ institution where Prisoner-Plaintiff is confined.

I further certify that during the past six months the applicant's average monthly balance was $0.00. I further certify that during the past six months the average of monthly deposits to the applicant's account was $ 0.00.

A certified copy of the prisoner-plaintiff's trust account statement for the last six (6) months is attached.

_6-13-13_
Date

_____
Authorized Officer of Institution (Signature)

## Inmate Statement Report

| Start Date: | 12/1/2012 | Revalidation Cycle: | All |
| End Date: | 6/13/2013 | Housing Unit: | All |
| Inmate/Group#: | P43791 | | |

## Inmate Statement Report

| CDCR# | Inmate/Group Name | Institution | Unit | Cell/Bed |
|---|---|---|---|---|
| P43791 | BARBER, KENNETH | CAL | B 001 1 | 129001 |

**Current Available Balance:**   $0.00

### Transaction List

| Transaction Date | Institution | Transaction Type | Source Doc# | Receipt#/Check# | Amount | Account Balance |
|---|---|---|---|---|---|---|
| | | | **No information was found for the given criteria.** | | | |

### Encumbrance List

| Encumbrance Type | Transaction Date | Amount |
|---|---|---|
| | **No information was found for the given criteria.** | |

### Obligation List

| Obligation Type | Court Case# | Original Owed Balance | Sum of Tx for Date Range for Oblg | Current Balance |
|---|---|---|---|---|
| COPY CHARGES | 12/6/12 | $0.84 | $0.00 | $0.84 |
| COPY CHARGES | 3/8/13 | $0.12 | $0.00 | $0.12 |
| COPY CHARGES | REG COPY 3/28/13 | $0.12 | $0.00 | $0.12 |

### Restitution List

| Restitution | Court Case# | Status | Original Owed Balance | Interest Accrued | Sum of Tx for Date Range for Oblg | Current Balance |
|---|---|---|---|---|---|---|
| DIRECT ORDER | CR44963 | Active | $30,379.00 | $0.00 | $0.00 | $29,850.85 |
| RESTITUTION FINE | CR44963 | Active | $4,000.00 | $0.00 | $0.00 | $3,996.00 |
| RESTITUTION FINE | 1276087 | Active | $6,000.00 | $0.00 | $0.00 | $6,000.00 |
| RESTITUTION FINE | 1346175 | Active | $10,000.00 | $0.00 | $0.00 | $10,000.00 |

THE WITHIN INSTRUMENT IS A CORRECT
COPY OF THE TRUST ACCOUNT MAINTAINED
BY THIS OFFICE.
ATTEST:

CALIFORNIA DEPARTMENT OF CORRECTIONS

BY _____

TRUST OFFICE          6-13-13

# VERIFICATION
(C.C.P. § 446 & 2015.5: 28 U.S.C. § 1746)

STATE OF CALIFORNIA
COUNTY OF IMPERIAL

_____

I, *Kenneth A Barber*_____ DECLARE UNDER PENALTY OF PERJURY THAT: I AM THE
*Plaintiff*_____ IN THE ABOVE ENTITLED ACTION. I HAVE READ THE FOREGOING DOCUMENTS
AND KNOW THE CONTENTS THEREOF AND THE SAME IS TRUE OF MY OWN KNOWLEDGE EXCEPT AS
TO MATTERS STATED THEREIN UPON INFORMATION AND BELIEF AND AS TO THOSE MATTERS, I
BELIEVE THEM TO BE TRUE.

EXECUTED THIS *9/19/2013* DAY OF _____ 2013 AT CALIPATRIA STATE PRISON
CALIPATRIA, CALIFORNIA 92233-5002.

_____ (DECLARANT/PRISONER)
SIGNATURE

# PROOF OF SERVICE BY MAIL
(C.C.P. §1013(a) & 2015.5: U.S.C. § 1746)

I, *Kenneth Barber*_____ AM A RESIDENT OF CALIPATRIA STATE PRISON, IN THE COUNTY OF
IMPERIAL, STATE OF CALIFORNIA. I AM OVER EIGHTEEN (18) YEARS OF AGE AND AM / AM NOT A
PARTY OF THE ABOVE ENTITLED ACTION. MY STATE PRISON ADDRESS IS P.O. BOX 5002,
CALIPATRIA STATE PRISON, CALIPATRIA, CALIFORNIA 92233-5002.

ON ___*9/19*___ 2013 IS SERVED THE FOREGOING:

*42 USC §1983 Civil Rights Complaint*
(SET FORTH EXACT TITLE OF DOCUMENTS SERVED)

ON THE PARTY(S) HEREIN BY PLACING A TRUE COPY THEREOF, ENCLOSED IN A SEALED
ENVELOPE(S) WITH POSTAGE THEREON FULLY PAID, IN A THE UNITED STATES MAIL, IN A DEPOSIT
BOX SO PROVIDED AT CALIPATRIA STATE PRISON, CALIPATRIA, CALIFORNIA 92233-5002.

*United States District Court*
*L.A. Cal   90012*

THERE IS DELIVERY SERVICE BY UNITED STATE MAIL AT THE PLACE SO ADDRESSED, AND THERE IS
REGULAR COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING AND THE SO ADDRESSED.
I DECLARE UNDER PENALTY OF PERJURY THE FORGOING IS TRUE AND CORRECT.

DATE ___*9/19/2013*___ |2013   _____
                                 DECLARANT / PRISONER