Kenneth R Barber Jr
FULL NAME
Calipatria State Prison
PO Box 5001
FULL ADDRESS INCLUDING NAME OF INSTITUTION
Calipatria Ca 92233
P-43791
PRISON NUMBER (if applicable)

FILED
CLERK, U.S. DISTRICT COURT
FEB 27 2014
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Kenneth Richard Barber Jr. PLAINTIFF, | CASE NUMBER CV 13-4645 DMG (MRW) *To be supplied by the Clerk* ~~First~~ 2nd Amended Complaint |
| v. Santa Barbara County et al. DEFENDANT(S). | **CIVIL RIGHTS COMPLAINT PURSUANT TO** *(Check one)* ☒ 42 U.S.C. § 1983 ☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971) |

**A. PREVIOUS LAWSUITS**

1. Have you brought any other lawsuits in a federal court while a prisoner: ☒ Yes ☐ No
2. If your answer to "1." is yes, how many? 2

Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

1) Case # CV-1102365-DMG (MLG) - This Lawsuite was a medical issue. The doctor was fired and the Santa Barbara County Jail resolved the issues. On March 13, 2012, just prior to my deadline my cell was searched and a great deal of documents were destroyed by jail staff forcing me to miss the deadline resulting in the dismissal of the lawsuite.

2) Case # CV08-6273 DDP (MLG) - This Lawsuite was against the Santa Maria Police Dept and 2 of their officers for Illegal search & Seizure I won summary Judgement against both officers. This is one of the many police Dept in Santa Barbara County.

a. Parties to this previous lawsuit:
Plaintiff Kenneth R Barber

Defendants Santa Maria Police officer Joe Lopez

b. Court United States District Court Central District.

c. Docket or case number CV086273 DDP (MLG)

d. Name of judge to whom case was assigned Dolly Gee

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it appealed? Is it still pending?) I won Motion for Summary Judgment

f. Issues raised: Violation of 4th & 14th Amendments

g. Approximate date of filing lawsuit: Nov 18, 2008

h. Approximate date of disposition

**B. EXHAUSTION OF ADMINISTRATIVE REMEDIES**

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☒ Yes ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☒ Yes ☐ No

   If your answer is no, explain why not

3. Is the grievance procedure completed? ☒ Yes ☐ No

   If your answer is no, explain why not

4. Please attach copies of papers related to the grievance procedure.

**C. JURISDICTION**

This complaint alleges that the civil rights of plaintiff Kenneth R Barber
(print plaintiff's name)
who presently resides at C.S.P. P.O. Box 5001 California Cal. 93233,
(mailing address or place of confinement)
were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at Santa Barbara County Jail Santa Barbara
(institution/city where violation occurred)
on dates 3/19/2012-4/20/2012, 7/27/2012 – Unknown date, March 2010-2012

# Varified Complaint For Damages Injunction & Declaratory Judgement Demand for Jury Trial

1. Plaintiff is a resident and state inmate confined in the Calipatria state prison (hereafter C.S.P.) at Calipatria, Ca. Plaintiff brings this civil rights action to redress the depervation under the color of state law privileges and immunities secured to the plaintiff by the provisions of the Eighth Amendment to the United States Constitution. Plaintiff alleges that, while incarcerated at the Santa Barbara County Jail from March of 2010 to August of 2012, he was denied his Federal Constitutional right to humane conditions of confinement by virtue of him being placed in a cell covered w/ human feces from March 13 2012 to April 20, 2012; In a section w/ psychiatric inmates from 2010-2012.

2. Plaintiff Kenneth A Barber Jr was at all times relevant to this action a convicted inmate on trial for aditional charges incarserated at Santa Barbara County Jail.

3. Defendant Santa Barbara County is responsible for the administration operation and supervision of Santa Barbara County Jails officials and for the promulgation and enforcement of rules, regulations, policies and practices relevant thereto. Defendant is sued in its official capacity.

4. Defendant Kenneth Callahan is an official at the S.B.C.J. and is responsible for the supervising and training of the correctional officers and staff as well as the conditions of confinement of all inmates. He is sued in his individual compacity.

5. Defendant Sgt Espinoza is a defendant in this case and is responsible for supervising and training of correctional officers and staff as well as the conditions of confinement of all inmates. Sued in his individual capacity.

6. Defendant Lt. Lammer is a defendant in this case and is responsible for the supervising disciplining and training of officers at the S.B.C.J. and conditions of confinement. He is sued in his individual capacity

7. Defendant C.O. Apple is a defendant in this case and is responsible for the safety and well being of all inmates at the S.B.C.J. He is sued in his individual capacity.

## Facts

8. Petitioner was housed in S.B.C.J. from March of 2010 to Auguest 2012 almost entirely in a single man isolation cell located in North West section cells 21-24 which was under 24 hr camara observation.

9. When first housed in N.W.I. 24 he witnessed a psychiatric inmate in cell #21 left for weeks at a time with his cell covered in his own feces. He would

not be removed for showers or clothing exchange. He would urinate under his door which would run out into our connecting hallway, this would stink up the whole section while officers and nurses would just step over it.

**10.** All officers are required to do security walks throughout the section every [illegible] hr. called pipe checks. They are required to look in each cell to verify, based on their own observations, that each inmate is safe and the cells are clean to county regulations and Jail policy.

**11.** As to paragraph #9 plaintiff Complained about the nauseating smell permeating throughout the section w/ no avail (officer Diaz finally cleaned it weeks later.)

**12.** As to claims in paragraph #9 all officers knew of the inhumane conditions of confinement at the SBCJ Northwest ISO Unit 21-24 due to the facts that: 1) The conditions lasted weeks at a time 2) The Section is under 24 hr camera observation 3) They count all inmates twice a day by checking wrist bands 4) Staff/officers are required to do security checks every hr. 5) Laundry exchange is once a week in which officers are required to enter each cell and confiscate any laundry 6.) Food must be delivered to each cell 3 times a day 7) Lights are on 24 hrs a day 8) Medical would come through 3 times a day at the minimum.

**13.** On an unknown date plaintiff witnessed Cory Benton being housed in cell 23 which had a vent connected to my cell in which we could talk through. He told me his cell was covered in human feces and that he "couldnt live like this." Mr Benton then got the attention of the control booth and demanded a face to face with Sgt Espinoza. Espinoza moved Mr Benton to cell 21. "Green shirts" went in to Clean the cell with a mop bucket & Rags. The cell was cleaned very quickly and not power washed. A psyciatric inmate was then placed in the cell.

**14.** At some point in 2011 plaintiff was moved to cell 21 when Cory Benton left then to the I.R.C. 100 Unit.

**15.** On March 13 2012 plaintiff suffered a [illegible] head injury and was taken to an outside local hospital and treated for severe concussion. Upon returning from the hospital he was rehoused to cell 21. The conditions of the cell were inhumane with feces packed into the air flow vent on the ceiling, all over the ceiling, walls, and floor. Plaintiff had to clean up feces with open wounds and both eyes swollen almost completely shut. He was suffering from headaches. Severe headaches.

**16.** After being housed in N.W.I. 21 on 3/13/2012 to 3/17/2012 plaintiff complained to several officers about cell conditions with no avail.

17. On 3/17/2012 I complained about the feces throughout my cell and that the vent in my cell was broken so I was not getting any ventilation. this caused stagnant fecee smelling air in which I had to live in 24hrs a day. This was at a time in which I was recovering from a major concussion. I requested the vents be fixed and the cell powersprayed. (Grievence Log #03339)

18. Approximately 2 weeks later the vent was fixed but vent remained clogged.

19. Sgt Maynards answer to the grievence was for plaintiff to clean up the human feces. The vent in question was not in his reach, not his responsibility to clean it, nor was he given the proper cleaning supplies. (Grievence Reply: 3/25/12)

20. Lt Lammer also signed the March 17, 2012 grievence. Proving he had knowledge of the inhuman living conditions.

21. On 3/24/12 I turned in another grievence explaining that the feces in my cell was still not cleaned up and that sewage was coming up from the drain with worms.

22. On 4/4/2012 I turned in another grievence in which I complained that the feces was still in my cell and nothing was getting resolved.

23. Sgt Maynard replied to the grievence (Log #03386) by stating Kliegl and Apple came to my cell on April 4th and that I refused to come out of my cell to have it cleaned, which was false. they came to plaintiffs cell in the very early morning hrs of April 4th between 1am & 3am with 2 workers a mop bucket and rags once they realized where the feces was located the agreed they needed a ladder. They left and never returned.

24. As to the grievence dated 4/4/2012 Log #03386 Lt Lammer signed the grievence who is required to read it and determine appropriate remedy.

25. Sometime prior to 4/4/2012 psychiatric patient Larry Thole was placed in NWI #23. He is known by all inmates and Jail personel to be completely uncontrollable with Banging, Screaming, throwing feces and covering himself in feces. He would ball up his feces and slide them under his door into our connecting hallway inches from plaintiffs door and sometimes makes it under the door.

26 Plaintiff has seen officers intstigate the psychiatric inmates into fits of throwing feces and pounding for hrs on end.

27. Plaintiff witnessed psychiatric inmates including Thole being denied showers and clean clothes during clothing exchange. Santa Barbara Jail Policy that they will not hand out soap. Inmates can only order it off commisary which leaves alot of psychiatric inmates without even soap to clean.

28 On April 9th 2012 at 3:35 am (See exhibit 5: Reer Rpt 04-08-12 but thats incorrect) C.O. Reer was handing out breakfast and noticed water was coming

out of cell #23, Tholes cell. The water was running all over the tier and running into all 4 cells with feces all through it. Beer turned off the water and gave him a disciplinary write up for flooding (See Ex 5)

29. Throughout the early morning hrs of 4/09/2012 all inmates were being deprived inhumane conditions of confinement.

30. This was not a one time incident but would occure several times a week for months on end.

31. From the day Beer shut off Larry Tholes water April 9th until friday the 13th several officers witnessed the inhumane conditions of confinement. They were forced to step over the piles of feces. I personally asked C.O. Ortega to clean it up but he refused.

32. There were 2 unknown pill call nurses who would do their pill call rounds 3 times a day witnessing the inhuman conditions of Confinement and were sickened by the situation but did nothing to address the obvious health concerns.

33. A maintenance worker would constantly have to walk through the Area stepping over feces due to the fact there is a maintanance closet in the halway of NWI 21-24 where his tools are kept.

34 On April 14, 2013 C.O. Alexander and C.O Marking walked through the ISO 21-24 section at approx. 7:18 am and witnissed the inhumane conditions of confinement. They took Thole out of his cell who was still covered in his own human feces. They then placed him in a shower while I supplied soap for him to clean. (When he was taken out feces covered shower + was not cleaned)

35 On April 16, 2012 a hearing was held in Dept 1 of the Santa Barbara County Courthouse at which time I filed a detailed motion discribing my conditions of Confinement and a verbal request for an immediate remedy.

36. At the hearing the judge Ochoa ordered an examination by a Neuroligist (See Exhibit 3) The neuroligist found I was suffering "Postconcussion syndrome" causing severe headaches and "hypersensitized to smells such as feces." I was suffering from the load banging and lack of sleep caused in part from the psychiatric inmates conduct.

37. On April 16, 2012 I also filed a grievence explaining the effect the conditions of my confinement were having on my pro per status and that I believed it was being done intentionally. I also requested a cell move. Denied.

38. On April 20, 2012 petitioners cell was finally powersprayed and the feces removed. Sgt Espinoza personally varified the feces was removed.
39. On April 23, 2012 another hearing was held in dept 1 concerning the conditions of my confinement. County Counsel discussed photographs taken of my cell on April 18, 2012 by Sgt Cobb and Sgt Lammer
40. County Councel Kelly Scott Cobb and Lammer claimed the Feces looked like "Rust." (Bates Stamp 002843; See Exhibit 2 #7-#8)
41. As to Claims in paragraph #39 plaintiff relys on the facts set out in his complaint pursuant to §910 (Exhibit 2)
42. On 4/18/2012 I complained to C.O. Lane about my living conditions he told me there was nothing he could do.
43. On 4/19/2012 C.O. Reer shut off Larry Tholes water. Thole was not flooding at the time. When Thole realized his water was off he went into another temper tantrum of Banging and yelling.
44. At some point after the 4/23/2012 hearing Thole was moved from cell 23 to unknown location. Days later he was moved to cell 22 right next to mine. Our Tables and Vents were connected. I was scheduled to start trial that Mon. the 30th. Thole begin to bang on the table and scream in my vent for hrs on end.
45. On 4/27/2012 I filed a grievence log #03468 complaining about the banging screaming and yelling. I gave the grievence to Alvarez which was signed off by Lt Lammer. I explained that I believed it was done purposely to disrupt my pro per status and a form of retaliation.
46. As to claims in #44 → #45 I believe was a form of retaliation for a civil complaint I filed against several staff members at the SBCJ. and a few Santa Maria Police Officers (Police Agency in Santa Barbara County) in which Summary Judgement was granted (See Exhibit 4)
47. On 4/28/2012 I filed another grievence after a night of constant banging and screaming with absolutely no sleep while trying to prepare for trial Lt Lammer reviewed the grievence.
48. While I was housed in ISO. #21 for a period of approximately 4-6 month there was a psychiatric inmate of Afro American decent that was housed in cell 24 (Buttler or Hunter) The smell of his feces would stink up the section

When the inmate was finally removed an unknown officer brought a green shirts to clean the cell. Both begin vomiting. The officer kept ordering them to go back in. They were told to wrap garbage bags around their hands and to dig the "mound" of feces out of the toilet with their hands. The greenshirts started explaining that the inmate took smashed fruit and lined the rim of the toilet with it. (This gave the whole section the smell of rotting fruit mixed with the smell of feces) The Greenshirts cleaned the feces off the door and wall with a mop. The smell coming from this inmates cell while he was housed there was extremely nausiating and caused me headackes and sleeplessness. The feeling of helplessness being housed in this section of the jail surrounded by psychiatric patients was exhausting and psychiatricly damaging.

49. For a time psychiatric inmate "Crackers" Uribe was placed in cell #24. he would bang for hrs at a time and at one point was removed by Stun Gun after he broke the glass window in his cell door and phone.

50. As to claims in paragraph #35 and the "motion describing my conditions of confinement": ① White Larry Thole had no water he claimed he was drinking his own urine ② I was "fishing" bags of water to him ③ He had no weight to put on the end of the fishing line so he tied his glasses on to get his line to my cell ④ Reer came out of the tower and smashed Tholes glasses and kicked them in a pile of feces.

51. As to Claims in paragraph #46 my Inhumane Conditions of Confinement were a form of retaliation for my 42 USC §1983 civil Complaint that I named Chief of Police Danny Macagni as a defendant (See Exhibit 4)

52. Plaintiff is informed and believes and therein alleges that the defendants and their employees have taken virtually no action to fix the inhumane conditions of confinement at the SBCJ. these failures have harmed plaintiff physically and mentally and will continue to harm plaintiff upon his return to Santa Barbara County Jail.

53. Plaintiff has initiated and/or filed numerous grievences arising from the foregoing all of which have been denied and/or ignored by the defendants and their employees,

54. Plaintiff verbally complained about his cell conditions several times to Sgt Espinoza Callahan and Apple.

55. From March of 2010 to August of 2012 he was continually placed next to psychiatric patients/inmates who threw feces, banged on doors and tables for hrs and days on end, flooded toilets, backed up sewer lines all resulting in loss of sleep for days on end, headacks, nausea and fatigue. The mental strain at times was torture. (See Exhibit 3)

56. Plaintiff continually complained to officers verbally. He filed grievences. (See Exhibit 1 "sewage coming up from my drain with worms in it..."; "Neighbor had admitted to clogging toilet with sewage all over for days and surrounded by psychiatric patients that bang yell & flood at all hrs... is evidence of this administration intentionally trying to disrupt my sleep... One of us should go; County Counsel Kelly Scott assured Judge Ochoa I would not be placed next to psychiatric inmates that yell or scream or bang"; I cannot do my pro per legal work living next to patients that bangs on his desk... I cannot live next to feces less than 5 feet from my door I feel and hear every bang as it is in my cell. Move me...")

57. Defendants Callahan, Espinoza Lammer and Apple personally witnissed the Inhuman Condition of Confinement in the North West ISO cells 21-24 and chose to ignore the problem with deliberate indiffence to the safety and well-being of Plaintiff. They failed to take corrective actions when warranted.

58 Defendants Callahan Espinoza Lammer and Apple were well aware of Plaintiffs inhumane conditions of confinement within his cell during the months of March and April of 2012 and did not make an immediate good-faith effort to fix the conditions and with deliberate indifference ignored the problem.

59. Defendant Santa Barbara County is responsible to provide training and supervision for all Santa Barbara County Jail employees regarding humane conditions of confinement within the jail to ensure that all policies and customs are not only lawfull but hold a certain amount of Moral Integrity.

60. Defendants lacked penological and/or security justification to treat plaintiff in the manner as described above.

61. Defendants actions and/or Omissions were commited under the color of Authority and were pursuant to policies customs and practices.

# Causes of Action

## Plaintiff Was Subjected To Cruel And Unusual Punishment In Violation Of The Eighth Amendment To The Constitution.

62. Plaintiff incorporates paragraphs 1 through 61 as though they were stated fully herein

63. Defendant Santa Barbara County Violated Plaintiffs Eighth Amendment Right to be free from cruel and unusual punnishment by failing to properly provide training and supervision of their employees at the Santa Barbara County Jail thereby subjecting plaintiff to approximately 38 days in a feces covered cell.

64. Defendant Santa Barbara County Violated Plaintiffs Eighth Amendment Right to be free from Cruel and Unusual punnishment by failing to properly provide training and supervision of their employees subjecting plaintiff to continual placement next to psychiatric patients within an Isolation Unit who ~~continually~~ constantly banged threw feces and urine.

65. Defendants Sgt Callahan Sgt Espinoza and Lt Lammer violated plaintiffs Eighth Amendment to be free from Cruel & Unusual punnishment by failing to respond ~~reasonably~~ reasonably to the systematic health and safety problem of housing disruptive psychiatric inmates with other inmates thereby subjecting plaintiff to continual placement next to the psychiatric inmates within an ISO. Unit who constantly banged, threw feces and Urine.

66. Defendants Sgt Callahan Sgt Espinoza Lt Lammer and C.D. Apple violated plaintiffs Eighth Amendment right to be free from cruel and unusual punnishment by keeping him in a cell covered in human feces for approximately 38 days

67. As a direct and proximate result of the above described actions and omissions of the defendants plaintiff has suffered general damages in excess of $75,000.

# Prayer For Relief

Wherefore Plaintiff Prays For Relief As Follows:

A. Declare that the acts and omissions described herein violated Plaintiffs rights under the Constitution and laws of the United States,

B. That this court order Defendants to pay general punitive and nominal damages to plaintiff,

C. That this court order Defendants to pay reasonable attorney fees and costs; and

D. Grant other just and equitable relief that this Honorable Court deems necessary

Respectfully Submitted,

Date: 2/14/2014

Kenneth R Barber
Kenneth R Barber

## Verification

I Kenneth R Barber declare as follows:

- I have read and prepared this 42 USC § 1983 civil Complaint and the claims listed are true of my Knowledge and belief
- I declare under penalty of perjury the foregoing is true & Correct. Executed on 2/17/2014 at Calipatria, Cal.

Kenneth R Barber
Kenneth R Barber Jr

# EXHIBIT "1"

**SHERIFF'S DEPARTMENT**
**Santa Barbara County**

Staff use only
CID# 382037
LOG# 03339

Date: 3/17/2012

**INMATE GRIEVANCE**

Name: Barber, Kenneth Booking # 930020 Housing Assignment NWE 8

Check One: (x)Grievance ( )Appeal

I just moved into this cell. There is NO ventilation. It appears as the Belt is once again broken. I was in this cell before and am familiar with this Vent. It is deffinately Not working.

The Sucker vent is Also Clogged with Shit, Internally! First please get some Ventilation then have Someone PowerSpray this cell.

This is a serious health issue. Thank You.

Date Rec'd 3/17/12 Time: 2200 Rec'd by Alvarez Shift Commander Initials [illegible]
Routed to: 2/ DAY SHIFT

*******************************************************************************************

GRIEVANCE REPLY

**03/25/12**

**Mr. Barber,**

**Work order #23776 has been submitted for the ventilations in your cell. Please continue to uncover the vents when you receive the cleaning supplies. This will help in clearing the ventilation.**

**Sgt Miranda**

By: [signature] Date: 3/29/12 Facilities Commander/Designee T. Lommel 2761

Distribution: White - Admin/Medical
Yellow - Reply to Inmate
Pink - Kept by Inmate

SH - 585 (Revise 9/95) (Admin)

**SHERIFF'S DEPARTMENT**

**Santa Barbara County**

Staff use only
CID# 282037
LOG# ______

Date: 3292012

## INMATE GRIEVANCE

Name: Barber Kenneth Booking # 930626 Housing Assignment NW I 21.

Check One: (X)Grievance ( )Appeal

Ive Been in this cell since the 13th its now the 29th. There is still shit, literally, above my head packed in the Vent. Now I have ~~www~~ sewage coming up from my drain with worms all through it. Ive been Told that "A Work order has been put in." And By tomorrow, maybee, the Toilet will be fixed so I can flush.

This is a health issue and an emergency. You cannot force inmates to live in shit and sewage. All it takes is a worker to come up and snake the Drain. Its been weeks and a grievence, still my vent is not free of shit

Date Rec'd 3 29 12 Time: 1130 Rec'd by [signature] 3154 Shift Commander Initials ______.
Routed to: ______.

******************************************************************************

GRIEVANCE REPLY

By: ______ Date: / / Facilities Commander/Designee ______.

Distribution: White - Admin/Medical
Yellow - Reply to Inmate
Pink - Kept by Inmate

SH - 585 (Revise 9/95) (Admin)

**SHERIFF'S DEPARTMENT**
**Santa Barbara County**

Staff use only
CID# 283037
LOG# 03356

Date: 4/4/2012

## INMATE GRIEVANCE

Name: Barber, Kenneth Booking # 930626 Housing Assignment NWF 21.

Check One: (X)Grievance ( )Appeal

I recieved an answer to grievance #03339 and was told a work order #23776 has been submitted and continue to clean the Vent With Cleaning supplies.

For #1: there is Still Shit in my Vent going to the roof. I Cannot reach it it is above my head

For #2: It's not my Job to clean no other inmates shit, Its your

For #3: I've had the Air conditioning guy come and say "That's for Maintenance" then maintenance came & said "its for the Air Conditioning guy."

You Cannot make inmates live in Shit. There is also globs of Shit on other Spots above me. Lt Lammer will be Testifying about this in Court, Dept 1, Inhumane Conditions

Date Rec'd 4/3/12 Time: 1630 Rec'd by [signature] 2364 Shift Commander Initials [initials] 2633.
Routed to: "C" SQUAD.

************************************************************************************

### GRIEVANCE REPLY

Mr. Barber,

On April 3rd I received your grievance regarding the cleanliness of your cell. On the morning of April 4th CD Apple and CD Kliegl brought inmate workers and cleaning supplies to your cell and offered to have your cell/vents cleaned out. You refused to come out of your cell and allow it to be cleaned. The officers tried to resolve your complaint about your cell/vents but you were unwilling to cooperate.

Sgt. Maynard

By: Sgt M 2633 Date: 4/4/12 Facilities Commander/Designee LT. LAMMER 2761

Distribution: White - Admin/Medical
Yellow - Reply to Inmate
Pink - Kept by Inmate

SH - 585 (Revise 9/95) (Admin)

**SHERIFF'S DEPARTMENT**
**Santa Barbara County**

Staff use only
CID# 292037
LOG# 03419

Date: 4/16/2012

# INMATE GRIEVANCE

Name: Barber, Kenneth Booking # 930626 Housing Assignment NAIF 21.

Check One: (X)Grievance ( )Appeal

Lt Callahan Came to my cell a few weeks back and saw what I'm dealing with, Human Feces in my cell Packed in the vent. At that point my neighbor had admitted to purposely Clogging the toilet with sewage all over for days, and surrounded by psychiatric patients that bang, yell & Flood at all hrs. He understood my situation and said "I will talk to class to try to get you out of here." I've talked to several officers about shit in my cell. I recieved a response from Sgt Maynard who said I refused to come out of my cell which is false, when Kleat and Apple Came to clean my cell on April 4. Both Kleat & Apple agreed that My Vent could not be Cleaned with a Mop and without a ladder which they did not have. Sgt Maynard Sending them to my cell at 330-400am is evidence of this administration intentionally Trying to disrupt my sleep and Pro per Status. The Conditions I'm in are designed to prevent sleep and at Times are instigated. I talked to Mr Thole and explained how his mental & personal issues are interfering with my pro per status. He seemed receptive and agreed. One of us should go to New East I.S.O. Either one.

Date Rec'd 4/16/12 Time: 2050 Rec'd by 3C027 Shift Commander Initials [illegible] 7633.
Routed to: SGT. CALLAHAN.

*******************************************************************************************

## GRIEVANCE REPLY

MR. BARBER -

IT IS MY UNDERSTANDING THAT YOUR CELL VENT WAS CLEANED TODAY BY THE DAYSHIFT CUSTODY DEPUTIES. ANY HOUSING ISSUES YOU ARE HAVING NEED TO BE ADDRESSED WITH THE CLASSIFICATION UNIT.

MR. BARBER -

I HAVE SPOKEN WITH CLASSIFICATION AND THOLE WILL BE MOVED INTO ANOTHER ISOLATION AREA

LT. LAMMER #2761

By: SGT. CALLAHAN # 3246 Date: 4/20/12 Facilities Commander/Designee LT LAMMER #2761

Distribution: White - Admin/Medical
Yellow - Reply to Inmate
Pink - Kept by Inmate

SH - 585 (Revise 9/95) (Admin)

**SHERIFF'S DEPARTMENT**

**Santa Barbara County**

Staff use only
CID# 242057
LOG# 03468

Date: 9/27/2012

**INMATE GRIEVANCE**

Name: Barber, Kenneth Booking # 9306026 Housing Assignment NIF21

Check One: (X)Grievance ( )Appeal

Last week a hearing was held and County Counsel Kelly Scott Assured Judge Ahmad that I would not be placed next to psychiatric patients, that bang yell or scream. They specifically moved Larry Thaley Away from me. Today they moved him right next door. Our tables are connected.

I am pro per and start Trial on Mon. I need to be moved to somewhere not next to a psychatric patient that screams, yells and Bangs.

This is being done purposely to disrupt my pro per status and a form of retaliation.

Date Rec'd 9/27/12 Time 2334 Rec'd by Alvarez 4065 Shift Commander Initials KNC 3246
Routed to: CLASSIFICATION

**********************************************************************

GRIEVANCE REPLY

MR. BARBER

THIS ISSUE HAS BEEN ADDRESSED.

By: SGT. OSBORNE 2632 Date: 10/09/12 Facilities Commander/Designee T. VAMME 2776

Distribution: White - Admin/Medical
Yellow - Reply to Inmate
Pink - Kept by Inmate

SH - 585 (Revise 9/95) (Admin)

**SHERIFF'S DEPARTMENT**
Santa Barbara County

Staff use only
CID# 222037
LOG# 03462

Date: 4/28/2011

# INMATE GRIEVANCE

Name: Barber, Kenneth  Booking # 9300210  Housing Assignment NWI 21

Check One: (X)Grievance ( )Appeal

I cannot Do my pro per legal work living next to a psychiatric patient that bangs on his desk that is connected to mine. I cannot live with banging on the cell door on and off all day and knight everyday. I cannot live next to feces less then 5 feet from my door at times. I am not being celled as disciplinary right now but am being treated as such. this Administration cannot or chooses not to attempt to control Larry Thole and are well aware of his Antics. So this has to be a retalition form for the Criminal Charges and the lawsuit I have filed. County Counsel Kelly Scott assured the Judge I would not be housed near Larry Thole, or any Banging Screaming Feces Smoking inmates. Then you moved him even closer next door and his Table Connected to mine through the wall. I feel and hear every Bang as if its in my cell now. Move me or him please.

Date Rec'd 4/28/12 Time: 1318 Rec'd by BOUETTE 4448 Shift Commander Initials [illegible]
Routed to: SGT OSBORNE

*********************************************************************************************

## GRIEVANCE REPLY

MR. BARBER.

THIS ISSUE HAS BEEN ADDRESSED.

By: SGT. OSBORNE 2632  Date: 05/4/12  Facilities Commander/Designee LT. [illegible] 2740

Distribution: White - Admin/Medical
Yellow - Reply to Inmate
Pink - Kept by Inmate

SH - 585 (Revise 9/95) (Admin)

# EXHIBIT "2"

Ray Aromatorio
*Risk Manager*

Julieann Robles
*Senior Risk Analyst*

# COUNTY OF SANTA BARBARA

## RISK MANAGEMENT DIVISION
### GENERAL SERVICES DEPARTMENT

Deborah Wells
*Disability Manager*

Johnny Hernandez
*Safety Officer*

*November 06, 2012*

*Kenneth Richard. Barber*
*P43791-A5-237, Upper, CSP*
*PO Box 5004*
*Calipatria CA 92233*

*RE:* *Claimant:* *Kenneth Richard Barber*
*Date of Occurrence:* *03/13/2012*
*Date Claim Filed:* *08/24/2012*
*Date of Denial:* *November 06, 2012*

*Dear Mr. Barber:*

*The above referenced claim which you have submitted to the Clerk of the Board of Supervisors has been reviewed at the Board's direction, and in accordance with the provisions of Government Code Section 913 and 31000.8, notice is hereby given that said claim has been denied.*

***WARNING: Subject to certain exceptions, you have only six (6) months from the date this notice was deposited in the mail to file a court action on state claims. (See Government Code Section 945.6)***

***The six (6) month time limit referred to in this notice applies only to State Claims or causes of action which are governed by the California Tort Claims Act. This notice does not apply to statutes of limitations for Federal claims or causes of action.***

*You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.*

*Sincerely,*

M Rauch

*Marianne Rauch*
*Risk Analyst*

*DECLARATION OF SERVICE BY MAIL*

*I DECLARE THAT:*

*I am over the age of eighteen (18) years, employed by the County of Santa Barbara, and not a party to the above entitled cause; that on November 06, 2012, in the City of Santa Barbara, County of Santa Barbara, State of California, I deposited in the mail, United States Postal Service,* ***a Notice of Denial of Claim****, enclosed in separate, sealed envelope, with postage fully prepaid thereon, addressed as follows:*

*Kenneth Richard. Barber*
*P43791-A5-237, Upper, CSP*
*PO Box 5004*
*Calipatria CA 92233*

*I declare under penalty of perjury that the foregoing is true and correct.*

*Executed on November 06, 2012 at Santa Barbara, California.*

*Signature*

*105 East Anapamu Street*
*Santa Barbara CA 93101*

Before the Governing Board of the Santa Barbara County Sheriff's Department

In the matter of the Claim of
Kenneth Richard Barber Jr.
Against the Santa Barbara Co.
Sheriff's Department

Pursuant to Gov Code § 910, claimant Kenneth Richard Barber presents the following claim against the Santa Barbara County Sheriff's Department.

1. Claimant's address is 4436 Calle Real, S.B., Cal. 93110 and all notices regarding this claim should be sent here.

2. On or about March 13, 2012 I sustained an accidental head injury at the Santa Barbara County Jails I.R.C. 100 Unit. C.O. Ortego searched the cell and threw away a photo and several documents concerning a 42 U.S.C. § 1983 civil complaint against several of his fellow officers that was filed in the United States District Court Case # CV-1102365-DMG(MLG). This caused me to miss a deadline and forced me to drop the suit.

3. I was then rehoused to North West ISO 21. The cell was covered in human feces and the unreachable vent was clogged full of feces. (See Bates Stamp 002847 and 002848)

4. I talked to several officers concerning the condition of my cell: Feces, no ventilation and/or heat, horrible smell of feces.

5. Nothing was getting done so I started the grievence process on 3/17/2012 and continued untill the vent and cell was power-washed by Officer Espinoza (See grievences log # 03339, 03386, 03419, 03468, 03462 etc) on April 20, 2012.

6. An Evidentiary hearing was held in Dept 1 of the Santa Barbara Superior Court and an examination by Neurologist Dr. Philip Delio ordered.

7. On April 18, 2012 within minutes of Sgt Cobb and Cpl Lammer arriving to photograph the area an officer and green shirts cleaned and mopped all the feces outside the cell.

8. My Lawyer Joseph Allen pulled me out of my cell for an Attorney Visit to discuss my living conditions and while I was at the visit officers Cobb and Lammer took Photos of my cell. (Except the spots where feces was all over the ceiling) They did however take photos of the feces smashed into the vent, though in their report they claimed it was rust. (Bates Stamp 002843) Sgt Espinoza Cleared the vent of all the feces.

9. The officials at the Santa Barbara County Jail Knew I was representing myself ProPer and was preparing for an upcoming trial in which almost 30 of their officers were listed as witnesses. They were well aware of the conditions of my confinement (ie. feces in my cell that was unreachable, feces all over the tier, I was in a 4 cell section with psychiatric patients that regularly screamed, banged and threw feces resulting in loss of sleep for days)

10. County Counsel assured the judge that the psychiatric patient Larry Thole would be rehoused, which he was only to be moved even closer a couple days later. Right next door with our tables connected. Every bang on his table was a bang on mine.

11. The jail officials failed to respond reasonably in a reasonable amount of time. They simply ignored the problems untill I brought it to the attention of the S.B. Superior Court.

12. The Santa Barbara County Jail officials acted with deliberate indifference to the deprivation of my basic human needs and the substantial risk of serious harm.

13. I was deprived the "basic human need" of Sanitation and hygiene by being housed in a cell covered in feces in a section with feces all over the teir in front of my door.

14. I was deprived the "basic human need" of clean air due to the fact that the vent was clogged with feces preventing adequate air flow. I had to sleep and eat for over a month in these inhumane conditions.

15. The condition of my confinement was designed to prevent sleep which is undoubtedly one of lifes basic needs, and at times deliberately made worse with the instigation of the psychiatric inmates. It was also common knowledge I had sued the Santa Maria Police Dept and won and known I was fighting the Lawsuite against the Santa Barbara County Jail.

16. The Supervising officers failed to properly train & supervise. These inhumane conditions should have been addressed immediately. The cell should have been cleaned of all feces prior to me being placed in the cell.

17. Multiple witnesses will be called including but not limited to: 2 pill call nurses, several floor officers, 4 trustees, several inmates and maintenance; Investigator Lynn McLaren and David Birley; Officers Alexander, Marking and Alexander Fuller.

18. Claimant relies on all facts presented in the 4/16/2012 "Request for Evidentiary hearing" whether oral or written. Claiment has in his possession pieces of the broken glasses and suicide note written by Larry Thole: both covered in his feces.

19. As of the date of this claim, claimant has incurred the following injuries: "Postconcussion syndrome" with "persistent headaches and sensitivity to noise & oder." Disruptive sleep patterns causing headaches to get worse when he is overly tired & fatigued." (See Notice of Motion for Continuence Served on April 26, 2012. Dr Delio's report) Claimant futher suffered mental and emotional anguish.

20. The name of the public employees causing claimants injuries are as follows: Sheriff Bill Brown; Lt Lammer; Sgt Osborne; Sgt Callahan; Sgt Espinoza; Sgt Maynard; Sgt Sheffield; C.O. Kliegl; C.O. Ortega; a few unknown officials.

21. This is a non-limited civil claim exceeding \$10,000.00 Jurisdiction over this claim rests in the superior court and/or the United States District Court.

22. 08/18/2012

Kenneth R Barber Jr
Kenneth R Barber Jr

23. If I am Transfered my CDC# is P43791 B.D. 7/22/69; Attorney: Joseph Allen (805)892-2480, (805)689-1280

# Proof of Service

I Kenneth R Barber Jr declare that:

- I am over 18 years of age
- I am currently incarserated at the Santa Barbara county Jail at 4436 Calle Real, S.B. Cal 93110
- ON Aug 19, 2012 I served the enclosed "Claim against the Santa Barbara County Sheriffs Department" by placing it in a sealed envelope, postage fully paid and giving it to Officer Hunter to place in the US Postage Box here at the Jail.
- The envelope was addressed as follows:

To: The Clerk or Secretary of the Santa Barbara County Sheriffs Department
4436 Calle Real
S.B. Cal 93110

I declare under penalty of Perjury the foregoing is true and Correct. Executed on Aug 19, 2012 at S.B. Cal

Kenneth R Barber [signature]
Kenneth R Barber Sr

# EXHIBIT "3"

HEALTH CARE CENTERS

PUBLIC HEALTH DEPARTMENT
SANTA BARBARA COUNTY

**Santa Barbara Health Care Center**
345 Camino del Remedio Santa Barbara, CA 93110-1332
805-681-5488 Fax: 805-681-5404

April 19, 2012
Page 1
Chart Document

**KENNETH RICHARD BARBER**
Male DOB: 07/22/1969 54251-2843001

**04/19/2012 - Office Visit: neuro follow up visit**
**Provider: Philip Dello, MD**
**Location of Care: Santa Barbara Health Care Center**
**Status: ON HOLD DOCUMENT. Contents are preliminary**

**Visit Type:** Follow-up Visit
**Referring Provider:** prison health

**CC:** f/u neuropathy.

**History of Present Illness:**
Patient has been seen on several occasions for several neurologic complaints including

1. Peripheral neuropathgy related to Chaarcot Marie Tooth disease
2. Compressive neuropathy at the left elbow status post decompressive surgery
3. Recent traumatic head injury with postconcussive syndrome

Patient continues to complain of neuopathic pain in upper and lower extremities which is under better control with tramadol. He is no longer on tegretol or neurontin His left hand is having some paresthesias in the last two digits consistent with ulnar neuropathy

He does have persistent headaces and neck pain since his fall from his bunk bed and injury. Prior imaging studies of his C spine in 2/2010 showed DJD at C5-6, C6-7, . C3-4 osteophytes causing mild right greater than left neuroformainal stenosis, a broad disc bulge at C5-6 narrowing the neuroforamin at that level, and a C6-7 disc narrowing teh left formina.

He is having some trouble in his islated cell. He is next to an inmate(?) who is loud all night, this is disruptive to Kenneth's sleep patterns and he is finding the headaches get worse when he is overly tired and fatigued. He also finds he is hypersensitized to smells such as feces since the accident, and this has been bothersome to him

**Chief Complaint:** f/u neuropathy

## Physical Exam

**Neurologic:**
Has normal motor strength in all muscles tested of the upper extremities except perhaps some trace left intrinsic hand muscle weakness, and his weakness of the LE in distal feet includign gastroc and tibialis anterior. has atrophy of these muscle groups in legs.

Reflexes are globally reduced with trace upper extremity and absent lower extremity reflexes.

No clear sensory changes other than some increased sensitivity to cold in left hand but not in clear

HEALTH CARE CENTERS

PUBLIC HEALTH DEPARTMENT
SANTA BARBARA COUNTY

**Santa Barbara Health Care Center**
345 Camino del Remedio Santa Barbara, CA 93110-1332
805-681-5488 Fax: 805-681-5404

*April 19, 2012*
Page 2
Chart Document

**KENNETH RICHARD BARBER**
Male DOB: 07/22/1969 54251-2843001

radicular or peripheral pattern.

Coordination and gait grossly intact

Cranial nerves grossly intact

## Impression & Recommendations:

**Problem # 1:** POSTCONCUSSION SYNDROME (ICD-310 2)
**Assessment:** Unchanged
1. *Doing well but still with some persistent headaches and sensitivity to noise and odor*

REC:
1. Continue Tramadol for pain
2. Accomodations for better sleep if he can be moved away from his current cell location whcih has a disruptive and loud neighbor
3. Hypersensitivity to smell can likely not be remedied at this time
4. In regards ot these issues, I do not feel this or any of the following medical diagnoses preclude him from standing trial and particpating in routine court related activies and the legal process.

**Problem # 2:** MIGRAINE WITHOUT AURA (ICD-346 10)
**Assessment:** Unchanged
Headaces likely postconcussive in nature.

REC:
1. COntinue Tramadol for pain

**Problem # 3:** CHARCOT-MARIE-TOOTH DISEASE (ICD-356.1)
**Assessment:** Unchanged
Stable
REC: No new recommendations

**Problem # 4:** CERVICAL RADICULOPATHY (ICD-723.4)
**Assessment:** Unchanged
Has continued complaints of head and neck pain, likely due to preexisting cervical spine degenerative disease superimposed on recent traumatic injury resulting in cervical sprain type injury to the neck

REC: Time and continued pain control

**Patient Instructions:**
1) Please schedule a follow-up appointment in 3 months.

HEALTH CARE CENTERS
PUBLIC HEALTH DEPARTMENT
SANTA BARBARA COUNTY

**Santa Barbara Health Care Center**
345 Camino del Remedio Santa Barbara, CA 93110-1332
805-681-5488 Fax: 805-681-5404

*April 19, 2012*
Page 3
Chart Document

**KENNETH RICHARD BARBER**
Male DOB: 07/22/1969 54251-2843001

# EXHIBIT "4"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 08-6273-DMG (MLG) | Date | January 10, 2011 |
| Title | Kenneth Richard Barber v. Santa Maria Police Department, et al. | | |

| | |
|---|---|
| Present: The Honorable | Marc L. Goldman, Magistrate Judge |

| Terri Steele | n/a | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** (In Chambers) Order for Supplemental Briefing

On January 3, 2011, District Judge Dolly M. Gee entered an order granting Plaintiff's motion for summary judgment on his Fourth Amendment claim arising from the investigatory stop on May 19, 2007, and Defendants' motions for summary judgment on all other claims. The case was remanded to me for a supplemental determination on whether damages are warranted or whether that issue must be tried.

It is ORDERED that on or before February 25, 2011, Defendants Lopez and Arias shall file a supplemental motion and brief addressing the issue of compensatory, nominal, and punitive damages in the context of this case. The brief shall address the question of whether summary judgment on any aspect of damages is available or warranted. Should Defendants concede that the issue of damages is not subject to summary judgment and must be tried, they shall file a notice so stating and Plaintiff need not file a response.

If Defendants Lopez and Arias do file a motion for summary judgment as to any aspect of available damages, Plaintiff shall file a reply on or before April 1, 2011. The matter shall be deemed under submission as of that date.

:

Initials of Clerk ts

Santa Maria Chief of Police Danny R Macagni

Claim IV

The following civil rights have been violated:
Fourteenth Amendment-right to Due Process

Defendant Chief of Police Danny R Macagni violated my civil rights:

A few weeks before June 25,2007 I was pulled over by Santa Maria Police Officer J. Lopez and was subjected to a warrantless ~~fruitless search and siezure. This stop was in violation of~~ my Fourth Amendment right to be free from unreasonable search and seizure and my fourteenth Amendments right to due process

On June 25,2007 I was pulled over once again by Officer Lopez in violation of my Fourth and Fourteenth Amendments. because the search was without cause or warrant and was done unlawfully and led to my arrest on a PAL warrant and Misd. Charges. Officer Lopez then unlawfully coerced a confession out of me after I invoked my Miranda rights by threatening to charge my girlfriend Tamara Bonnes with what he "suspected" as stolen computer equipment and hold her over night so she would miss her child custody appointment (Exhibit D) This was in violation of my Fifth Amendment right to remain silent, my Sixth Amendment right to councel, my Fourth Amendment right to be free from unreasonable search and seizure, and my fourteenth Amendment right to Due Process.

I was then brought to the Santa Barbara County Substation where two more searches were conducted in which I am claiming excessive Force and Creul and Unusual punishment in violation of my Fourth, Eighth, and Fourteenth Amendments. These searches led to several felony drug charges.

After my arrest I wrote James Robertson of the A.C.L.U. (exhibit 'A') and informed him of S.M.P.D. Lopez's misconducts. He then sent my letter by E-Mail to the Mayor Laurence J. Lavagino (Exhibit B) which in turn sent it to Chief of Police Danny R Macagni.

Officer Macagni wrote me a letter (Exhibit C) Assuring me that Lopez's actions were under investigation by Norm Come' of Internal Affairs. He also assured me that he would review any and all statements and reports provided and would advise me of his findings via a letter. Officer Come' conducted a recorded complaint describing my alligations in great detail

and also assured me that my allegations would be taken seriously. I to date have heard nothing back from Danny Macagni concerning my complaint and have even wrote a letter to Norm Come' asking for the outcome with no avail. I've also filed a "Pitchess" motion and it was granted as so the court could look into Officer Lopez's personel file to see if any relevant complaints had been filed on him. My Complaint was not in there.

~~Santa Maria Chief of Police Danny R Macagni has re-~~fused to take my complaint seriously. He has failed to properly train and or instruct officer Lopez and other Santa Maria Police officers in the reasonable amount of force to be used in an arrest. Danny R Macagni is aware of at least two incidences in which suspects have had to have medical attention after arrest by his officers (Exhibit F). His neglect of allegations and his ineffective, inefficient investigations has caused more victoms of his officers unlawfull, unreasonable, and contrary to law arrests.

Chief of Police Danny R Macagni has violated my Fourteenth Amendments right to Due Process by his gross negligence in addressing my complaint.

I believe I am entitled to the following spicific relief:

1) Professional Sanctions against Officer Macagni
2) Termination of Lopez.
3) Punitive Damages of $500,000.00
4) Reasonable Attorney Fees.

Date Nov. 8, 2008

Kenneth R Barber
Kenneth R Barber

# Santa Maria Sun / Cover Story

The following articles were printed from Santa Maria Sun [santamariasun.com] - Volume 12, Issue 20
Share:

## Betraying the badge?

***Former Santa Maria police officers allege mishandling in reputed prescription drug thefts***

**BY JEREMY THOMAS**

In the predawn hours of April Fools' Day 2004, Santa Maria resident Alane Avila awoke in her bedroom with a start.

> **Larry Ralston, Lompoc Police Capt.**
> *'When we get a citizen's complaint, it gets investigated to some degree. It doesn't sound like this got investigated at all.'*

"I just heard this bang and a flash," Avila recalled. "I jumped up and my door came flying open, and there's all these guys with ski masks on and guns pointed saying, 'Get on the ground!"

It wasn't until Avila was rounded up with the other members of the shared household that she realized her perceived intruders were officers from the Santa Maria Police Department's SWAT team, who were searching the home for a suspected drug dealer.

Avila, now living in Madera County, was renting a room in the house at the time, and had no connection to the man the authorities were looking for. However, upon the officers' departure, she found her bedroom had been thoroughly ransacked.

"When I went back to my room, the mattresses, everything was pulled out of the closet, everything was just pulled out of the drawers, everything," Avila said. "Drawers turned upside down. It was a mess."

In the aftermath of the raid, Avila noticed something amiss. Recovering from a major knee surgery, Avila had filled her doctor's prescription for 80 hydrocodone—a synthetic opiate—the night before. After the officers left, only 15 pills remained in the bottle.

Avila knew someone had taken them. They were there when she went to bed just hours before, she said, and she was the only one who had access to her room.

"I just thought maybe the officers took them," Avila said. "Basically, I grew up all my life thinking it was the officer's word against yours, so I didn't know what to do. My hands were basically tied. I called my doctor and informed him that the prescriptions were lost."

**Piecing the pill puzzle**

Days after the raid, Avila placed a call to Santa Maria Police Sgt. Greg Carroll, then supervisor of the department's narcotics suppression team, to explain the situation.

"She said she was missing some pain medication," Carroll recalled. "I told her sometimes things happen during search warrants, things get tossed around. The pills may have been dropped on the floor. She said no, the pill bottle was in the exact same spot in her bedroom and dresser drawer."

Investigating further, Carroll visited Avila's home on Depot Street the following day.
She showed him her pill bottles and the receipt for her recent refill.

"I go out there and she had left everything the way it was," Carroll told the *Sun*. "She showed me where she had surgery, showed me the prescription, when it was filled, and what doctor. Everything she was telling me was on the up and up. She didn't fit the description of a drug addict or someone who was strung out on pain medication or anything."

Because the search warrant was served at multiple locations, the SWAT team had help from the department's detective bureau. Carroll talked to the team's lead officer.

Carroll's inquiry ultimately centered on an officer who will be referred to as "Joe Friday" for this article.

**CHIEF CONCERN:**

*A recent deposition made by Santa Maria Police chief Danny Macagni reveals he's unsure as to how a complaint was handled. The chief declined to speak to the Sun about the issue, citing a non-disclosure agreement—though Santa Maria city attorney Gil Trujillo said Macagni and others were instructed to send inquiries about the matter to Trujillo's office.*

FILE PHOTO BY STEVE E. MILLER

After speaking with Avila, Carroll explained the situation to his lieutenant, Larry Ralston, now a captain with the Lompoc Police Department. Ralston was supervisor of the SMPD's detective bureau when the alleged theft occurred.

"I was instructed by [Ralston] at the time to write up a citizen's complaint, to do basic follow up, which I did, just to see if there was any factual basis to the complaint, which there was," Carroll said. "So I wrote it up."

In an interview with the *Sun*, Ralston confirmed Carroll's version of the events, adding he had sent the complaint to Santa Maria police chief Danny Macagni after reviewing it.

"I had asked [Carroll] to prepare a memo about what happened and then I prepared a memo with his and forwarded it to the chief. I was told some time later that the chief handled it, and that was the end of it as far as my involvement," Ralston said. "I inquired several other times, but I was never given any more specific information."

"I don't remember [Macagni] telling me who, if anybody, investigated anything," Ralston continued. "I was given the impression that he handled it, and if I remember right, it was more along the lines of he handled it himself, that he talked to [Friday]."

According to Carroll and Chuck Rylant, a former Santa Maria police detective who served for 15 years, instead of sending the complaint to Internal Affairs for investigation, per usual procedure, Macagni showed the complaint to Friday and asked him if he'd stolen the drugs; Friday denied the accusation.

Carroll said Friday then stormed into his office, "ranting and raving," and claiming no involvement in the alleged theft. Carroll later heard it wasn't the first time Friday had been suspected.

According to Carroll, Ralston explained that another Santa Maria officer had reported suspecting Friday of stealing prescription drugs during a previous search warrant, served in 2003 at a residence in Nipomo. Police were led to the home looking for a suspect in a credit card theft case.

When asked to supply a copy of the police report describing the search warrant under the California Public Records Act, the city refused in a June 24 letter. Instead, city officials sent the *Sun* a copy of a booking record for the credit card theft suspect from Santa Barbara County Jail and a brief description of the raid.

According to Carroll, Ralston wrote up a memo detailing the complaint brought by the officer who suspected the theft. Though Ralston recalled hearing accusations against Friday, Ralston said he couldn't remember if he'd actually written up a formal complaint or not.

The officer who's alleged to have complained refused to comment for this story.

At the time of the suspected thefts, Ralston said Friday was dealing with an injury that required doctor-prescribed medication.

**BLOWING THE WHISTLE?**

*Former Santa Maria Police sergeant Greg Carroll, who recently settled his lawsuit against the city, believes Chief Danny Macagni failed to properly investigate suspected prescription drug thefts involving one of the agency's own officers.*

PHOTO BY STEVE E. MILLER

"It was a legitimate injury," Ralston said. "There was nothing illegitimate about it at all."

Ralston added that as far as he knew, there was never any disciplinary action taken against the officer, but that doesn't mean it didn't happen.

"I think it's remote, but there's a chance [Friday] could've been disciplined and we would have never known about it," Ralston said. "There's a chance."

According to Rylant, who also worked in the officer bureau, it was believed around the station that the accused officer had an addiction to medications, which caused no small amount of concern.

"Everybody knew this was going on, and no one dealt with it," Rylant said. "It wasn't a surprise, but it was kind of a surprise to see it at this level. It blew me away."

Carroll feels that the chief didn't do enough to get help for someone who needed it.

Months passed, and Carroll claims whenever he inquired about the status of the complaints, he was told Macagni was taking care of it.

"I heard nothing back from it," Carroll said. "I had actually made a suggestion to [Ralston] at the time that we should set up a sting and have this officer come in on a search warrant and plant some prescription meds in the room, and let him search it and see if they come up missing, that would definitely tell if he was involved or not. [Ralston] took it to the chief, because he thought it was a good idea, too, and the chief said, 'No, I'll handle it.'"

Carroll, who began working in Santa Maria in 1990 and won the department's Supervisor of the Year award in 2001 and 2004, said he'd never seen anything like it before in his entire career.

"Internal Affairs should have been brought in," he said. "I think the best way would have been to do a sting, because we do search warrants all the time, and it would be easy to set up a room and put some prescription drugs in there, let him search it without his knowledge and have IA [follow] it all the way through.

"People were shocked it was handled the way it was," he added.

**Coming to light**

On June 17 of this year, former SMPD detective Rylant filed a citizen's complaint with Santa Maria city attorney Gil Trujillo regarding the allegations against Friday. The complaint accuses Macagni of violating California Penal Code Sec. 832.5, a state law requiring police departments to conduct prompt investigations of suspected employee misconduct.

"This is the most serious allegation I've ever been privy to during my fifteen-year law enforcement career, however, it was brushed under the carpet as being insignificant," Rylant writes in the complaint. "If you study police corruption such as the famous Rampart scandal, it was City Council and City Management overlooking these serious seeds that led to even more serious corruption, such as drug sales and murder by police officers."

**Chuck Rylant, former Santa Maria police detective**

*'It wasn't a surprise, but it was a surprise to see it at this level. It blew me away.'*

In the highly publicized Rampart scandal, uncovered over the course of a decade in the early 2000s, more than 70 officers in the LAPD Rampart Division's anti-gang unit were implicated in crimes ranging from stealing and planting evidence, to dealing drugs and gang activity.

"This is where it begins, with small crimes," Rylant told the *Sun*. "When you overlook that kind of stuff, it keeps going and going."

Former SMPD sergeant Carroll, who recently retired from the force, claims he has nothing to gain by coming forward with the allegations. However, it should be noted that in 2008, Carroll sued the city of Santa Maria, police chief Macagni, and city manager Tim Ness in federal court, alleging he'd been passed over for promotion in retaliation for his efforts as president of the Santa Maria Police Officer's Association and subsequent public support of former police chief John Sterling, who retired after reaching a settlement with the city in 2003. Carroll won a $110,000 settlement in April.

According to Rylant and Carroll, complaints about Friday's suspected misconduct never reached the department's Internal Affairs lieutenant at the time, Chris Vaughan. Vaughan, currently employed by the SMPD, did not return the *Sun*'s requests for comment; however, the former officers' claims appear to have been substantiated during a sworn deposition given by Chief Macagni in Carroll's case on Nov. 29, 2010.

On page 90 of Macagni's deposition, Macagni is asked about the complaints regarding Friday by Carroll's attorney Michael McGill and a lawyer for the defense, Jeffery Stockley. The transcript of the deposition reads as follows:

Q: BY MR. MCGILL Who looked into it?

A: [MACAGNI] I don't recall, I don't remember.

Q: Okay. So the part of the paragraph here where it talks about it never going to IA, that's inaccurate?

A: I don't think it went to internal affairs per se. I know it was looked into, 'cause I remember there was some issues that came about, some medical issues that were revealed by another employee's wife.

MR. STOCKLEY: Again, we don't want to get into the detail of that.

THE WITNESS [Macagni]: Okay, there was some issues; it was looked into.

Q: BY MR. MCGILL: The part of the paragraph that talks about—Well, Carroll indicates that you, the chief, had asked the officer if he had taken medication, and the officer replied no.

Do you recall having that conversation with the officer?

A: No.

Q: So when you say it was looked into, you don't actually recall what steps they took to look into it?

A: No, I don't. I didn't look into it personally. It was assigned to somebody.

Who the complaints might have been assigned to, as Macagni claims, remains a mystery. When the *Sun* asked him to comment on the revelation, Macagni said, through his secretary, that he had signed a non-disclosure agreement as part of Carroll's settlement and couldn't speak about anything in his deposition.

**Catherine Lombardo, defense attorney and law expert**

*'For a chief to say, 'I don't know, I think it was investigated,' or 'No, we never really investigated it,' I'd say he's responsible for that.'*

However, the *Sun* obtained a copy of the settlement, which contains no mention of a non-disclosure agreement by any of the parties involved.

Santa Maria city attorney Trujillo told the *Sun* that, as a result of Rylant's citizen's complaint against Macagni, Trujillo has instructed Macagni and all other city employees to refer questions about the alleged drug thefts and investigation to Trujillo's office, a standard practice in ongoing investigations. Trujillo wouldn't comment on any details of the case.

"It involves allegations against the chief, so it's a personnel matter," Trujillo said. "Pursuant to our statutory obligation, we investigate all citizen complaints, and we are doing that in this case."

According to Trujillo, the city has retained a third party independent investigator, a retired Orange County Sheriff's lieutenant named Art Romo, to examine Rylant's allegations against Macagni and determine whether the complaints against Friday were ever seriously investigated. Romo has until June 17, 2012, to complete his inquiry.

"It's necessary to preserve the integrity of the investigation that the investigator be able to look into all facts without any interference," Trujillo said. "That's just standard operating procedure."

**The thin blue line**

Like most police departments, the SMPD employs an Internal Affairs (IA) officer to review citizen complaints, and if they're found to have merit, forwards them to independent third parties for investigation. If the complaint involves someone above the IA officer's rank, it's immediately referred to an independent investigator. The purpose of the process is to protect citizens, individual officers, and the integrity of department.

Former SMPD lieutenant Ralston said, to his knowledge, the complaints raised against Friday didn't follow the department's normal procedures.

"We put it into a memo to go up the chain to be assigned to the Internal Affairs investigator. Normally it would have been handled in that manner," Ralston said. "When we get a citizen's complaint, it gets investigated to some degree. It doesn't sound like this got investigated at all."

By law, whenever a citizen complaint is issued, the Internal Affairs unit or similar internal policing body of the police department must conduct a formal investigation.

The *Sun* contacted Catherine Lombardo, a Los Angeles-based attorney and legal expert with a background in Internal Affairs investigations, to weigh in on the case. Lombardo said she was "shocked" the suspected thefts appear to have never been subject to an independent probe.

"Absolutely it should have gone to Internal Affairs," Lombardo said. "It's not just a rubber stamp process; it should be thoroughly investigated.

"If this case isn't investigated, then the system is broken," she continued. "Whether it's frivolous or whether it has merit, every citizen complaint must be investigated."

Serious inquiries into all citizen complaints are essential, she said, because the complaints are added to each officer's personnel file, and can call into question the officer's integrity as a witness. Lombardo said in this case, there could also be rights violations that have yet to be brought to light.

"If he took this lady's prescription pills, that's a civil rights violation and it's a crime," Lombardo said. "If this officer in fact committed a crime and a civil rights violation against a citizen while wearing a badge, and if it went un-investigated and the cop is still working, it's pretty clear he violated their mission statement."

In a smaller police department such as Santa Maria's, Lombardo said, the buck stops on the chief's desk.

"It's not unreasonable to expect that the chief of police would have knowledge of and perhaps some responsibility for an investigation like this," Lombardo said. "For a chief to say, 'I don't know, I think it was investigated,' or 'No, we never really investigated it,' I'd say he's responsible for that."

Former SMPD officers Carroll and Rylant said they believe the Friday case was never subject to serious inquiry because the accused officer was a supporter and friend of Macagni's. Not formally investigating the suspected thefts, they say, sets a dangerous precedent, hurts morale throughout the department, and could lead to more serious corruption, if it hasn't already.

"We're getting permission to break into somebody's house to go steal their property. That is beyond everything," Rylant told the *Sun*. "With these rare exceptions, a judge gives you permission to violate the Constitution and go into somebody's house, but when the government oversteps the bounds, there are supposed to be checks and balances."

According to law expert Lombardo, it's common for cops to be protected by their supervisors. Incidents where officers are caught and convicted of stealing in a court of law are "very rare." Equally rare are terminations as a result of citizen complaints.

In cases where investigators determine complaints to be "founded," officers are usually offered counseling, or retraining first. Suspensions without pay may also be levied.

Like Rylant, Lombardo drew comparisons in the Friday case to the Rampart scandal, and said corruption, like a virus, tends to spread when alleged misdeeds are ignored.

"If there's dirt inside a police department, a dirty cop, a dirty higher up, they bury things," Lombardo said. "Was this buried? Maybe. Will the officer eventually be punished if the facts come out and it's true? Absolutely."

Lombardo added what could've been resolved at the outset on an individual basis now presents "a huge problem" for the SMPD.

"The entire department is going to be subject to ridicule, scrutiny, and questioning," she said. "Now, all the focus is going to be on the department." m

*Staff Writer Jeremy Thomas can be contacted at* jthomas@santamariasun.com.

Share:

# EXHIBIT "5"

NWI-21

**Custody Operations**
**Inmate Discipline Report / Medical Documentation**

IDR ☐ Date of incident/time 0920 3/13/12
Medical ☐ Date reported/time 0920 3/13/12
Inmate BARBER, KENNETH
BKG 0930626 CID 0282037
Current Housing IRC-114
Location of Offense IRC-114
Offense(s)
☒ #1 FAILURE TO FOLLOW INST
☒ #13 MINOR CONTRABAND
☒ #20 MISC
☐

You have the right to appear before the Inmate Discipline Review Board. Refusal to sign this IDR will be considered a waiver of your right to appear.

☒ I wish to appear ☐ I do not wish to appear
Inmate Signature [illegible]
Reported by ORTEGA 4419
Supervisor [illegible]
IDR Board Member and Body #
1 HERNANDEZ [illegible]
2 [illegible] 4528
Date and Time of IDRB 03/14/12 [illegible]

Action Taken in Loss Days:
4wks Commissary 4wk Visitation
____ Good Time ____ Stop Work Time
____ Disciplinary ISO ____ Disc. ISO w/Diet

Release date if applicable ____
Recommended by [illegible]
Visitation effective: From 3/16/12 to 4/13/12
*Commissary loss dates will be determined by Commissary Staff*
Reviewed by: [signature]
OPS Lt. ____ Date 3/15/12

**Dist: White – Class/Golden – Final Disposition/Canary – Inmate Copy**
**CO-1125**

---

**Custody Operations**
**Inmate Discipline Report / Medical Documentation**

IDR ☒ Date of incident/time 04-08-12/0835
Medical ☐ Date reported/time SAME
Inmate THOLE, LARRY, RONALD
BKG 0968131 CID 0167639
Current Housing NWI-23
Location of Offense NWI-23
Offense(s)
☒ #20 MISC FLOODING
☐ CELL + HALLWAY
☐
☐

You have the right to appear before the Inmate Discipline Review Board. Refusal to sign this IDR will be considered a waiver of your right to appear.

☐ I wish to appear ☒ I do not wish to appear
Inmate Signature REFUSED
Reported by A. RIDER / 2855
Supervisor II ANTUNEZ 2876
IDR Board Member and Body #
1 SMITH 2852 I/M REFUSED BOARD
2 3027 / 2838 REFUSED
Date and Time of IDRB 0300 4/11/12

Action Taken in Loss Days:
5wks Commissary 5wks Visitation
____ Good Time ____ Stop Work Time
____ Disciplinary ISO ____ Disc. ISO w/Diet

Release date if applicable ____
Recommended by II ANTUNEZ 2876
Visitation effective: From 8/1/12 to 9/5/12
*Commissary loss dates will be determined by Commissary Staff*
Reviewed by: [signature]
OPS Lt. ____ Date 4/12/12

**Dist: White – Class/Golden – Final Disposition/Canary – Inmate Copy**
**CO-1125**

---

**Custody Operations**
**Inmate Discipline Report / Medical Documentation**

IDR ☒ Date of incident/time 04-08-12/0500
Medical ☐ Date reported/time SAME
Inmate THOLE, LARRY RONALD
BKG 0968131 CID 0167639
Current Housing NWI-23
Location of Offense NWI-23
Offense(s)
☒ #19 DAMAGING COUNTY PROPERTY
☐ TORE UP MATTRESS
☒ #12 WRISTBAND VIOLATION
☐ NOT WEARING WRISTBAND

You have the right to appear before the Inmate Discipline Review Board. Refusal to sign this IDR will be considered a waiver of your right to appear.

☐ I wish to appear ☒ I do not wish to appear
Inmate Signature REFUSED
Reported by A. RIDER
Supervisor II ANTUNEZ 2876
IDR Board Member and Body #
1 SMITH 2852 I/M REFUSED BOARD
2 3027 / 2838 REFUSED
Date and Time of IDRB 0300 4/11/12

Action Taken in Loss Days:
4wks Commissary 4 wks Visitation
____ Good Time ____ Stop Work Time
____ Disciplinary ISO ____ Disc. ISO w/Diet

Release date if applicable ____
Recommended by II ANTUNEZ 2876
Visitation effective: From 9/5/12 to 10/3/12
*Commissary loss dates will be determined by Commissary Staff*
Reviewed by: [signature]
OPS Lt. ____ Date 4/12/12

**Dist: White – Class/Golden – Final Disposition/Canary – Inmate Copy**
**CO-1125**

**PROOF OF SERVICE BY MAIL**

**BY PERSON IN STATE CUSTODY**

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, Kenneth R Barber, declare:

I am over 18 years of age and a party to this action. I am a resident of Calipatria State Prison Prison, in the county of Calipatria, State of California. My prison address is: PO Box 5007 Calipatria Ca 92233

On Feb 24, 2014,
(DATE)

I served the attached: Civil Rights Complaint: 42 USC §1983
(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional institution in which I am presently confined. The envelope was addressed as follows:

Santa Barbara County Counsel
105 E Anapamu St Suite 201, S.B. Cal 93101

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Executed on Feb 24, 2014 (DATE)

Kenneth Barber (DECLARANT'S SIGNATURE)



Barbes P43741
Box 5007
Calipatria Cal 92233
GENERATED FROM
CALIPATRIA STATE PRISON
Priority Mail
UNITED STATES POSTAGE
MAILED FROM ZIP C
RECEIVED
CLERK, U.S. DISTRICT COURT
FEB 27 2014
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY
PRIORITY MAIL
UNITED STATES POSTAL
www.usps.com
Clerk US District Cou
312 N Spring St
LA - Cal 90012
MRW
Legal Mail